# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

———————————

## CATHERINE L. LAROSA,

*Petitioner-Appellant,*

v.

## COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee,*

———————————

On Appeal from the United States Tax Court
No. 10164-20, Hon. Judge Ronald L. Buch

———————————

## OPENING BRIEF FOR APPELLANT

———————————

Caroline D. Ciraolo
*Counsel of Record*
Andrew Weiner
Michael Waalkes
KOSTELANETZ LLP
601 New Jersey Avenue, NW Suite 260
Washington, D.C. 20001
Phone: (202) 875-8000
cciraolo@kostelanetz.com

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-2034__         Caption: __LaRosa v. Commissioner of Internal Revenue__

Pursuant to FRAP 26.1 and Local Rule 26.1,

Catherine L. LaRosa
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?                ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐YES ☑NO
   If yes, identify all such owners:

i

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Caroline D. Ciraolo          Date:    July 10, 2025

Counsel for: Appellant

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................................. i

TABLE OF CONTENTS ..................................................................................... iii

TABLE OF AUTHORITIES................................................................................. iv

STATEMENT OF JURISDICTION ......................................................................1

STATEMENT OF THE ISSUE...............................................................................2

STATEMENT OF THE CASE.................................................................................2

   A. The LaRosas' 1981 and 1982 Tax Years.........................................................3

   B. The LaRosas' Erroneous Refund Liabilities....................................................5

   C. Mrs. LaRosa's Request for Innocent Spouse Relief and the Tax Court
   Proceeding ............................................................................................................8

SUMMARY OF THE ARGUMENT ....................................................................10

ARGUMENT ........................................................................................................13

I.  Mrs. LaRosa Is Eligible for Innocent Spouse Relief Because She Is Jointly and
    Severally Liable for "Unpaid Tax" Within the Meaning of Section 6015(f)(1)13

   A. Innocent spouse relief....................................................................................13

   B. The LaRosas owe unpaid tax as a result of the IRS's erroneous refunds of
   underpayment interest.........................................................................................16

     1. The IRS's erroneous refunds are based on its substantive determination
      that the LaRosas owed less underpayment interest than they paid and gave
      rise to unpaid tax .......................................................................................16

     2. The Tax Court's opinion that only erroneous rebate refunds give rise to
      unpaid tax defies the Code, case law, and common sense..........................21

   C. The LaRosas' liability for interest accruing on the IRS's erroneous refunds is
   also an unpaid tax ...............................................................................................32

CONCLUSION & REQUEST FOR ORAL ARGUMENT ...................................33

CERTIFICATE OF COMPLIANCE ....................................................................35

# TABLE OF AUTHORITIES

## Cases

*Alexander Proudfoot Co. v. United States*,
  454 F.2d 1379 (Ct. Cl. 1972) ........................................................ 16, 18
*Allen v. Commissioner*,
  514 F.2d 908 (5th Cir. 1975) ........................................................ 15, 21
*Bilzerian v. United States,*
  86 F.3d 1067 (11th Cir. 1996) ...................................................... 20, 29
*Clark v. United States*,
  63 F.3d 83 (1st Cir. 1995) ................................................................ 25
*Fisher v. United States*,
  80 F.3d 1576 (Fed. Cir. 1996) .......................................................... 18
*Flores v. United States*,
  51 Fed. Cl. 49 (2001) .................................................................. 18, 21
*Funkhouser v. United States*,
  260 F.2d 86 (4th Cir. 1958) .............................................................. 26
*Greer v. Commissioner*,
  557 F.3d 688 (6th Cir. 2009) ........................................................ 27, 28
*Iames v. Commissioner*,
  850 F.3d 160 (4th Cir. 2017) ............................................................ 13
*IBP, Inc. v. Alvarez*,
  546 U.S. 21 (2005) ......................................................................... 18
*Ideal Realty Co. v. United States*,
  561 F.2d 1123 (4th Cir. 1977) ...................................................... 19, 20
*In re Davis*,
  936 F.2d 771 (4th Cir. 1990) ............................................................ 26
*In re Lilly*,
  76 F.3d 568 (4th Cir. 1996) .............................................................. 15
*Interlake Corp. v. Commissioner*,
  112 T.C. 103 (1999) ....................................................................... 20
*Kollar v. Commissioner*,
  131 T.C. 191 (2008) .................................................................. 17, 32
*Lesinski v. Commissioner*,
  T.C. Memo. 1997-234 ................................................................ 23, 29
*Lewis v. Reynolds*,
  284 U.S. 281 (1932) .................................................................. 19, 26

**Cases (cont'd):**

*Lewis v. Reynolds*,
   48 F.2d 515 (10th Cir. 1931)..................................................................27
*Moore v. United States*,
   360 F.2d 353 (4th Cir. 1965)..................................................................14
*O'Bryant v. United States*,
   49 F.3d 340 (7th Cir. 1995)..................................... 20, 22, 25, 29
*Pacific Gas & Electric v. United States*,
   417 F.3d 1375 (Fed. Cir. 2005)............................................................16
*Perkins v. Commissioner*,
   92 T.C. 749 (1989)...................................................................................17
*Petrane v. Commissioner*,
   129 T.C. 1 (2007).....................................................................................17
*R.H. Donnelley Corp. v. United States*,
   641 F.3d 70 (4th Cir. 2011)..................................................................27
*Scott v. United States*,
   328 F.3d 132 (4th Cir. 2003)................................................................13
*Scudder v. Commissioner*,
   48 T.C. 36 (1967).....................................................................................14
*Singleton v. United States*,
   128 F.3d 833 (4th Cir. 1997)................................................ 12, 25, 30
*Sunoco Inc. v. Commissioner*,
   663 F.3d 181 (3d Cir. 2011)..................................................................16
*United States v. Diehl*,
   460 F. Supp. 1282 (S.D. Tex. 1976) .................................................15
*United States v. Frontone*,
   383 F.3d 656 (7th Cir. 2004).................................................................20
*United States v. Galletti*,
   541 U.S. 114 (2004)................................................................................24
*United States v. LaRosa*,
   993 F. Supp. 907 (D. Md. 1997)....................................................7, 28
*United States v. Liberty Global, Inc.*,
   No. 1:22-cv-02622, 2023 WL 4603954 (D. Colo. June 1, 2023).........30
*United States v. Sarubin*,
   507 F.3d 811 (4th Cir. 2007).................................................................26
*United States v. Wilkes*,

**Cases (cont'd):**

946 F.2d 1143 (5th Cir. 1991) ..............................................................25

*Washington v. Commissioner*,
   120 T.C. 137 (2003)....................................................................18

*Worthington v. United States*,
   882 F. Supp. 503 (E.D.N.C. 1994) ............................................15

*YRC Regional Transport, Inc. v. Commissioner*,
   T.C. Memo. 2014-112..................................................................29

**Statutes**

Internal Revenue Code (26 U.S.C.):
   § 1(a)(1) .....................................................................................26
   § 6013(d)(3) ...............................................................................13
   § 6015(b)(1) ...............................................................................18
   § 6015(e)(1) ..............................................................................1, 2
   § 6015(f) ............................................................................ passim
   § 6201(a) ..................................................................... 13, 32, 33
   § 6203 .........................................................................................24
   § 6204(a) ....................................................................................24
   § 6211 .........................................................................................31
   § 6211(a) ....................................................................................23
   § 6211(a)(1) .......................................................................... 22, 29
   § 6211(b)(2) .......................................................................... 22, 29
   § 6213(a) ....................................................................................24
   § 6303 .........................................................................................24
   § 6331 ...........................................................................................4
   § 6404(e)(2) ...............................................................................33
   § 6501(a) ....................................................................................24
   § 6532(b) ....................................................................................24
   § 6601 ................................................................................... 22, 33
   § 6601(a) ....................................................................................26
   § 6601(e)(1) ...............................................................................31
   § 6601(g) ....................................................................................17
   § 6602 .........................................................................................32
   § 6861(a)........................................................................................3
   § 7405 ................................................................................... 25, 32

**Internal Revenue Code (26 U.S.C.) (cont'd)**

§ 7405(b)............................................................................. 7, 23, 32

§ 7429 ...................................................................................3

§ 7482(a)...............................................................................13

§ 7482(a)(1) ............................................................................2

§ 7482(b)(1)(A) .......................................................................2

§ 7508A(a)..............................................................................1


IRS Restructuring and Reform Act of 1998, Pub. L. 105-206, § 3201(a), 112 Stat. 685 (1998)................................................................................15

Pub. L. No. 91-679, § 1, 84 Stat. 2063 (1971)......................................14

**Regulations**

26 C.F.R. § 301.6211-1(a)............................................................23

**Other Authorities**

H.R. Rep. No. 105–599 (1998) (Conf. Rep.)........................................15

IRS AOD GL-118964-97, 1998-1 C.B. 972 ........................................25

IRS Chief Couns. Adv. 200532045 (Aug. 12, 2005) .............................33

IRS Notice 2020-23, 2020-18 I.R.B. 742 ..............................................1

Internal Revenue Manual 35.4.1.8.2 (Feb. 7, 2013) ...............................5

*Merriam–Webster's Collegiate Dictionary* 1208 (10th ed.1999) ...........................32

S. Rep. No. 91-1537 (1970) ...................................................... 14, 21

# STATEMENT OF JURISDICTION

On January 10, 2020, Mrs. LaRosa filed a request for innocent spouse relief under section 6015(f) of the Internal Revenue Code (26 U.S.C.) ("I.R.C." or "Code")[1] from joint and several tax liabilities assessed against her and her since-deceased husband Dominick LaRosa ("Mr. LaRosa" and together with Mrs. LaRosa, the "LaRosas"). JA1. By letter dated January 24, 2020, the Internal Revenue Service ("IRS") advised Mrs. LaRosa that it would not process her request, because "[i]nnocent spouse doesn't consider relief for erroneous refunds." JA7. As held below by the Tax Court, the January 24 letter constituted "notice of the Secretary's final determination of relief available" to Mrs. LaRosa within the meaning of section 6015(e)(1)(A)(i)(I). JA104. On July 10, 2020, Mrs. LaRosa filed a timely petition for review of that final determination with the Tax Court.[2] JA1-6; *see* I.R.C. § 6015(e)(1)(A). The Tax Court had subject matter jurisdiction to review the IRS's determination under section 6015(e)(1)(A).

---

[1] Except as otherwise indicated, all "section" references are to the Code.

[2] The 90-day period to file a Tax Court petition under section 6015(e)(1)(A)(ii) was tolled by IRS Notice 2020-23, 2020-18 I.R.B. 742, which tolled the period for filing all Tax Court petitions due on or after April 1, 2020 and before July 15, 2020, in connection with a disaster declaration due to the COVID-19 pandemic. *See* I.R.C. § 7508A(a).

On July 18, 2024, the Tax Court issued a decision that Mrs. LaRosa was not entitled to innocent spouse relief. JA113. On October 14, 2024, Mrs. LaRosa timely filed notice of appeal within 90 days of that decision. JA118-120; *see* I.R.C. § 7483. This Court has appellate jurisdiction to review the decision of the Tax Court under section 7482(a)(1). This Court is the appropriate venue for appeal, because Mrs. LaRosa resided in Maryland at the time the petition was filed. JA102-103; *see* I.R.C. § 7482(b)(1)(A).

## STATEMENT OF THE ISSUE

Whether the Tax Court erred by concluding that Mrs. LaRosa is ineligible as a matter of law for innocent spouse relief from joint and several liability under I.R.C. § 6015(f) regarding the IRS's effort to collect an erroneous refund of underpayment interest paid by the LaRosas for 1981 and 1982 and regarding the interest accruing on the erroneous refund issued to the LaRosas.

## STATEMENT OF THE CASE

Mrs. LaRosa is 80 years old and resides in Rockville, Maryland. JA48. In 1968, Mrs. LaRosa married Dominick LaRosa. JA2, JA48. Throughout their marriage, and specifically during the tax years at issue, Mrs. LaRosa experienced physical, verbal, and psychological abuse at the hands of Mr. LaRosa. JA2.

## A.    The LaRosas' 1981 and 1982 Tax Years

Starting in the mid-1970s, Mr. LaRosa along with his brother, Joseph

LaRosa ("Joseph"), owned and operated LaRosa International Fuel Company (the

"Company"), a coal-brokering business in Oxon Hill, MD. JA49. Mrs. LaRosa was

not involved in the Company and had no knowledge of the Company's finances.

She worked in the home, caring for their four children. JA50. Mr. LaRosa, with

Joseph's assistance, handled all financial matters and personal and business federal

and state income tax returns. JA49, JA54. Mrs. LaRosa was never given the

opportunity to review and ask questions about the joint tax returns filed by Mr.

LaRosa. JA54. Her role in the family's tax matters was limited to signing

documents that Mr. LaRosa directed her to sign. JA55.

The State of Maryland brought criminal charges against Mr. LaRosa, Joseph,

and the Company for filing fraudulent state income tax returns for 1981, 1982, and

1983. JA52. Mr. LaRosa, Joseph, and the Company were convicted on December

2, 1985. JA52.

The next day, on December 3, 1985, the IRS made jeopardy assessments[3] of

---

[3] The IRS is authorized to make an immediate jeopardy assessment of tax against a taxpayer (sidestepping the deficiency procedures, which provide an opportunity for pre-assessment judicial review) if the Secretary of the Treasury ("Secretary") "believes that the assessment or collection of a deficiency . . . will be jeopardized by delay." I.R.C. § 6861(a); *see also* I.R.C. § 7429.

tax and penalties against Mr. and Mrs. LaRosa, Joseph LaRosa, and the Company (collectively, the "LaRosa Parties") for tax years 1981, 1982, and 1983 for more than $10 million. JA87, JA101. That same day, the IRS made a jeopardy levy[4] against the LaRosa Parties, seizing their bank accounts, vehicles, and other assets, which were placed in an escrow pending a determination by the Tax Court. JA52, JA101. The IRS controlled the escrow, and the LaRosa Parties were required to seek the IRS's approval for disbursements to be made to pay household, legal, and other expenses. JA52-53.

The LaRosa Parties filed petitions with the Tax Court, disputing the assessments. JA88. On November 7, 1990, nearly five years after litigation commenced, the parties settled the cases via a stipulated decision, in which the parties agreed to a total balance owed of $9,744,587 in tax, penalties, and interest for 1981, 1982, and 1983. JA101. More than half of the amount owed, or $5,054,749, constituted underpayment interest. JA89. The parties separately agreed that the LaRosa Parties overpaid their tax for tax years 1984 and 1985 in the amount of $6,120,204, including overpayment interest. JA101. Despite this agreement, Mrs. LaRosa never met or spoke with the attorney who entered his

---

[4] If the Secretary "makes a finding that the collection of . . . tax is in jeopardy," the IRS is authorized to make notice and demand to the taxpayer for immediate payment of assessed but unpaid tax and, if the taxpayer fails to comply, immediately levy upon the taxpayer's property. I.R.C. § 6331(a).

appearance for the LaRosas in the Tax Court proceedings, or the attorneys representing the IRS. JA3. In fact, she never physically appeared before the Tax Court and was not aware of the nature of the proceedings.[5] JA53.

After the Tax Court proceedings concluded, the escrow was terminated. JA53. Per the stipulated decision, the parties agreed that the LaRosa Parties owed the IRS $9,744,587 for tax years 1981, 1982, and 1983, and the IRS owed the LaRosa Parties $6,120,204 for tax years 1984 and 1985. JA89. The IRS credited the $6,120,204 overpayment toward the $9,744,587 balance due, leaving a remaining balance of $3,624,583, including underpayment interest. JA91. On or about May 1, 1991, the LaRosa Parties paid the IRS the remaining balance of $3,624,583. JA91, JA101.

## B. The LaRosas' Erroneous Refund Liabilities

Mr. LaRosa later filed a refund claim, contending that more underpayment interest had been paid than was due. JA101. The IRS denied Mr. LaRosa's refund claim. JA101. However, after Mr. LaRosa's congressional representative contacted the IRS on his behalf, the IRS reversed course and granted the claim. JA101. The

---

[5] Contrary to IRS guidance, counsel for the IRS apparently failed to raise and address the prospect of a potential conflict of interest between Mr. and Mrs. LaRosa during the Tax Court proceeding. *See* Internal Revenue Manual ("IRM") 35.4.1.8.2 (Feb. 7, 2013) (describing steps IRS counsel should take in response to potential conflicts of interest, including that "[t]he conflict of interest issues should be raised with opposing counsel well before trial and before settlement negotiations or full-fledged trial preparation begin").

IRS determined to treat the LaRosas' overpayments for 1984 and 1985 as having been paid against the 1981, 1982, and 1983 liabilities in 1985 and 1986 when the overpayments arose (rather than on the date of the settlement payment in May 1991). JA92. Accordingly, the IRS recalculated the amount of underpayment interest owed for the LaRosas' 1981, 1982, and 1983 tax years, eliminating years of interest that otherwise accrued. JA92-93. The IRS abated portions of the assessments of underpayment interest for tax years 1981 and 1982 and further credited the LaRosas with overpayment interest. JA94-96. On April 11, 1994, the IRS issued refunds of $457,890.30 (for tax year 1981) and $1,019,433.92 (for tax year 1982) based on the following computations:

|  | 1981 | 1982 | Total |
|---|---|---|---|
| Underpayment interest paid | $271,800 | $827,658 | $1,099,458 |
| Overpayment interest credited | $239,651 | $191,776 | $431,427 |
| **TOTALS** | $511,451[6] | $1,019,434 | $1,530,885 |

JA81-83.

On or about October 11, 1994, the IRS initiated an examination of these refunds for tax years 1981 and 1982. JA36, JA39. On March 31 and April 26, 1995, the IRS closed the examinations and subsequently referred the matter to the U.S. Department of Justice ("DOJ") to bring an erroneous refund suit. JA36, JA39.

---

[6] An amount of $53,561.28 was instead transferred as a credit toward the LaRosas' 1986 tax year and was not refunded. JA83.

On March 29, 1996, DOJ filed suit under section 7405(b) in the U.S. District Court for the District of Maryland against the LaRosas for (1) an erroneous refund of underpayment interest, (2) an erroneous refund of overpayment interest, and (3) interest on the total erroneous refund amount of $1,530,885 running from April 11, 1994. JA79-85. The district court granted summary judgment to the United States and entered judgment against the LaRosas in the amount of $2,095,318.49 plus interest, and this Court affirmed that decision on appeal. *See United States v. LaRosa*, 993 F. Supp. 907 (D. Md. 1997), *aff'd*, 155 F.3d 562 (4th Cir. 1998); JA102. On January 9, 1998, the United States recorded the judgment against the LaRosas with the Clerk of the Circuit Court of Montgomery County, Maryland, resulting in a judgment lien arising against all real property of the LaRosas located in Montgomery County. JA102. Mrs. LaRosa never had a substantive conversation with the attorney who entered his appearance for the LaRosas in the district court and appellate proceedings, or the attorneys representing the United States, and was not aware of the proceedings. JA3.

Nearly twenty years later, on August 4, 2017, DOJ moved to reopen the original erroneous refund action and to renew the judgment lien. JA4, JA102. On October 5, 2017, the district court granted the motion and ordered the judgment lien renewed. JA4, JA102. Another two years later, on October 31, 2019, DOJ filed

a complaint to foreclose its judgment lien on Mrs. LaRosa's home in Rockville, Maryland, and have the property sold in a judicial sale. JA4, JA57, JA102.

### C.     Mrs. LaRosa's Request for Innocent Spouse Relief and the Tax Court Proceeding

Upon learning of the complaint to foreclose, Mrs. LaRosa engaged her own, independent counsel for the first time. On January 10, 2020, Mrs. LaRosa submitted to the IRS a request for innocent spouse relief under section 6015(f), which provides equitable relief from joint and several liability for "any unpaid tax or any deficiency," with respect to the LaRosas' liabilities resulting from the erroneous refunds for 1981 and 1982.[7] JA1, JA21, JA102. On January 24, 2020, at the request of DOJ, the IRS issued a determination that it would not process Mrs. LaRosa's request, because "[i]nnocent spouse doesn't consider relief for erroneous refunds." JA7, JA21-22, JA102. On July 10, 2020, Mrs. LaRosa filed a petition with the Tax Court, challenging the IRS's determination and seeking innocent spouse relief. JA1-6, JA102.

On November 10, 2020, the IRS filed a motion to dismiss for lack of jurisdiction on the basis that section 6015(f) does not allow for relief from joint and several liability based on an erroneous refund of interest. JA11-15. On July 17,

---

[7] The foreclosure proceeding brought by DOJ is stayed by the district court, pending resolution of Mrs. LaRosa's innocent spouse claim and related litigation. JA21.

2024, following Mrs. LaRosa's objection to the motion, the Tax Court issued a precedential opinion in which it determined that it had jurisdiction to review Mrs. LaRosa's petition for innocent spouse relief but recharacterized the IRS's motion to dismiss as a motion for summary judgment and granted summary judgment for the IRS. JA99-112.

The Tax Court held that erroneously refunded interest does not give rise to an "unpaid tax" or "deficiency" and thus is not eligible for relief under section 6015(f). JA112. It reasoned that "once a tax liability is paid in full, that tax liability is extinguished unless it is revived by an erroneous *rebate* refund," and "[a] refund is a rebate when it relates to the recalculation of a tax liability." JA108, JA110. Notwithstanding the IRS's recalculation of the LaRosas' underpayment interest liabilities in this case, the Tax Court concluded that those liabilities do not qualify. JA112.

On July 18, 2024, following the issuance of its opinion, the Tax Court entered its decision that Mrs. LaRosa was not entitled to innocent spouse relief. JA113. Mrs. LaRosa filed a motion for reconsideration and, on August 22, 2024, the Tax Court issued an order denying that motion. JA114-117. On October 14, 2024, Mrs. LaRosa timely filed notice of appeal in the Tax Court. JA118-120.

On December 8, 2024, Mr. LaRosa died after a prolonged period living with advanced dementia.

## SUMMARY OF THE ARGUMENT

When married taxpayers file a joint return, by statute, they are jointly and severally liable for any tax liability owed for the tax year. That can lead to harsh results when one spouse's conduct causes liability that the other spouse is innocent of and yet still must bear the consequences. To address this problem, Congress enacted section 6015 providing three avenues of relief from joint and several liability. At issue here is the catch-all, equitable relief under 6015(f) that applies when "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency."

Mrs. LaRosa was in an abusive and oppressive marriage in which Mr. LaRosa completely controlled the family's finances and interactions with the state and federal tax authorities. Mrs. LaRosa was kept in the dark and had no ability to obtain information regarding Mr. LaRosa's financial activities. With respect to the tax years 1981 and 1982 at issue, Mr. LaRosa went to prison for filing fraudulent state tax returns and owed millions of dollars in federal tax, interest, and penalties. Unbeknownst to Mrs. LaRosa, Mr. LaRosa settled these tax liabilities and then filed a claim for refund challenging the IRS's calculation of underpayment interest amounts. The IRS issued refunds in response to the claim before determining that its original calculations of underpayment interest liability were correct and that its refunds were erroneous. Mrs. LaRosa was not aware of, and did not benefit from,

the refunds. The IRS referred the matter to DOJ, which brought suit for repayment of the erroneously refunded underpayment interest and overpayment interest plus interest on those amounts. Mrs. LaRosa was unaware of these tax liabilities until DOJ sought to foreclose on her house decades later. By that point, Mr. LaRosa suffered with dementia. Mrs. LaRosa requested, and based on the facts and circumstances, clearly deserves innocent spouse relief under section 6015(f). The Tax Court (and the IRS) disagreed, not because it is equitable to hold Mrs. LaRosa responsible for the erroneous refund liabilities, but based on a misreading of the law that the liabilities at issue do not constitute "unpaid tax" within the meaning of the statute.

The Tax Court is wrong. The LaRosas owe unpaid "tax" a result of the IRS's erroneous refunds of underpayment interest payments and the interest accruing on the IRS's erroneous refunds. Underpayment interest is a tax because Congress deemed it a tax. In particular, section 6601, which imposes underpayment interest, provides that "[a]ny reference . . . to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." I.R.C. § 6601(e)(1). Thus, "unpaid tax" in section 6015(f) includes underpayment interest. Further, the LaRosas' payments of underpayment interest followed by the IRS deliberate, but incorrect, refunds of underpayment interest result in the LaRosas owing unpaid taxes because their payment obligations under the Code are unsatisfied. As this

Court recognized in *Singleton v. United States*, 128 F.3d 833 (4th Cir. 1997), the IRS's erroneous refund of a taxpayer's underpayment interest payment does not change the character of the tax liability that the taxpayers then owe.

The Tax Court's opinion rests on the incorrect premise "that once a tax liability is paid in full, that tax liability is extinguished unless it is revived by an erroneous *rebate* refund." JA100. The Tax Court confuses tax liability with the procedures for collecting such liability starting with an assessment. Payment of a tax extinguishes an assessment, meaning that when the IRS issues an erroneous rebate refund it must make a new assessment before exercising its collection authorities, including issuing a notice of deficiency and giving the taxpayer an opportunity for pre-assessment review in the Tax Court. Tax liability is imposed by the Code and exists separate and apart from an assessment and assessment procedures. Irrespective of an assessment, a tax liability arises when the IRS erroneously determines that a taxpayer overpaid his or her tax—as was the case here when the IRS erroneously determined that the LaRosas overpaid underpayment interest—and then issues a refund. Having received such an erroneous refund, the LaRosas owe unpaid tax.

The LaRosas' liability for the interest accruing on the erroneous refund liability under section 6602 is also an "unpaid tax" eligible for innocent spouse relief. Such liability fits the plain meaning of tax and is akin to underpayment

interest in terms of its function and collection pursuant to the IRS's general authority to "make . . . assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by [the Code]." I.R.C. § 6201(a).

The decision of the Tax Court should be reversed and the case remanded for further proceedings on the merits of Mrs. LaRosa's innocent spouse request.

## ARGUMENT

### I. Mrs. LaRosa Is Eligible for Innocent Spouse Relief Because She Is Jointly and Severally Liable for "Unpaid Tax" Within the Meaning of Section 6015(f)(1)

Decisions of the Tax Court are reviewed "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a). Accordingly, this Court reviews *de novo* the Tax Court's grant of summary judgment. *Iames v. Commissioner*, 850 F.3d 160, 163–64 (4th Cir. 2017). It also reviews *de novo* issues of statutory interpretation, which the Tax Court resolved on summary judgment. *Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003).

### A. Innocent spouse relief

When spouses file a joint federal income tax return, "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." I.R.C. § 6013(d)(3). Prior to 1971, a spouse could only

challenge their joint and several liability by establishing that the election to file a joint return was made without the spouse's consent. This limited avenue for relief led to harsh results. *See, e.g.*, *Moore v. United States*, 360 F.2d 353, 357–58 (4th Cir. 1965) ("We adhere to the view that the wife becomes liable for all additional taxes, including penalties for fraud, if she has signed a fraudulent joint return, regardless of a lack of fraudulent intent on her part."); *Scudder v. Commissioner*, 48 T.C. 36, 41 (1967) ("Although we have much sympathy for petitioner's unhappy situation and are appalled at the harshness of this result in the instant case, the inflexible statute leaves no room for amelioration."), *rev'd in part* 405 F.2d 222 (6th Cir. 1968).

In response, Congress enacted the original "innocent spouse" provision, then-codified at section 6013(e)(1), *see* Pub. L. No. 91-679, § 1, 84 Stat. 2063 (1971), in order "to bring government tax collection practices into accord with basic principles of equity and fairness," S. Rep. No. 91-1537, at 2 (1970). The former section 6013(e)(1) relieved a requesting spouse of joint and several liability upon a showing that a "grossly erroneous" understatement of tax was attributable to the non-requesting spouse, that the requesting spouse did not know or have reason to know of the understatement, and that it would be "inequitable" to hold the requesting spouse liable under the circumstances. Relief was available to taxpayers as a claim or defense in a wide variety of contexts, including suits to

reduce an assessment of tax to a judgment, *see, e.g., United States v. Diehl*, 460 F. Supp. 1282 (S.D. Tex. 1976), *aff'd*, 586 F.2d 800 (5th Cir. 1978) (table), suits to foreclose on a tax lien, *see, e.g., United States v. Bushlow*, 832 F. Supp. 574 (E.D.N.Y. 1993), wrongful levy actions, *see, e.g., Worthington v. United States*, 882 F. Supp. 503 (E.D.N.C. 1994), and bankruptcy proceedings, *see, e.g., In re Lilly*, 76 F.3d 568 (4th Cir. 1996). Courts "construed and applied [section 6013(e)(1)] liberally in favor of those whom the statute was designed to benefit." *Allen v. Commissioner*, 514 F.2d 908, 915 (5th Cir. 1975). Still, the statute proved inadequate to the task of remedying the unjust consequences of joint and several liability because it was difficult to satisfy and inflexible.

In 1998, Congress repealed section 6013(e)(1) and enacted section 6015, IRS Restructuring and Reform Act of 1998, Pub. L. 105-206, § 3201(a), 112 Stat. 685, 734 (1998), "to correct perceived deficiencies and inequities in former section 6013(e)." *Hopkins v. Commissioner*, 120 T.C. 451, 462 (2003); H.R. Rep. No. 105–599, at 249 (1998) (Conf. Rep.). Section 6015(f), as amended, provides as follows:

(1) In general. Under procedures prescribed by the Secretary, if—

(A) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either), and

(B) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability.

(2) Limitation. A request for equitable relief under this subsection may be made with respect to any portion of any liability that—

      (A) has not been paid, provided that such request is made before the expiration of the applicable period of limitation under section 6502, or

      (B) has been paid, provided that such request is made during the period in which the individual could submit a timely claim for refund or credit of such payment.

Within the statutory scheme, section 6015(f) is the catch-all provision allowing equitable relief where the other forms of innocent spouse relief under subsections (b) and (c) are unavailable with respect to "any unpaid tax or any deficiency."

      The question presented by this appeal is whether the LaRosas' liabilities resulting from the IRS's erroneous refunds of their underpayment interest payments and from the interest accruing on their erroneous refunds constitute "unpaid tax" for purposes of section 6015(f)(1).[8]

### B.    The LaRosas owe unpaid tax as a result of the IRS's erroneous refunds of underpayment interest

#### 1.    The IRS's erroneous refunds are based on its substantive determination that the LaRosas owed less underpayment interest than they paid and gave rise to unpaid tax

---

[8] Mrs. LaRosa concedes that the liability for erroneous refunded overpayment interest is not a tax liability and thus cannot be an "unpaid tax" within the meaning of section 6015(f). *See Sunoco Inc. v. Commissioner*, 663 F.3d 181, 196 (3d Cir. 2011) ("[O]verpayment interest, i.e., interest owed to the taxpayer by the government, is not 'a part of, or even related to, a taxpayer's tax liability' and is not 'assimilated in treatment to the principal amount of a tax' . . . .") (quoting *Pacific Gas & Elec. v. United States*, 417 F.3d 1375, 1383 (Fed. Cir. 2005) and *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1384 (Ct. Cl. 1972)). Mrs. LaRosa does not dispute the Tax Court's decision as applied to the erroneously refunded overpayment interest.

Interest and penalties fit comfortably within the meaning of "any unpaid tax." Section 6601, which imposes underpayment interest, provides that "[a]ny reference to this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." I.R.C. § 6601(e)(1); *see* I.R.C. § 6601(g) ("[Underpayment interest] may be assessed and collected at any time during the period within which the tax to which such interest relates may be collected."); *see also Perkins v. Commissioner*, 92 T.C. 749, 753 (1989) ("[I]t is well settled that tax and interest thereon constitute a single liability, the interest being merely a part of the tax made so by statute."). Thus, "any unpaid tax" in section 6015(f), which is not in subchapter B of chapter 63, includes unpaid underpayment interest. *See Petrane v. Commissioner*, 129 T.C. 1, 4 (2007) ("Subsection (f) does not mention interest and penalties; however, interest and penalties are generally treated as tax, and any reference in the Internal Revenue Code to 'tax' (with exceptions not applicable to this case) shall be deemed to include interest and penalties."); *see also Kollar v. Commissioner*, 131 T.C. 191, 195–96 (2008) (rejecting the argument that "interest and penalties are not separate items for which the Commissioner may grant a taxpayer relief under section 6015(f)" and "a taxpayer may receive relief under section 6015 from interest and penalties only as a mechanical adjustment flowing from the Commissioner's granting of relief from income tax").

Moreover, "any unpaid tax" is informed by I.R.C. § 6015(b)(1), which specifies that "tax . . . include[es] interest, penalties, and other amounts." *See Washington v. Commissioner*, 120 T.C. 137, 158 (2003) (explaining that section 6015(b) "clearly relieves the spouse of *all* liability for the taxable year attributable to the understatement; it suggests that Congress intended that the provision 'should apply to the entire taxable year and the entire tax liabilities associated therewith'.") (quoting *Flores v. United States*, 51 Fed. Cl. 49, 55 (2001)). A "normal rule of statutory interpretation" is that "identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). Particularly in this context, where Congress added I.R.C. § 6015(f) to *expand* the availability of innocent spouse relief, "any unpaid tax" in that subsection should not be read more narrowly than "tax" in subsection (b).

Beyond statutory language, the underlying principles and structure of the Code also support that the equitable relief from "any unpaid tax" under section 6015(f) encompasses underpayment interest. As explained by the Federal Circuit, "[t]he Code's design for such interest is to assimilate it to the tax itself . . . . For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax." *Fisher v. United States*, 80 F.3d 1576, 1580 (Fed. Cir. 1996) (quoting *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1382 (Ct. Cl. 1972)). Thus, in *Fisher*, the Federal Circuit held that the

Government's right to offset a tax refund by any unassessed tax for the same year, recognized in *Lewis v. Reynolds*, 284 U.S. 281 (1932), includes unassessed interest. 80 F.3d at 1580. The present case is the mirror image of *Fisher* and is informed by the same logic that underpayment interest is an integral part of tax under the Code.

Given that "any unpaid tax" in section 6015(f) includes underpayment interest, Mrs. LaRosa indisputably would be eligible for relief had the IRS determined that Mr. and Mrs. LaRosa owed underpayment interest for 1981 and 1982 and never paid it. The result is the same when the LaRosas did pay the underpayment interest, and the IRS then made a deliberate, but incorrect, refund of that interest. In either scenario, the LaRosas owe an unpaid tax because a liability imposed by the Code is unsatisfied.[9] That the unpaid tax here resulted from the IRS's erroneous refund of the payments of underpayment interest instead of from the failure to pay underpayment interest in the first place makes no difference.

*Ideal Realty Co. v. United States*, 561 F.2d 1123 (4th Cir. 1977), demonstrates this point. Similar to this case, the taxpayers in *Ideal Realty* entered into a settlement with the IRS and paid the agreed-upon liability after which the IRS erroneously refunded the underpayment interest. *Id.* at 1124. The IRS

---

[9] This is distinct from a scenario where the IRS issues a duplicative or other payment with no connection to an underlying tax liability. Here, the erroneously refunded underpayment interest is firmly rooted in a determination of the LaRosas' 1981 and 1982 tax liabilities.

contended that it could collect the erroneous refunds by assessing the underpayment interest, and this Court agreed. *Id.* The erroneous refund of the taxpayers' underpayment interest payments did not change the character of the tax liability that the taxpayers then owed and were assessed.

This is not to suggest that all erroneous refunds result in an unpaid tax. If, for example, the IRS double-posts a payment or directs payment to the wrong taxpayer, there is no unpaid tax because the erroneous refund does not tie back to a tax liability imposed by the Code against the recipient taxpayer. *See United States v. Frontone*, 383 F.3d 656, 660 (7th Cir. 2004) (explaining that if "the Frontones had no income and therefore paid no income taxes, but the IRS made a mistake and mailed them a check . . . [t]he government would be entitled to the return of the money, but not because the Frontones owed it any taxes"); *see, e.g., Bilzerian v. United States,* 86 F.3d 1067, 1068 (11th Cir. 1996) (computer error); *O'Bryant v. United States*, 49 F.3d 340, 341 (7th Cir. 1995) (double-posted payment); *Interlake Corp. v. Commissioner*, 112 T.C. 103, 111 (1999) (wrong taxpayer). But where the IRS redetermines a tax and returns the taxpayer's payment, as was the case here, the resulting liability is an "unpaid tax" imposed by the Code.

Finally, even if it was not plain that "unpaid tax" in section 6015(f) includes the erroneous refund of underpayment interest, the statutory language should be read expansively consistent with the remedial purpose behind innocent spouse

relief "to bring government tax collection practices into accord with basic principles of equity and fairness." S. Rep. No. 91-1537, at 2 (1970); *see Allen*, 514 F.2d at 915; *see also Flores*, 51 Fed. Cl. at 53 ("[M]indful that the amendments to the innocent spouse rules were designed to correct perceived deficiencies and inequities in the prior version of these rules, yet another rule of interpretation applicable here is that curative legislation should be liberally construed to effectuate its remedial purpose."). Mrs. LaRosa was controlled and abused by her husband. She had no say in, or in fact, knowledge of, the refund claims that produced the erroneous refunds. She was not aware of or consulted about the suit to recover the refunds, and had no ability to participate in, much less control, the proceedings. Only decades later, after her husband developed dementia and lost his grip over her life, did Mrs. LaRosa realize the situation and request innocent spouse relief. The ordinary meaning of the words in section 6015(f) makes that relief available. It is distinctly inequitable and contrary to the purpose of section 6015(f) to deny Mrs. LaRosa relief without reviewing the merits of her request.

**2.    The Tax Court's opinion that only erroneous rebate refunds give rise to unpaid tax defies the Code, case law, and common sense**

The Tax Court's fundamental mistake was to rely on case law addressing the *procedural* issue of how the government may recover an erroneous refund, not the *substantive* issue of whether an erroneous refund results in an unpaid tax. The case

law cited by the Tax Court does not speak to the substantive issue of whether the LaRosas are liable for an unpaid tax and, if anything, supports Mrs. LaRosa's position.

To understand the Tax Court's reasoning, we begin with two issues of tax procedure and how they interact; namely, rebate versus non-rebate refunds, and the collection of erroneous refunds.

A rebate refund occurs when the IRS determines that the taxpayer owes less income, estate and gift, or excise tax than what was shown on the tax return. In technical parlance, "[t]he term 'rebate' means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by subtitle A [income tax] or B [estate and gift taxes] or chapter 41, 42, 43, or 44 [select excise taxes] was less than the excess of" "the amount shown as tax by the taxpayer upon his return" plus "the amounts previously assessed (or collected without assessment) as a deficiency." I.R.C. § 6211(a)(1), (b)(2). Notably, underpayment interest imposed by section 6601 is in subtitle F, chapter 67, and therefore a refund based on the determination of underpayment interest does not fit the definition of a rebate. A non-rebate refund is not a term defined in the Code and refers to a refund issued for any reason not constituting a rebate although some courts have incorrectly assumed that such refunds are confined to "mistakes," *O'Bryant*, 49 F.3d at 342, or refunds "unrelated to a recalculation of [a taxpayer's]

tax liability," *Lesinski v. Commissioner*, T.C. Memo. 1997-234, 1997 WL 266961, at *2.

An erroneous rebate refund creates a "deficiency," which is the amount by which the correct amount of income, estate and gift, or excise tax imposed by the Code exceeds the sum of tax reported on the taxpayer's return plus any prior assessments or collections over any prior rebates:

> [T]he term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of—
>
>> (1) the sum of
>>
>>> (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
>>>
>>> (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
>>
>> (2) the amount of rebates, as defined in subsection (b)(2), made.

I.R.C. § 6211(a); Treas. Reg. § 301.6211-1(a). An erroneous rebate refund exceeds the difference between the amount the taxpayer self-reported plus assessments and collections above the taxpayer's correct tax and produces a deficiency equal to the amount of the erroneous rebate per the above definition. This is important because it informs how the IRS may go about recovering an erroneous rebate refund.

In general, the IRS has two means of collecting an erroneous refund. First, the IRS (through a referral to DOJ) may bring an erroneous refund suit in federal district court under section 7405(b) to collect "[a]ny portion of a tax imposed by

[the Code] which has been erroneously refunded." In general, the government has two years after the making of an erroneous refund to bring such a suit. I.R.C. § 6532(b). Second, the IRS may make a supplemental assessment under section 6204(a), generally within three years after the taxpayer's return is filed, I.R.C. § 6501(a). An assessment is the IRS's "recording of a taxpayer's liability" on its books and is generally a prerequisite for the IRS to "employ administrative enforcement methods to collect the tax." *United States v. Galletti*, 541 U.S. 114, 122 (2004); *see* I.R.C. § 6203 (describing the method of assessment); I.R.C. § 6303 (requiring notice and demand for payment "after the making of an assessment"). An assessment is supplemental if made by the IRS after "it is ascertained that any [prior] assessment is imperfect or incomplete in any material respect." I.R.C. § 6204(a).

Normal assessment procedures apply with respect to making a supplemental assessment, including, in the case of a deficiency, that the IRS issue a notice of deficiency giving the taxpayer an opportunity for pre-assessment review by the Tax Court. *See* I.R.C. § 6213(a) ("[N]o assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice [of deficiency] has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax

Court, until the decision of the Tax Court has become final."). Thus, an erroneous rebate refund is recoverable by making a supplemental assessment after the issuance of a notice of deficiency (and any related litigation), and then proceeding with post-assessment collections. Alternatively, the IRS can refer the matter to DOJ to bring suit under section 7405. *Singleton*, 128 F.3d at 837; *O'Bryant*, 49 F.3d at 342.

The IRS cannot recover an erroneous rebate refund by pursuing collections based on an assessment that the taxpayer fully paid prior to receiving an erroneous refund. Full payment extinguishes an assessment against a taxpayer meaning that the assessment cannot be revived by an erroneous refund. *See Clark v. United States*, 63 F.3d 83, 87 (1st Cir. 1995) ("[W]hen a taxpayer tenders payment on a tax assessment, that payment extinguishes the assessment to the extent of the payment."); *United States v. Wilkes*, 946 F.2d 1143, 1150 (5th Cir. 1991) ("[O]nce a taxpayer makes payment on a tax assessment, the payment extinguishes the assessment to the extent of payment, and subsequent refunds do not revive the assessment."); IRS AOD GL-118964-97, 1998-1 C.B. 972 ("We acquiesce to the view of the court that an erroneous refund of an amount paid by the taxpayer in satisfaction of an assessment does not revive that assessment to the extent of the refund."); *see also Singleton*, 128 F.3d at 837 (recognizing consensus on this issue).

The Tax Court misconstrued this body of case law as holding "that once a tax liability is paid in full, that tax liability is extinguished unless it is revived by an erroneous *rebate* refund." JA100. The Tax Court confuses substantive tax liability with assessment procedures, which trigger the IRS's collection authority. Full payment extinguishes collection authority even after the IRS issues an erroneous refund. Tax liability, on the other hand, exists independently of tax procedure and is imposed by the Code. *See In re Davis*, 936 F.2d 771, 774 (4th Cir. 1990) ("An assessment of a tax is not a prerequisite to the imposition of tax liability."); *Funkhouser v. United States*, 260 F.2d 86, 87 (4th Cir. 1958) ("The statute itself 'imposes' the tax . . . ."); *see also United States v. Sarubin*, 507 F.3d 811, 815 (4th Cir. 2007) ("Like the imposition of tax obligations themselves, the accrual of interest on tax obligations is governed by the Internal Revenue Code."); *see, e.g.,* I.R.C. § 1(a)(1) ("There is hereby imposed on the taxable income of every married individual . . . a tax determined in accordance with the following table . . . ."); I.R.C. § 6601(a) ("If any amount of tax imposed by this title . . . is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid."). Indeed, even if assessment is barred by the statute of limitations, the government can offset a taxpayer's claim for refund by tax properly owed. *See Lewis v. Reynolds*, 284 U.S. at 283 (holding that the ultimate

26

question of whether an overpayment exists "involves a redetermination of the entire tax liability" even where "no new assessment can be made, after the bar of the statute has fallen") (quoting *Lewis v. Reynolds*, 48 F.2d 515, 516 (10th Cir. 1931)); *accord R.H. Donnelley Corp. v. United States*, 641 F.3d 70, 73 (4th Cir. 2011). There is no support for the Tax Court's view that a non-rebate refund in which the IRS erroneously determined that the taxpayer overpaid his or her tax does not revive a tax *liability* as opposed to an *assessment*.

In fact, the primary case cited by the Tax Court, *Greer v. Commissioner*, 557 F.3d 688 (6th Cir. 2009), belies the Tax Court's position. In *Greer*, the Sixth Circuit held that a non-rebate refund "was a tax amount, and therefore it resulted in a tax liability, not an unjust enrichment liability." *Id. at* 693. The taxpayers in *Greer* simultaneously paid tax based on IRS adjustments to a partnership in which they invested and claimed a refund. *Id.* at 689. Taxpayers then brought a refund suit while a partnership-level proceeding was pending. *Id.* The district court dismissed their refund suit but ordered the IRS to return the tax at issue. *Id.* After the IRS prevailed in the partnership-level proceeding, it assessed the tax and penalties, including an addition to tax equal to 50% of the interest due on the portion of an underpayment attributable to negligence under the now-repealed

section 6653(a)(2).[10] The taxpayers challenged this position on the basis that their payment of tax ended the period in which the addition to tax accrued. The Sixth Circuit rejected that argument and held that the erroneous refund "reviv[ed] the Greers' tax liability and continu[ed] the penalty period." *Id.* at 691. The Sixth Circuit explained that "[a]lthough the 1995 refund was not an erroneous rebate refund (it was not the result of a substantive determination that the Greers overpaid their taxes), we conclude that it was a tax amount because it was the deliberate return of the Greers' 1992 payment of taxes." *Id.* Here, too, the IRS revived the LaRosas' tax liability by deliberately returning their payment of underpayment interest. *See United States v. LaRosa*, 993 F. Supp. 907, 910 (D. Md. 1997) ("[T]he IRS reasoned that the underpayments had been rectified as of the date of the receipt of the overpayments, and therefore interest on the underpayments should have ceased as of the dates of the overpayments."), *aff'd*, 155 F.3d 562 (4th Cir. 1998).

Other cases relied upon by the Tax Court are distinguishable on the ground that the erroneous refunds at issue were unintentional mistakes and not the result of

---

[10] This section imposed an addition to tax in an amount equal to 50% of the interest due on the portion of any underpayment "beginning on the last date prescribed by law for payment of such underpayment . . . and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax)." I.R.C. § 6653(a)(2).

an IRS determination of the taxpayer's tax liability.[11] *See Bilzerian*, 86 F.3d at 1068; *O'Bryant*, 49 F.3d at 341; *Lesinski*, T.C. Memo. 1997-234, 1997 WL 266961, at *1; *YRC Regional Transport, Inc. v. Commissioner*, T.C. Memo. 2014-112, at *8. As the court in *O'Bryant* explained, taxpayers who receive a mistaken refund because a payment is double-credited or because of a computer error, for example, "owes it to the government because they have been unjustly enriched by it, not because they have not paid their taxes." 49 F.3d at 346. In contrast, the IRS issued a refund to the LaRosas because it erroneously determined that the LaRosas overpaid the amount of underpayment interest that they owed, a determination rooted squarely in the proper computation and determination of the LaRosas' 1981 and 1982 tax liabilities. The LaRosas do not now owe the government restitution for unjust enrichment—they owe a tax liability for their 1981 and 1982 tax years

---

[11] The Tax Court appears to group this case with other cases in which the IRS made an erroneous non-rebate refund due to an unintentional mistake because it incorrectly assumes that is the only type of erroneous non-rebate refund there is. To wit, the Tax Court stated that "[a] refund is a rebate when it relates to the recalculation of a tax liability." JA110. The present facts show otherwise. The IRS issued a non-rebate refund to the LaRosas based on its recalculation of underpayment interest, which is a tax. I.R.C. § 6601(e)(1). The definition of "rebate," which the Tax Court does not cite, is also to the contrary. As discussed, a refund meets the definition of a rebate when it relates specifically to the recalculation of income, estate and gift, or excise tax. *See* I.R.C. § 6211(a)(1), (b)(2). But there are other tax liabilities, including underpayment interest. "Any unpaid tax" in section 6015(f) covers the waterfront of tax liabilities, and not just income, estate and gift, and excise tax liabilities that result from an erroneous rebate refund.

based on the correct amount of underpayment interest imposed by the Code. *See Singleton*, 128 F.3d at 838 ("The Court finds that that changes in the Singletons' tax status were based not on computer or computational errors, as the government contends, but on *substantive recalculations* of their tax liability.") (emphasis in original).

In sum, the rebate/non-rebate distinction answers the *procedural* question of whether an erroneous refund gives rise to a deficiency, and therefore whether the IRS must issue a notice of deficiency before making a supplemental assessment to collect the refund, but it does not address the *substantive* issue in this case of whether the LaRosas are liable for unpaid tax.[12] "[A]ny unpaid tax" and "any deficiency" are distinct categories of liability eligible for relief under section 6015(f). The Tax Court's approach conflates the two categories. As a result, the court ignored the fact that the LaRosas are liable for unpaid tax after the IRS refunded their underpayment interest payments. The underpayment interest imposed by statute is unsatisfied and therefore is an unpaid tax.

---

[12] This is consistent with the government's argument and the district court's recent holding in *United States v. Liberty Global, Inc.*, No. 1:22-cv-02622, 2023 WL 4603954 (D. Colo. June 1, 2023), where the district court rejected the taxpayer's argument that tax liability cannot exist absent an assessment. *Id.* at *2–4. The district court explained that "precedent and common sense demand the opposite conclusion," that "taxpayers' liability ar[ises] independently of the government's processes for collecting those taxes." *Id.* at *4.

Further, this is one area where the Code makes logical sense. An erroneous refund of a tax payment gives rise to unpaid tax. The LaRosas paid underpayment interest, which is a tax liability, and disputed that the IRS calculated the underpayment interest correctly. The IRS agreed and issued refunds before changing its mind, finding that its original calculations were correct under the Code. As a result, the LaRosas were back where they started, owing unpaid tax. The IRS's erroneous refunds did not magically transform this dispute over the correct tax under the Code into something different.

Finally, the Tax Court reasoned that the LaRosas' underpayment interest liability is not an "unpaid tax" because underpayment interest under section 6601(e)(1) is not treated as a tax for purposes of "subchapter B of chapter 63, relating to deficiency procedures." JA112. This language in section 6601(e)(1) along with section 6211 excludes underpayment interest from the definition of a deficiency and, thereby allows the IRS to assess and collect underpayment interest without first issuing a notice of deficiency, which as noted, gives taxpayers the opportunity to challenge such liability in the Tax Court. Simply put, underpayment interest liability is not a deficiency. But this does nothing to detract from the conclusion that such liability is an "unpaid tax" for purposes of section 6015(f), which is not in "subchapter B of chapter 63." Here, again, the Tax Court confused substantive tax liability with tax procedure.

31

### C. The LaRosas' liability for interest accruing on the IRS's erroneous refunds is also an unpaid tax

Interest on an erroneously refunded tax sought to be recovered under section 7405, like underpayment interest, is also an "unpaid tax" eligible for equitable relief. Starting with the plain meaning, a "'tax' denotes 'a charge [usually] of money imposed by authority on persons or property for public purposes', and statutory interest payable on income tax is as much such a 'charge' as income tax is." *Kollar v. Commissioner*, 131 T.C. 191, 195–96 (2008) (quoting *Merriam–Webster's Collegiate Dictionary* 1208 (10th ed.1999)). Section 6602 provides that "[a]ny portion of an internal revenue tax (or any interest, assessable penalty, additional amount, or addition to tax) which has been erroneously refunded, and which is recoverable by suit pursuant to section 7405, shall bear interest at the underpayment rate." It fits the plain meaning of a "tax." Moreover, such interest is tantamount to underpayment interest in that it accrues on liabilities that Congress labels a "tax." *See* I.R.C. § 7405(b) (providing for civil actions in the name of the United States to recover "[a]ny portion of a tax imposed by this title which has been erroneously refunded").

Still further, interest on an erroneously refunded tax and underpayment interest are both collected pursuant to the IRS's general authority to "make . . . assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by [the Code]." I.R.C. § 6201(a). Section

6201(a) makes it clear that interest imposed by the Code, including interest on an erroneously refunded tax, is a tax subject to assessment. *See* IRS Chief Couns. Adv. 200532045 (Aug. 12, 2005) ("[S]ection 6201(a) . . . defines taxes which the Secretary is required to assess to include interest," and specifically "6602 interest."); *see also* I.R.C. § 6404(e)(2) ("The Secretary shall abate the assessment of all interest on any erroneous refund under section 6602 until the date demand for repayment is made . . . .").

Accordingly, the LaRosas' liability for section 6602 interest is an "unpaid tax" for purposes of section 6015(f). The Tax Court did not address this aspect of their liability and erred in concluding that Mrs. LaRosa is ineligible for innocent spouse relief to the extent of her joint and several liability not only for underpayment interest under section 6601 but also for the interest on the amount that the IRS erroneously refunded under section 6602.

## CONCLUSION & REQUEST FOR ORAL ARGUMENT

For the foregoing reasons, Mrs. LaRosa requests that the Court reverse the Tax Court's decision and remand for consideration of the merits of her request for innocent spouse relief from unpaid taxes based on the IRS's erroneous refunds of underpayment interest and the interest accruing on the IRS's erroneous refunds. Counsel for Mrs. LaRosa respectfully submit that this case involves a matter of

first impression in this circuit and that oral argument would be helpful to the Court's resolution of the appeal.

Respectfully submitted,

July 10, 2025

*/s/ Caroline D. Ciraolo*
Caroline D. Ciraolo
Andrew Weiner
Michael Waalkes
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, D.C. 20001
Phone: (202) 875-8000
cciraolo@kostelanetz.com

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limit of Fed. R. App. P.

   32(a)(7)(B), because, excluding the parts of the brief excluded by Fed. R.

   App. P. 32(f), this brief contains 8,281 words.


2. This brief complies with the typeface requirements of Fed. R. App. P.

   32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because

   this brief has been prepared in a proportionally spaced typeface using

   Microsoft Word in size 14, Times New Roman font.


July 10, 2025                                    */s/ Caroline D. Ciraolo*
                                                Counsel for Appellant