# No. 24-2034

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

───────────────

**CATHERINE L. LAROSA,**

*Petitioner-Appellant*,

v.

**COMMISSIONER OF INTERNAL REVENUE,**

*Respondent-Appellee*,

───────────────

On Appeal from the United States Tax Court
No. 10164-20, Hon. Judge Ronald L. Buch

───────────────

## JOINT APPENDIX

───────────────

Robert J. Branman
U.S. Department of Justice
Tax Division
Ben Franklin Station
P.O. Box 502
Washington, D.C. 20044
Phone: (202) 307-6538
robert.j.branman@usdoj.gov

*Counsel for Appellee*

Caroline D. Ciraolo
Andrew Weiner
Michael Waalkes
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, D.C. 20001
Phone: (202) 875-8000
cciraolo@kostelanetz.com

*Counsel for Appellant*

# TABLE OF CONTENTS

LaRosa v. Commissioner (Dkt. No. 10164-20) – Petition for Determination of Relief from Joint and Several Liability Under IRC § 6015 & Exhibits (filed July 10, 2020..................................................................................... JA1-JA9

LaRosa v. Commissioner (Dkt. No. 10164-20) – Respondent's Motion to Dismiss for Lack of Jurisdiction (recharacterized by Tax Court as Motion for Summary Judgment) filed November 10, 2020 ....................................................... JA10-JA15

LaRosa v. Commissioner (Dkt. No. 10164-20) – Respondent's Memorandum of Law in Support of Motion to Dismiss for Lack of Jurisdiction & Exhibits filed November 10, 2020.................................................................... JA16-JA44

LaRosa v. Commissioner (Dkt. No. 10164-20) – Petitioner's Objection to Respondent's Motion to Dismiss & Exhibits filed January 4, 2021 ........ JA45-JA99

LaRosa v. Commissioner (Dkt. No. 10164-20) – Opinion served July 17, 2024 (163 T.C. No. 2) . . ................................................................. JA100-JA112

LaRosa v. Commissioner (Dkt. No. 10164-20) – Decision entered July 18, 2024 ...................................................................................................JA113

LaRosa v. Commissioner (Dkt. No. 10164-20) – Order denying Petitioner's Motion for Reconsideration entered August 22, 2024......................... JA114-JA117

LaRosa v. Commissioner (Dkt. No. 10164-20) – Notice of Appeal filed October 14, 2024................................................................... JA118-JA120

LaRosa v. Commissioner (Dkt. No. 10164-20) – Docket Report ........ JA121-JA129

HAND DELIVERED

HAND DELIVERED

UNITED STATES
TAX COURT
RECEIVED
2020 JUL 10 PM 1: 38
BY:_____
DEPUTY CLERK

U.S. TAX COURT
FILED
JUL 13 2020

UNITED STATES TAX COURT

---------------------------------------------------------------X

CATHERINE L. LaROSA,

                Petitioner,

        v.

COMMISSIONER OF INTERNAL REVENUE,

                Respondent.

---------------------------------------------------------------X

Docket No.

**10164-20**

## PETITION FOR DETERMINATION OF RELIEF
## FROM JOINT AND SEVERAL LIABILITY UNDER IRC § 6015

    Catherine L. LaRosa, Petitioner, by her undersigned counsel, hereby seeks a redetermination of the denial of her Request for Innocent Spouse Relief ("Request"), and in support thereof, states as follows:

### Address Used By Court

    1.    Petitioner resides at 10 Tobin Court, Rockville, MD 20854, with her spouse, Dominick LaRosa ("Mr. LaRosa").

    2.    On January 10, 2020, Petitioner requested relief pursuant to 26 U.S.C. ("IRC") § 6015(f) with respect to the liabilities assessed by the Internal Revenue Service ("IRS") for tax years 1981 and 1982.

    3.    On January 24, 2020, Respondent refused to process, and therefore denied, Petitioner's Application. *See* Exhibit A.

    4.    The aggregate liability for tax years 1981 and 1982 is more than $6 million.

    5.    Respondent erred in failing to process, and therefore denying, Petitioner request for relief under IRC § 6015(f) with respect to the 1981 and 1982 tax liabilities.

**SERVED Sep 16 2020**

6. Petitioner relies on the following facts:

(a) Petitioner and Mr. LaRosa married in 1968 and have filed joint federal income tax returns throughout their marriage. Petitioner and Mr. LaRosa have four adult children.

(b) Petitioner has been the victim of verbal, psychological, and physical abuse at the hands of Mr. LaRosa for more than four decades.

(c) Petitioner had no role in the preparation of any federal or state income tax returns and was not given the opportunity to review or discuss the returns.

(d) All income reported on the 1981 and 1982 returns is attributable to Mr. LaRosa. Petitioner was not involved in Mr. LaRosa's business operations.

(e) On December 3, 1985, Mr. LaRosa was convicted of conspiracy to violate Maryland income tax laws and filing fraudulent state income tax returns for the years 1981, 1982, and 1983.

(f) In December of 1985, the IRS made jeopardy assessments and seized substantial assets to satisfy the amounts due for tax years 1981, 1982, and 1983.

(g) On January 17, 1986, the IRS issued a Notice of Deficiency for tax years 1981, 1982, and 1983. In response to the Notice of Deficiency, a Petition was filed with this Court on March 10, 1986 and was assigned docket number 6171-86.

(h) On November 7, 1990, a stipulated decision was entered that reserved the right of Petitioner and Mr. LaRosa to pursue action in appropriate federal courts with respect to interest claimed as due on the agreed deficiencies.

2

(i) Petitioner never met with or discussed tax issues with the attorney who entered his appearance on behalf of Mr. LaRosa and Petitioner in the Tax Court proceedings initiated in 1986. She was not interviewed, did not attend any deposition, and never spoke with any representative of the Government with regard to the proceedings, the issues therein, or the stipulated decision.

(j) On April 11, 1994, the IRS determined an overpayment with respect to Mr. LaRosa and Petitioner's 1981 tax year in the amount of $511,451, of which $457,890 was refunded and $53,561 was applied as a credit to the 1986 tax year.

(k) On April 11, 1994, the IRS determined an overpayment with respect to Mr. LaRosa and Petitioner's 1982 tax year in the amount of $1,019,434, which was refunded.

(l) On March 29, 1996, the United States filed a complaint in the U.S. District Court for the District of Maryland ("the District Court") to recover the refunds issued on April 11, 1994, invoking the Court's jurisdiction under IRC § 7405(b), which authorizes suit to recover "any portion of tax imposed by this title which has been erroneously refunded." *See United States v. LaRosa,* Docket No. 96-980 (D. Md.).

(m) On November 6, 1997, the District Court entered a judgment against Mr. LaRosa and Petitioner in the amount of $2,095,318.49 representing the refunds issued with respect to tax years 1981 and 1982 tax years and accrued interest.

(n) Petitioner never discussed the tax issues with the attorney who entered his appearance on behalf of Mr. LaRosa and Petitioner in the District Court proceedings. She was not interviewed, did not attend any deposition, and never spoke with any representative of the Government with regard to the proceedings, the issues therein, or the judgment entered.

3

(o)     On July 22, 1998, Congress enacted IRC § 6015 as part of the IRS Restructuring and Reform Act of 1998, the relief provisions of which were given retroactive effect with respect to any liability remaining unpaid as of the effective date.

(p)     On August 4, 2017, the United States filed a motion to reopen the District Court proceedings and renew the judgment lien. Petitioner was unaware that the judgment existed until the motion was filed.

(q)     By order dated October 5, 2017, the District Court reopened the case and renewed the judgment lien.

(r)     On October 31, 2019, the United States filed suit to foreclose the judgment lien on the personal residence of Petitioner and Mr. LaRosa. At this time, Mr. LaRosa was suffering, and continues to suffer from, advanced dementia.

(s)     As noted, on January 10, 2020, Petitioner filed the Request for relief from the pending liabilities pursuant to IRC § 6015(f). By letter dated January 24, 2020, the IRS refused to process Petitioner's request for relief. More than six months have passed since Petitioner's request was filed without a determination on the merits.

(t)     On January 21, 2020, Petitioner filed a Motion to Stay ("the Motion") the District Court proceedings. On April 21, 2020, the District Court granted the Motion: "Mrs. LaRosa filed her [R]equest with the IRS on January 10, 2020. [citations omitted] The six-month period for the IRS to respond will expire on July 10, 2020. Thereafter, Mrs. LaRosa may petition the Tax Court to determine the appropriate relief available to her. This action will be stayed as to Mrs. LaRosa until August 10, 2020, unless lifted earlier (or extended) based on the pace of

4

administrative proceedings." *United States v. LaRosa*, No. CV DKC 19-3181, 2020 WL 1929439, at *3, 125 A.F.T.R. 2d 2020-1800 at 6-7 (D. Md. Apr. 21, 2020).

7.    Petitioner satisfies the threshold conditions for relief under IRC § 6015(f) relief, as stated in Rev. Proc. 2013-34:

        (a)    The Request was timely filed;

        (b)    No assets were transferred between Petitioner and Mr. LaRosa as part of a fraudulent scheme;

        (c)    Mr. LaRosa did not transfer any disqualified assets to Petitioner;

        (d)    Petitioner had no reason or ability to know of inaccuracies in the 1981 and 1982 returns, the substance of the stipulated Tax Court decision, or the propriety of the refunds issued for tax years 1981 and 1982; and

        (e)    The income tax liabilities from which Petitioner seeks relief are solely related to Mr. LaRosa's income.

8.    Petitioner further demonstrated that she is entitled to relief under IRC § 6015(f) by establishing the following:

        (a)    Petitioner suffered severe physical, emotional, and psychological abuse at the hands of Mr. LaRosa, who maintained absolute control over the household finances.

        (b)    Petitioner was not able to review or ask questions regarding the joint tax returns at issue.

        (c)    Petitioner did not benefit from the liabilities beyond basic support.

        (d)    Petitioner will suffer economic hardship if relief is not granted.

5

(e)    Upon learning of the District Court judgment and her husband's advanced dementia, Petitioner, with the assistance of her adult children, engaged an accountant to prepare and file the federal and state income tax returns since tax year 2015. Petitioner is in compliance.

9.    Based on the relevant facts and circumstances, it is inequitable to hold Petitioner liable for the amounts due with respect to tax years 1981 and 1982.

WHEREFORE, Petitioner respectfully requests that the Court determine that Petitioner is entitled to relief pursuant to IRC § 6015(f), determine that Petitioner is not liable for the amounts underlying the judgment entered in the District Court with respect to tax years 1981 and 1982, and grant such other and further relief as justice may require.

Respectfully submitted,

**ADMITTED**

Paul T. Butler
Tax Court Bar No. BP0403
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Suite 260
Washington, DC 20001
Tel. (202) 790-6998
Fax: (212) 808-8108
pbutler@kflaw.com

**ADMITTED**

Caroline D. Ciraolo
Tax Court Bar No. KC0286
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Suite 260
Washington, DC 20001
Tel. (443) 845-4898
Fax: (212) 808-8108
cciraolo@kflaw.com

6



**IRS** Department of the Treasury
Internal Revenue Service

P.O. Box 120053, Stop 840F
Covington KY 41012

In reply refer to: 0297549509
Jan. 24, 2020  LTR 3658C  C3
███████████  198612 30     X
                         00010741
                    BODC: SB

CATHERINE L LAROSA
CAROLINE D CIRAOLO
KOSTELANETZ & FINK LLP
601 NEW JERSEY AVE NW STE 620
WASHINGTON DC 20001

Social security number: ███████████

Form: 8857
Tax years: 1981  1982  1986

Contact person: Ms. Sullivan
Employee identification number: 1000197469
Contact telephone number: 855-851-2009

Dear Taxpayer:

We received your Form 8857, Request for Innocent Spouse Relief, but
couldn't process your form because our records show no amount is
currently owed and no additional assessments for tax years 1981, 1982,
and 1986. In the future, if you're contacted regarding any changes to
your return that'll result in a balance due, you can re-file Form
8857, Request for Innocent Spouse Relief.

Innocent spouse doesn't consider relief for erroneous refunds. We're
returning your original form.

Please review Publication 971, Innocent Spouse Relief, for more
information about filing an innocent spouse claim. You can get this or
any other form or publication mentioned in this letter by visiting our
website at www.irs.gov/forms-pubs or by calling 800-TAX-FORM
(800-829-3676).

If you have questions, you can call the person listed at the top of
this letter between 7:30 a.m. and 3:30 p.m. ET.

If you prefer, you can write to the address at the top of the first
page of this letter.

When you write, include a copy of this letter, and provide your
telephone number and the hours we can reach you in the spaces below.

Telephone number ( )_____ Hours _____

Keep a copy of this letter for your records.

Thank you for your cooperation.

CATHERINE L LAROSA
CAROLINE D CIRAOLO
KOSTELANETZ & FINK LLP
601 NEW JERSEY AVE NW STE 620
WASHINGTON  DC  20001

Sincerely yours,

Anthony Woodson, Senior Manager
Innocent Spouse Operation

Enclosures:
Your Form 8857
Your correspondence

**IRS** Department of the Treasury
Internal Revenue Service

P.O. Box 120053, Stop 840F
Covington KY 41012

CATHERINE L LAROSA
CAROLINE D CIRAOLO
KOSTELANETZ & FINK LLP
601 NEW JERSEY AVE NW STE 620
WASHINGTON DC 20001

CUT OUT AND RETURN THE VOUCHER IMMEDIATELY BELOW IF YOU ONLY HAVE AN INQUIRY.
DO NOT USE IF YOU ARE MAKING A PAYMENT.

CUT OUT AND RETURN THE VOUCHER AT THE BOTTOM OF THIS PAGE IF YOU ARE MAKING A PAYMENT,
EVEN IF YOU ALSO HAVE AN INQUIRY.

---

The IRS address must appear in the window.
0297549509

BODCD-SB

Use for inquiries only

| | |
|---|---|
| Letter Number: | LTR3658C |
| Letter Date : | 2020-01-24 |
| Tax Period : | 198612 |



CATHERINE L LAROSA
CAROLINE D CIRAOLO
KOSTELANETZ & FINK LLP
601 NEW JERSEY AVE NW STE 620
WASHINGTON DC 20001

INTERNAL REVENUE SERVICE
P.O. Box 120053, Stop 840F
Covington KY 41012

TV LARO 30 0 198612 670 0000000000

---

The IRS address must appear in the window.
0297549509

BODCD-SB

Use for payments

Letter Number: LTR3658C
Letter Date : 2020-01-24
Tax Period : 198612

CATHERINE L LAROSA
CAROLINE D CIRAOLO
KOSTELANETZ & FINK LLP
601 NEW JERSEY AVE NW STE 620
WASHINGTON DC 20001

INTERNAL REVENUE SERVICE

OGDEN UT 84201-0102

TV LARO 30 0 198612 670 0000000000



Catherine L. LaRosa,

      Petitioner

    v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 10164-20
Document No. 4

# Motion for Summary Judgment


Catherine L. LaRosa,

     Petitioner

     v.

Commissioner of Internal Revenue

     Respondent

Electronically Filed

Docket No. 10164-20

Document No. 4

# Motion to Dismiss for Lack of Jurisdiction

US TAX COURT
RECEIVED

NOV 10 2020
2:52 PM

SD

US TAX COURT
eFILED

NOV 10 2020

CATHERINE L. LAROSA,

      Petitioner,

ELECTRONICALLY FILED

      v.

Docket No.   10164-20

COMMISSIONER OF INTERNAL REVENUE,

      Respondent

# RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

# UNITED STATES TAX COURT

| | | |
|---|---|---|
| CATHERINE L. LAROSA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 10164-20 |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| | ) | Filed Electronically |
| | ) | |
| Respondent. | ) | |

## MOTION TO DISMISS FOR LACK OF JURISDICTION

RESPONDENT MOVES, that this case be dismissed for lack of jurisdiction upon the ground that no tax liability arose after July 22, 1998, or arose on or before July 22, 1998, but remained unpaid as of that date, for the 1981 and 1982 tax years, so the Court does not have jurisdiction under I.R.C. § 6015(e) to consider petitioner's request for relief from joint and several liability under I.R.C. section 6015(f) for those years.

IN SUPPORT THEREOF, respondent respectfully states:

1.     On July 10, 2020, petitioner filed a petition with this Court alleging she is entitled to relief from joint and several liability under I.R.C. § 6015(f) in connection with restitution for an erroneous refund of interest she is required to repay to the United States for her 1981 and 1982 tax years.

2.     As set forth in the memorandum of law filed concurrently with this motion, the Court lacks jurisdiction to consider petitioner's request for relief from

joint and several liability under I.R.C. section 6015(f)[1] because section 6015

applies only to liabilities for tax arising after July 22, 1998, and to any liability for

tax arising on or before July 22, 1998, but remaining unpaid as of that date.

 (a) As of July 22, 1998, petitioner and her husband, Dominick

LaRosa, had fully paid the deficiencies in tax asserted against them for the tax

years at issue (i.e., tax years 1981 and 1982).

 (b) The only liability petitioner and Dominick LaRosa owe is

restitution for an erroneous refund of interest related to tax years 1981 and 1982.

 (c) Because the erroneous refund is not a tax liability, the Court does

not have jurisdiction under section 6015(e) to hear petitioner's section 6015(f)

request for relief.

 3. Respondent's counsel left a voicemail message for petitioner's

counsel on November 9, 2020.  As of the filing of this motion, counsel for the

parties have not spoken.  Accordingly, petitioner's views on the motion are not

known.

---

[1] All references to statutes are to Title 26 of the Internal Revenue Code (IRC)
unless otherwise noted.

WHEREFORE, it is prayed that this motion be granted.


MICHAEL J. DESMOND
Chief Counsel
Internal Revenue Service


Date: 11/10/2020                    By: _____

DEBORAH ALOOF
Senior Counsel
(Small Business/Self-Employed)
Tax Court Bar No. AD0260
77 K Street NE
MS K-2600
Washington, DC 20002
Telephone: 202-803-9207
Email: deborah.aloof@
    irscounsel.treas.gov


OF COUNSEL:
JOSEPH W. SPIRES
Division Counsel
(Small Business/Self-Employed)
NANCY B. ROMANO
Area Counsel
(Small Business/Self-Employed:Area 2)
JEFFREY E. GOLD
Associate Area Counsel
(Small Business/Self-Employed)

US TAX COURT
RECEIVED

NOV 10 2020
2:49 PM

SD

US TAX COURT
eFILED

NOV 10 2020

CATHERINE L. LAROSA,
                Petitioner,

                                                    ELECTRONICALLY FILED

        v.                                          Docket No.    10164-20

COMMISSIONER OF INTERNAL REVENUE,
                Respondent


# RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION


**SERVED Nov 10 2020**

# UNITED STATES TAX COURT

| | | |
|---|---|---|
| CATHERINE L. LAROSA, | ) | |
| | ) | Docket No. 10164-20 |
| Petitioner, | ) | |
| | ) | |
| COMMISSIONER OF INTERNAL | ) | |
| REVENUE, | ) | Filed Electronically |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Respondent files this Memorandum of Law in support of his Motion to Dismiss for Lack of Jurisdiction. The Court lacks jurisdiction to consider petitioner's request for relief from joint and several liability under I.R.C. section 6015(f)[1] because section 6015 applies only to liabilities for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, but remaining unpaid as of that date. As of July 22, 1998, petitioner and her husband Dominick LaRosa ("Mr. LaRosa") had fully paid the deficiencies in tax asserted against them for the tax years at issue; i.e., tax years 1981 and 1982. The only liability petitioner and Mr. LaRosa owe is restitution for an erroneous refund of interest related to tax years 1981 and 1982. Because the erroneous refund is not a

---

[1] All references to statutes are to Title 26 of the Internal Revenue Code (IRC) unless otherwise noted.

tax liability, the Court does not have jurisdiction under section 6015(e) to hear

petitioner's section 6015(f) request for relief.

## BACKGROUND

Petitioner seeks equitable relief pursuant to section 6015(f) from "liabilities

assessed by the Internal Revenue Service (IRS) for tax years 1981 and 1982."

Petition, ¶ 2.  On December 3, 1985, respondent made jeopardy assessments of

income tax liabilities, penalties, and interest for the LaRosas' 1981, 1982, and

1983 tax years.  Attached hereto as **Exhibit A** and **Exhibit B** are copies of account

transcripts for the LaRosas' 1981 and 1982 tax years, respectively, showing the

December 3, 1985 jeopardy assessment.  The same day, respondent levied on the

LaRosas' assets, which assets were held in escrow pending a determination of their

federal tax liability.  Respondent subsequently issued a notice of deficiency for the

LaRosas' 1981, 1982, and 1983 tax years.  The LaRosas timely petitioned this

Court for a determination of tax owed for all three years (the 1980s TC case) (Tax

Court docket number 6171-86).

The parties settled the 1980s TC case and, by stipulated decision entered on

November 7, 1990, the LaRosas and respondent agreed the LaRosas owed

deficiencies and penalties as follows:

| Tax Year | Deficiency | Additions to Tax/Penalties Internal Revenue Code Section | | | |
|---|---|---|---|---|---|
| | | 6653(b) | 6653(b)(1) | 6653(b)(2) | 6661 |
| 1981 | $284,407 | $82,322 | -- | -- | -- |
| 1982 | $820,787 | -- | $246,236 | 30% of interest due on $770,376 from 4/15/83 to 12/3/85 | $82,079 |
| 1983 | $468,081 | -- | $140,424 | 30% of interest due on $1,060,555 from 4/15/84 to 12/3/85 | $46,808 |

Attached hereto as **Exhibit C** is a copy of the stipulated Decision Document entered for Tax Court docket number 6171-86.

The stipulated decision document included "below-the-line" language reserving the LaRosas' "right to pursue an action in the appropriate federal court with respect to the interest claimed to be due by the I.R.S. on the respective deficiencies." Although not reflected in the stipulated decision document, the LaRosas and respondent also agreed "that [the LaRosas] had overpaid their taxes for the years 1984 and 1985." United States v. LaRosa, 993 F.Supp. 907, 910 (D. Md. 1997). The LaRosas and respondent agreed, for settlement purposes, that the total underpayment for 1981 through 1983 was $9,744,587, and the total overpayment for 1984 and 1985 was $6,120,204. Id. The portion of the underpayment in excess of the overpayment, $3,624,583, was paid via check by the LaRosas. Id.

The LaRosas argued in a subsequent refund claim filed with respondent that interest under section 6601 should not have accrued after the jeopardy assessment

and levy on December 3, 1985, because the funds were under the control of the

IRS when they were placed in escrow.  In 1994, respondent issued the LaRosas a

refund totaling $1,530,884.96, comprised of interest on deficiencies of tax for the

1981 and 1982 tax years as well as interest that accrued on that interest pursuant to

section 6611.  Respondent refunded $1,477,324.22 of the total $1,530,884.96

directly to the LaRosas.  Exhibits A and B.  The remaining $53,560.74 was

credited to their 1986 tax year.  Exhibit A.

In 1996 the IRS determined the LaRosas' refund claim should have been

denied and filed a timely lawsuit pursuant to section 7405 in federal district court.

United States v. LaRosa, docket number 96-980 (opinion reported at 993 F. Supp.

907 (D. Md. 1997)) (the "Erroneous Refund Suit").  The district court granted the

United States' motion for summary judgment, finding the LaRosas were not

entitled to the refund and must repay it.  Id. at 918.  Judgment was entered against

the LaRosas in the amount of $2,095,318.49 (the amount of the refund plus section

6602 interest accruals), with interest continuing to accrue pursuant to section 6602

until the erroneous refund was paid in full.  The LaRosas appealed, and the Court

of Appeals for the Fourth Circuit affirmed.  United States v. LaRosa, 155 F.3d 562

(4th Cir. 1998), cert. denied 526 US 1004 (1999).

After the district court granted the United States' motion for summary

judgment in 1997, the United States filed an abstract of judgment in Montgomery

County, Maryland creating a judgment lien on all of the LaRosas' real property in

Montgomery County, MD.  In 2017, the United States moved to reopen the case to

renew the judgment lien.  Over the LaRosas' objection, the district court granted

the United States' motion and the judgment lien was renewed.

The United States filed a Complaint to Foreclose on the Judgment Lien on

October 31, 2019, which case is captioned <u>United States of America v. Catherine</u>

<u>Loretta LaRosa, as Trustee of the Catherine Loretta LaRosa Revocable Trust,</u>

<u>Dominick LaRosa, and Catherine LaRosa</u>, case no. 19-03181 (the "Foreclosure

Suit").  On January 10, 2020, petitioner submitted to the IRS a Form 8857, Request

for Innocent Spouse Relief (the "Form 8857"), seeking section 6015(f) equitable

relief for the 1981, 1982, and 1986 tax years.  Upon petitioner's motion, the district

court stayed the Foreclosure Suit until the IRS fully processed her request for

section 6015 relief and during any ensuing Tax Court litigation concerning the

request for relief.  <u>United States v. LaRosa</u>, 2020 WL 1929439 (D. Md. Apr. 21,

2020). The Foreclosure Suit is stayed, "until August 10, 2020, unless lifted earlier

(or extended) based on the pace of administrative proceedings."  <u>Id</u>. at *3.

The IRS did not process petitioner's Form 8857.  Instead, by correspondence

dated January 24, 2020, the IRS returned petitioner's request for section 6015(f)

relief.  The IRS advised petitioner that the Form 8857 could not be processed

because "our records show no amount is currently owed and no additional

assessments for tax years 1981, 1982, and 1986" and because "[i]nnocent spouse doesn't consider relief for erroneous refunds." Id.  The IRS's January 24, 2020, correspondence to petitioner is attached to the petition filed in this case.  Because the Form 8857 was returned and not processed, the IRS did not consider petitioner's request on its merits.  The IRS did not make a determination of eligibility with respect to her section 6015(f) request.

Petitioner timely filed a petition commencing this case July 10, 2020, requesting relief under section 6015(f) with respect to the liabilities assessed against her for the 1981 and 1982 tax years.[2]  Petition, ¶ 2.  The petition was served on respondent on September 16, 2020.  Petitioner resided in Rockville, Maryland when she filed the petition and she is currently married to Mr. LaRosa.  Petitioner did not request traditional section 6015(b) relief or allocated section 6015(c) relief.

_____

[2] Petitioner did not petition the Court for a grant of section 6015(f) relief for the other tax year at issue in the 1980s Tax Court case (i.e., 1983).  The petition also does not put the 1986 tax year at issue.  Respondent notes the self-computed tax liability for petitioner and Mr. LaRosa's 1986 tax year was fully paid in 1994, when $53,560.74 was transferred from their 1981 tax account to their 1986 tax account.  Thus, prior to 1998 petitioner and Mr. LaRosa's 1986 tax liability was fully paid (and no additional amount was ever assessed), so any petition pertaining to 1986 will suffer the same jurisdictional flaw as the current petition.

## ANALYSIS

The relief sought by petitioner in this case is a determination that she should be relieved from joint and several liability under the provisions of section 6015(f) for the liabilities assessed against her for the 1981 and 1982 tax years. As set forth below, the subject of the Foreclosure Suit is liability for an erroneous refund, which is not a tax. No tax liability arose or remained unpaid for the 1981 or 1982 tax years on or after July 22, 1998, which is the effective date for section 6015, with respect to petitioner and, therefore, the Court lacks jurisdiction to consider her request for relief under section 6015.

Petitioner and Mr. LaRosa filed income tax returns for the 1981 and 1982 tax years claiming the filing status married filing jointly (the joint income tax returns). Petition ¶ 6.a. Spouses who file joint income tax returns together generally are jointly and severally liable for any tax liability for the reported tax year. IRC § 6013(d)(3). A taxpayer who files a joint income tax return in general is liable for all tax due in connection with that return, whether or not the tax is attributable that taxpayer's income or the other joint filer's income.

The notice of deficiency for the 1981, 1982, and 1983 tax years that formed the basis of the 1980 TC case was issued to both petitioner and Mr. LaRosa. Petitioner was a named litigant in the 1980s TC case. Petitioner was jointly and

severally liable for the tax due for the 1981 and 1982 tax years in connection with those income tax returns.

A spouse may be relieved of joint and several liability if he or she is granted relief under section 6015(b), (c), or (f). Each of these provisions contains different requirements for relief. Only if each requirement of section 6015(b), (c), or (f) is met can a taxpayer be relieved of joint and several liability under the relevant subsection.

The Petition states that relief is sought only under the provisions of section 6005(f).[3] Petition, ¶ 5. Section 6015(f) allows equitable relief from joint and several liability where "(A) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either), and (B) relief is not available to such individual under subsection (b) or (c)." I.R.C. § 6015(f)(1). The Tax Court's jurisdiction over relief from joint and several liability pursuant to section 6015 is set forth in section 6015(e) (setting forth the time by which taxpayers requesting judicial review of requests for section 6015 relief must file a petition).

_____

[3] Respondent agrees for reasons not stated in this Memorandum of Law that as a matter of law petitioner cannot be relieved from joint and several liability under the provisions of section 6015(b) or (c). If the Motion to Dismiss for Lack of Jurisdiction is denied and relief under section 6015(b) and (c) is deemed at issue, respondent will address the legal and factual issues precluding relief under those avenues (as well as additional legal and factual issues precluding relief under section 6015(f)).

Section 6015 was added to the Code in 1998 by the Internal Revenue

Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105–206, sec.

3201, 112 Stat. 685, 740.  Section 3201(g) of RRA 1998 provides that section

6015 applies to any liability for tax arising after July 22, 1998, and to any liability

for tax arising on or before July 22, 1998, but remaining unpaid as of that date.

Therefore, section 6015 does not apply if the tax was paid in full on or before July

22, 1998.  See Brown v. Commissioner, T.C. Memo. 2002–187; Washington v.

Commissioner, 120 T.C. 137, 145 (2003); Treas. Reg. § 1.6015-8(a).[4]

For tax year 1981, the application of credits and payments by the LaRosas

are reflected by IRS account transcript posting dates showing full payment no later

than April 15, 1986.  Exhibit A.  For tax year 1982, the application of credits and

payments by the LaRosas are reflected by IRS account transcript posting dates

showing full payment no later than April 30, 1991.  Exhibit B.  Thus, petitioner's

tax liabilities for 1981 and 1982 were fully paid prior to July 22, 1998.

---

[4] A requesting spouse seeking relief from joint and several liability for amounts
paid on or before July 22, 1998, must request relief under section 6013(e) and the
regulations thereunder.  Washington v. Commissioner, 120 T.C. 137, 145 (2003).
Treas. Reg. § 1.6015-8(b).  Section 6013(e) was revoked by RRA 1998.  Under
section 6013(e), a claim for relief in the Tax Court was an affirmative defense in a
deficiency proceeding.  See Brown v. Commissioner, T.C. Memo. 2002-187 at *2
n.2.  As the Court noted in Brown v. Commissioner, "We are aware of no
provision in the Internal Revenue Code which allows us to grant relief under
section 6013(e) to a taxpayer, such as petitioner in this case, who filed a "stand-
alone" petition under section 6015(e)(1)."  Id.

Once an assessed tax liability is paid (i.e., satisfied), the tax liability and the assessment are extinguished.[5]  Bilzerian v. United States, 86 F.3d 1067, 1069 (11th Cir. 1996) ("[O]nce an assessment is paid, it is extinguished").  See also O'Bryant v. United States, 49 F.3d 340, 346 (7th Cir. 1995) ("The money the O'Bryants have now is not the money that the IRS' original assessment contemplated, since that amount was already paid); United States v. Wilkes, 946 F.2d 1143, 1152 (5th Cir.1991) (applying the principle that when a taxpayer makes payment against a tax assessment, the assessment is extinguished in the amount paid).

Courts have consistently held that once tax liabilities and assessments are satisfied, and thus extinguished, an erroneous refund does not revive them.  "[O]nce a tax liability is paid, no erroneous refund—whether rebate or non-rebate—can revive it."  Bilzerian v. United States, 86 F.3d at 1069.  "When once paid, a tax is gone, and a refund of the money does not restore it."  Kelley v. United States, 30 F.2d 193 (9th Cir. 1929).  See also United States v. Wilkes, 946 F.2d at 1152 (holding a tax assessment cannot be revived by the IRS's giving the taxpayer an unsolicited, erroneous refund).  Therefore, having been fully paid by 1991, petitioner's 1981 and 1982 tax liabilities have been fully extinguished.

---

[5] Section 6201 gives the Secretary of Treasury authority to assess taxes.  Per section 6203, tax assessments are "made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary."

Furthermore, respondent's issuance of an erroneous refund to petitioner did not create a new tax liability or assessment, as it was a non-rebate refund not subject to the deficiency procedures set forth in section 6212. The authority to recover an erroneous refund through the deficiency procedures under section 6212 is limited to instances where a rebate refund is issued to the taxpayer, as prescribed by section 6211.

When respondent issues a refund, it is either a rebate refund or a non-rebate refund. Section 6211(b)(2) defines a "rebate" as "an abatement, credit, refund, or other repayment as was made on the ground that the tax imposed … was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made." A refund is a rebate refund if it is "issued on the basis of a substantive recalculation of a taxpayer's tax liability, e.g., the amount of tax due is less than the tax shown on the return." YRC Regional Transport, Inc. v. Commissioner, T.C. Memo. 2014-112 at *2 (citations omitted). Respondent may recoup an erroneous rebate refund "through the deficiency procedures of sections 6211–6215 or an action for recovery of an erroneous refund under section 7405." Id. A non-rebate refund "is any other amount returned to the taxpayer (that is, one not based on a determination that the tax is not owing, but because of other mistakes: for example, a computer error or an incorrect credit to a taxpayer's account)." Bilzerian v. United States, 86 F.3d at 1069. A non-rebate refund is not collectible through

deficiency procedures; respondent must collect non-rebate erroneous refunds through erroneous refund suits under section 7405 or available administrative collection procedures. YRC Regional Transport v. Commissioner, T.C. Memo. 2014-112 at *3.

The Court has explained that "[r]efunds issued by the Commissioner by accident are non-rebate refunds, while rebate refunds are issued because of the taxpayer's tax liability." YRC Regional Transport v. Commissioner, T.C. Memo. 2014-112 at *2 (citing O'Bryant v. United States, 49 F.3d at 346; Clark v. United States, 63 F.3d 83, 86 n.5 (1st Cir.1995)). In O'Bryant, married taxpayers filed an income tax return for the 1984 tax year. O'Bryant v. United States, 49 F.3d at 341. In 1985, the IRS assessed an additional amount due (which amount was agreed to by the parties). Id. After the taxpayers paid the additional amount due, they received a refund because the payment they made was wrongly posted to their account twice. Id. The IRS later demanded return of the refunded amount, plus interest, and when it was not repaid the IRS attempted to use summary collection procedures under § 6502(a) to recoup it. Id. The Eleventh Circuit affirmed the district court's determination that the IRS had to institute an erroneous refund suit in order to involuntarily collect the erroneous refund. Id. The Eleventh Circuit made a distinction

> between the money that the O'Bryants now possess (a
> refund caused by the IRS' error) and the money they

> originally owed the IRS (their tax liability). The money the O'Bryants have now is not the money that the IRS' original assessment contemplated, since that amount was already paid. Rather, it is a payment the IRS accidentally sent them. They owe it to the government because they have been unjustly enriched by it, not because they have not paid their taxes.

Id. at 346.  Stated differently,

> erroneous refunds and tax liabilities are simply not of the same ilk. When a taxpayer mails the IRS a check in the full amount of his assessed tax liability, and the IRS cashes it, the taxpayer's liability is satisfied, and unless a new assessment is made later on, any erroneous, unsolicited refund that the IRS happens to send the taxpayer must be handled on its own terms, not under the rubric of the assessed liability.

Id. at 347.

The erroneous refund at issue is a non-rebate refund, because it was issued due to an error in determining the date on which interest accruals ceased on the deficiencies, not on a redetermination of petitioner and Mr. LaRosa's tax liabilities for those years.  Moreover, petitioner and Mr. LaRosa's tax liabilities for the 1981 and 1982 tax years were conclusively determined in the 1980s TC case, and respondent had no authority to determine another deficiency for these years to recoup the erroneously issued refund.  See § 6212(c) (prohibiting the determination of an additional deficiency for a tax year if the taxpayer files a timely petition with the Tax Court, subject to certain exceptions not relevant here).  The liabilities resulting from the 1980s TC case were fully paid through payments and transfers

with posting dates no later than 1986 and 1991, respectively, at which time the

liabilities and their assessments were extinguished.  See Bilzerian v. United States,

86 F.3d at 1069.  To recoup the erroneous refunds of interest made in 1994, the

United States properly and timely exercised its only remedy absent voluntary

repayment by commencing the Erroneous Refund Suit.  YRC Regional Transport

v. Commissioner, T.C. Memo. 2014-112 at *3 (explaining that deficiency

procedures are not available for recovery of a non-rebate refund).

 After prevailing in the Erroneous Refund Suit, the Code did not permit

respondent to assess the amount petitioner and Mr. LaRosa were ordered to repay,

because that amount is not a tax liability.  In fact, the district court entering a

judgment against petitioner and Mr. LaRosa characterized the government's

erroneous refund suit as one for restitution.  United States v. LaRosa, 993 F.Supp,

at 915 ("Defendants have also asserted that the Government should be estopped

from seeking restitution.").  Collection of the amount owed is under the authority

of the Department of Justice; that agency filed the judgement, timely moved to

renew the judgment, and brought the Foreclosure Suit.  There is no tax deficiency

resulting from the Erroneous Refund Suit, the liabilities and assessments in

connection with the 1980s TC case were not revived by the Erroneous Refund Suit,

and petitioner and Ms. LaRosa's account balances for the 1981 and 1982 tax years

are each $0.

Regarding the LaRosas, there is a "fundamental difference in character between the money that the [taxpayers] now possess (a refund caused by the IRS's error) and the money they originally owed the IRS (their tax liability)." O'Bryant v. United States, 49 F.3d at 346. Like the taxpayers in O'Bryant, petitioner and Mr. LaRosa currently have a debt to respondent not because their tax years 1981 and 1982 tax liabilities and assessments were revived by the issuance of the erroneous refund – and not because they have not paid their 1981 and 1982 tax liabilities. Rather, petitioner and Mr. LaRosa were enriched by the erroneous refund. Id. Petitioner has no obligation to respondent for tax years 1981 and 1982 assessments or tax liabilities. The 1981 and 1982 assessments and tax liabilities were extinguished as of the application of their overpayments from the 1985 tax year, credited as of April 15, 1986, and their payments in 1991, respectively. There is no dispute that prior to filing their claim for refund in the 1990s, and respondent issuing the erroneous refund in 1994, petitioner and Mr. LaRosa fully paid their tax liabilities for the 1981 and 1982 tax years as determined in the 1980s TC case.

The extinguishment of the 1981 and 1982 tax liabilities and assessments with no revival is fatal to the Court's jurisdiction in this case because petitioner did not have an unpaid liability on July 22, 1998, and no action by the IRS revived her liabilities to give rise to a liability after July 22, 1998. Section 6015 applies only to

liabilities for tax arising after July 22, 1998, and to any liability for tax arising on

or before July 22, 1998, but remaining unpaid as of that date.  There are no tax

liabilities from which the Court may grant petitioner relief.  With no deficiency in

tax – with no tax owed – petitioner cannot properly bring a case before the Court

under section 6015.

# CONCLUSION

Based on the foregoing, respondent respectfully requests that his Motion to Dismiss for Lack of Jurisdiction, filed concurrently with this Memorandum of Law, be granted.

MICHAEL J. DESMOND
Chief Counsel
Internal Revenue Service

Date: 11/10/2020          By: _____

DEBORAH ALOOF
Senior Counsel
(Small Business/Self-Employed)
Tax Court Bar No. AD0260
Internal Revenue Service
77 K Street, NE
MS K-2600
Washington, DC 20002
Telephone: 202-803-9207
Email: deborah.aloof@
      irscounsel.treas.gov

OF COUNSEL:
JOSEPH W. SPIRES
Division Counsel
(Small Business/Self-Employed)
NANCY B. ROMANO
Area Counsel
(Small Business/Self-Employed:Area 2)
JEFFREY E. GOLD
Associate Area Counsel
(Small Business/Self-Employed)



## Internal Revenue Service
United States Department of the Treasury

| This Product Contains Sensitive Taxpayer Data |
| --- |

# Account Transcript

|  |  |
| --- | --- |
| Request Date: | 06-02-2020 |
| Response Date: | 06-02-2020 |
| Tracking Number: | 100536094750 |

FORM NUMBER:     1040
TAX PERIOD:      Dec. 31, 1981

TAXPAYER IDENTIFICATION NUMBER: ▆▆▆▆▆
SPOUSE TAXPAYER IDENTIFICATION NUMBER: ▆▆▆▆▆

▆▆  LORE LARO

#### --- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

| | | |
| --- | --- | --- |
| ACCOUNT BALANCE: | 0.00 | |
| ACCRUED INTEREST: | 0.00 | AS OF: Mar. 16, 2020 |
| ACCRUED PENALTY: | 0.00 | AS OF: Mar. 16, 2020 |

ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):                      0.00

#### ** INFORMATION FROM THE RETURN OR AS ADJUSTED **

| | |
| --- | --- |
| EXEMPTIONS: | 06 |
| FILING STATUS: | Married Filing Joint |
| ADJUSTED GROSS INCOME: | 28,301.51 |
| TAXABLE INCOME: | 14,207.65 |
| TAX PER RETURN: | 1,888.61 |
| SE TAXABLE INCOME TAXPAYER: | 0.00 |
| SE TAXABLE INCOME SPOUSE: | 0.00 |
| TOTAL SELF EMPLOYMENT TAX: | 0.00 |

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)       Apr. 15, 1982
PROCESSING DATE                                                    May 17, 1982

| TRANSACTIONS |
| --- |

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
| --- | --- | --- | --- | --- |
| 150 | Tax return filed | 19821808 | 05-17-1982 | $1,869.00 |
| n/a | 28211-107-52795-2 | | | |
| 806 | W-2 or 1099 withholding | | 04-15-1982 | -$2,318.17 |
| 836 | Credit you chose to apply to following tax period's taxes | | 04-15-1982 | $429.56 |
| 846 | Refund issued | | 05-14-1982 | $19.61 |
| 570 | Additional account action pending | | 02-17-1986 | $0.00 |

Docket No. 10164-20
Exhibit A

| 360 | Fees and other expenses for collection | | 02-17-1986 | $0.25 |
|---|---|---|---|---|
| 606 | Write-off of balance due | | 02-17-1986 | -$0.25 |
| 570 | Additional account action pending | | 04-21-1986 | $0.00 |
| 360 | Fees and other expenses for collection | | 04-21-1986 | $0.25 |
| 606 | Write-off of balance due | | 04-21-1986 | -$0.25 |
| 300 | Additional tax assessed by examination - jeopardy assessment | 19862108 | 12-03-1985 | $1,124,924.00 |
| n/a | 52251-334-10000-5 | | | |
| 320 | Penalty for fraud 07-16-1999 | 19862108 | 12-03-1985 | $85,322.00 |
| 190 | Interest charged for late payment | 19862108 | 12-03-1985 | $710,208.00 |
| 640 | Advance payment of tax owed | | 12-17-1985 | -$721.37 |
| 570 | Additional account action pending | | 06-02-1986 | $0.00 |
| 420 | Examination of tax return | | 12-13-1985 | $0.00 |
| 673 | Payment | | 01-24-1986 | -$191.00 |
| 360 | Fees and other expenses for collection | | 06-09-1986 | $191.00 |
| 672 | Removed payment | | 01-24-1986 | $191.00 |
| 300 | Additional tax assessed by examination 00-00-0000 | 19863008 | 08-04-1986 | $0.00 |
| n/a | 28247-541-10169-6 | | | |
| 640 | Advance payment of tax owed | | 12-06-1985 | -$23,473.98 |
| 570 | Additional account action pending | | 10-27-1986 | $0.00 |
| 520 | Bankruptcy or other legal action filed | | 12-12-1986 | $0.00 |
| 520 | Bankruptcy or other legal action filed | | 12-12-1986 | $0.00 |
| 840 | Refund issued | | 04-07-1987 | $26,560.11 |
| 770 | Interest credited to your account | | 04-07-1987 | -$3,086.13 |
| 520 | Bankruptcy or other legal action filed | | 06-17-1987 | $0.00 |
| 290 | Additional tax assessed 00-00-0000 | 19872808 | 07-27-1987 | $0.00 |
| n/a | 28254-583-16022-7 | | | |
| 521 | Removed bankruptcy or other legal action | | 02-18-1988 | $0.00 |
| 521 | Removed bankruptcy or other legal action | | 02-18-1988 | $0.00 |
| 520 | Bankruptcy or other legal action filed | | 12-12-1986 | $0.00 |
| 550 | IRS can collect until 09-05-1993 | | 02-02-1990 | $0.00 |
| 321 | Reduced or removed penalty for fraud | | 12-03-1985 | -$477,140.00 |
| 323 | Penalty for fraud | 19862108 | 12-03-1985 | $477,140.00 |
| 341 | Reduced or removed interest charged for late payment | | 04-22-1991 | -$188,358.45 |
| 301 | Reduced or removed prior tax assessed by Exam | | 04-22-1991 | -$840,517.00 |
| n/a | 28247-491-70012-1 | | | |
| 421 | Closed examination of tax return | | 04-22-1991 | $0.00 |
| 521 | Removed bankruptcy or other legal action | | 04-01-1991 | $0.00 |
| 340 | Interest charged for late payment | 19912208 | 06-10-1991 | $6,235.82 |
| 290 | Additional tax assessed 00-00-0000 | 19912208 | 06-10-1991 | $0.00 |
| n/a | 28254-537-17351-1 | | | |
| 670 | Payment Miscellaneous Payment | | 04-15-1986 | -$709,221.00 |

JA35

|       | 1040 198512 |  |  |
|-------|-------------|--|--|
| 700 | Credit transferred in from<br>1040 198512 | 04-15-1986 | -$188,063.00 |
| 521 | Removed bankruptcy or other legal action | 01-25-1990 | $0.00 |
| 341 | Reduced or removed interest charged for late payment | 04-11-1994 | -$271,800.46 |
| 290 | Additional tax assessed<br>00-00-0000 | 19941308 04-11-1994 | $0.00 |
| n/a | 28254-477-15047-4 |  |  |
| 826 | Credit transferred out to<br>1040 198612 | 04-15-1986 | $27,560.00 |
| 826 | Credit transferred out to<br>1040 198612 | 04-15-1986 | $261.58 |
| 826 | Credit transferred out to<br>1040 198612 | 04-15-1986 | $406.15 |
| 826 | Credit transferred out to<br>1040 198612 | 04-15-1986 | $403.06 |
| 826 | Credit transferred out to<br>1040 198612 | 04-15-1986 | $399.99 |
| 826 | Credit transferred out to<br>1040 198612 | 04-15-1986 | $475.96 |
| 826 | Credit transferred out to<br>1040 198612 | 04-15-1986 | $24,054.00 |
| 776 | Interest credited to your account | 04-11-1994 | -$24,716.99 |
| 846 | Refund issued | 04-08-1994 | $457,890.30 |
| 776 | Interest credited to your account | 04-11-1994 | -$214,933.59 |
| 290 | Additional tax assessed<br>00-00-0000 | 19942608 07-11-1994 | $0.00 |
| n/a | 28254-571-96003-4 |  |  |
| 420 | Examination of tax return | 10-11-1994 | $0.00 |
| 560 | IRS can assess tax until<br>04-10-1996 | 11-01-1994 | $0.00 |
| 421 | Closed examination of tax return | 04-26-1995 | $0.00 |

```
This Product Contains Sensitive Taxpayer Data
```

JA36


## Internal Revenue Service
### United States Department of the Treasury

| This Product Contains Sensitive Taxpayer Data |
| --- |

## Account Transcript

|  |  |
| --- | --- |
| Request Date: | 06-02-2020 |
| Response Date: | 06-02-2020 |
| Tracking Number: | 100536094750 |

FORM NUMBER:      1040
TAX PERIOD:       Dec. 31, 1982

TAXPAYER IDENTIFICATION NUMBER:         
SPOUSE TAXPAYER IDENTIFICATION NUMBER:

████  LORE LARO

        --- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

| | | |
| --- | --- | --- |
| ACCOUNT BALANCE: | 0.00 | |
| ACCRUED INTEREST: | 0.00 | AS OF: Mar. 16, 2020 |
| ACCRUED PENALTY: | 0.00 | AS OF: Mar. 16, 2020 |

ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):                         0.00

        ** INFORMATION FROM THE RETURN OR AS ADJUSTED **

| | |
| --- | --- |
| EXEMPTIONS: | 06 |
| FILING STATUS: | Married Filing Joint |
| ADJUSTED GROSS INCOME: | 51,177.02 |
| TAXABLE INCOME: | 31,321.23 |
| TAX PER RETURN: | 6,044.00 |
| SE TAXABLE INCOME TAXPAYER: | 0.00 |
| SE TAXABLE INCOME SPOUSE: | 0.00 |
| TOTAL SELF EMPLOYMENT TAX: | 0.00 |

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)        Apr. 15, 1983
PROCESSING DATE                                                    May 23, 1983

| TRANSACTIONS |
| --- |

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
| --- | --- | --- | --- | --- |
| 150 | Tax return filed | 19831908 | 05-23-1983 | $6,044.00 |
| n/a | 28211-113-24133-3 | | | |
| 716 | Credit you chose to apply from prior tax period | | 04-15-1982 | -$429.56 |
| 430 | Estimated tax payment | | 01-20-1983 | -$7,500.00 |
| 836 | Credit you chose to apply to following tax period's taxes | | 04-15-1983 | $1,885.56 |
| 420 | Examination of tax return | | 10-30-1985 | $0.00 |

Docket No. 10164-20
Exhibit B

| 300 | Additional tax assessed by examination – jeopardy assessment | 19862108 | 12-03-1985 | $1,992,247.00 |
| n/a | 52251-334-10001-5 | | | |
| 320 | Penalty for fraud 07-16-1999 | 19862108 | 12-03-1985 | $330,290.00 |
| 240 | Jeopardy assessment | | 12-03-1985 | $82,079.00 |
| | 07-16-1999 | | | |
| n/a | 52251-334-10001-5 | | | |
| 190 | Interest charged for late payment | 19862108 | 12-03-1985 | $724,562.00 |
| 300 | Additional tax assessed by examination 00-00-0000 | 19863008 | 08-04-1986 | $0.00 |
| n/a | 28247-541-10168-6 | | | |
| 520 | Bankruptcy or other legal action filed | | 12-12-1986 | $0.00 |
| 520 | Bankruptcy or other legal action filed | | 12-12-1986 | $0.00 |
| 520 | Bankruptcy or other legal action filed | | 06-17-1987 | $0.00 |
| 521 | Removed bankruptcy or other legal action | | 02-18-1988 | $0.00 |
| 521 | Removed bankruptcy or other legal action | | 02-18-1988 | $0.00 |
| 520 | Bankruptcy or other legal action filed | | 12-12-1986 | $0.00 |
| 550 | IRS can collect until 09-05-1993 | | 02-02-1990 | $0.00 |
| 321 | Reduced or removed penalty for fraud | | 12-03-1985 | -$1,028,115.00 |
| 323 | Penalty for fraud | 19862108 | 12-03-1985 | $1,028,115.00 |
| 241 | Reduced or removed miscellaneous penalty | | 12-03-1985 | -$117,146.00 |
| n/a | 28247-491-70013-1 | | | |
| 243 | Miscellaneous penalty | | 12-03-1985 | $117,146.00 |
| n/a | 52251-334-10001-5 | | | |
| 301 | Reduced or removed prior tax assessed by Exam | | 04-22-1991 | -$1,171,460.00 |
| n/a | 28247-491-70013-1 | | | |
| 421 | Closed examination of tax return | | 04-22-1991 | $0.00 |
| 521 | Removed bankruptcy or other legal action | | 04-01-1991 | $0.00 |
| 300 | Additional tax assessed by examination – quick assessment | 19911908 | 04-01-1991 | $0.00 |
| n/a | 52251-087-12000-1 | | | |
| 340 | Interest charged for late payment 00-00-0000 | 19911908 | 04-01-1991 | $486,631.31 |
| 670 | Payment Miscellaneous Payment | | 04-30-1991 | -$500,472.22 |
| 680 | Payment of interest only Miscellaneous Payment | | 04-30-1991 | -$16,863.69 |
| 340 | Interest charged for late payment | 19912208 | 06-10-1991 | $16,863.97 |
| 290 | Additional tax assessed 00-00-0000 | 19912208 | 06-10-1991 | $0.00 |
| n/a | 28254-537-17352-1 | | | |
| 570 | Additional account action pending | | 06-04-1991 | $0.00 |
| 660 | Estimated tax payment 1120 198412 | | 03-15-1985 | -$1,144,316.86 |
| 670 | Payment Miscellaneous Payment 1120 198412 | | 04-26-1984 | -$12,500.00 |
| 670 | Payment Miscellaneous Payment 1120 198412 | | 06-22-1984 | -$12,500.00 |

| 670 | Payment<br>Miscellaneous Payment<br>1120 198412 | | 01-02-1985 | -$140,000.00 |
| 670 | Payment<br>Miscellaneous Payment<br>1040 198512 | | 04-15-1986 | -$29,170.95 |
| 700 | Credit transferred in from<br>1040 198512 | | 04-15-1986 | -$94,739.00 |
| 700 | Credit transferred in from<br>1040 198512 | | 04-22-1991 | -$510,560.82 |
| 710 | Credit you chose to apply from prior tax period | | 03-15-1984 | -$81.74 |
| 570 | Additional account action pending | | 07-12-1991 | $0.00 |
| 521 | Removed bankruptcy or other legal action | | 01-25-1990 | $0.00 |
| 341 | Reduced or removed interest charged for late payment | | 04-11-1994 | -$827,658.25 |
| 290 | Additional tax assessed<br>00-00-0000 | 19941308 | 04-11-1994 | $0.00 |
| n/a | 28254-477-15048-4 | | | |
| 840 | Refund issued | | 04-15-1994 | $1,019,433.92 |
| 770 | Interest credited to your account | | 04-15-1994 | -$191,775.67 |
| 290 | Additional tax assessed<br>00-00-0000 | 19942608 | 07-11-1994 | $0.00 |
| n/a | 28254-571-96004-4 | | | |
| 420 | Examination of tax return | | 10-11-1994 | $0.00 |
| 560 | IRS can assess tax until<br>04-10-1996 | | 11-01-1994 | $0.00 |
| 421 | Closed examination of tax return | | 03-31-1995 | $0.00 |

```
This Product Contains Sensitive Taxpayer Data
```

UNITED STATES TAX COURT

DOMINICK IAROSA AND )
LORETTA IAROSA, )
)
Petitioners, )       Docket No. 6171-86
)
v. )
)
COMMISSIONER OF INTERNAL REVENUE, )
)
Respondent. )

DECISION

Pursuant to the agreement of the parties in the above-entitled case, it is:

ORDERED AND DECIDED: That the following statement shows the deficiencies in income taxes and additions to taxes due from the petitioners for the taxable years 1981, 1982 and 1983 without taking into consideration the jeopardy assessments made on December 3, 1985:

1981

Deficiency in income tax, without
taking into consideration the
jeopardy assessment made on
December 3, 1985:                                    $284,407.00

Payments/Refunds

        12/17/85          721.00
        12/17/85       23,474.00
        04/07/87      <23,474.00>

Total Payments                                           721.00
Deficiency (to be paid)                             $283,686.00

That there is an addition to tax due from the petitioners for the taxable year 1981, under the provisions of I.R.C. §6653(b) in the amount of $85,322.00.

Docket No. 10164-20
Exhibit C

1

1 OF 5

SERVED NOV - 7 1990

1982

That there is a deficiency in income tax due from the petitioners for the taxable year 1982, in the amount of $820,787.00.

That there is an addition to tax due from the petitioners for the taxable year 1982, under the provisions of I.R.C. §6653(b)(1), in the amount of $246,236.00.

That there is an addition to tax due from the petitioners for the taxable year 1982 under the provisions of I.R.C. §6653(b)(2), equal to 30 percent of the statutory interest due on $770,376.00 from April 15, 1983 to December 3, 1985.

That there is an addition to tax due from the petitioners for the taxable year 1982, under the provisions of I.R.C. §6661, in the amount of $82,079.00.

1983

That there is a deficiency in income tax due from the petitioners for the taxable year 1983, in the amount of $468,081.00.

That there is an addition to tax due from the petitioners for the taxable year 1982, under the provisions of I.R.C. §6653(b)(1), in the amount of $140,424.00.

That there is an addition to tax due from the petitioners for the taxable year 1982 under the provisions of I.R.C. §6653(b)(2), equal to 30 percent of the statutory interest due on $1,060,555.00 from April 15, 1984 to December 3, 1985.

That there is an addition to tax due from the petitioners for the taxable year 1982, under the provisions of I.R.C. §6661, in the amount of $46,808.00.

*Edna G. Parker*

Judge

Entered: **NOV 7 1990**

\*    \*    \*    \*    \*

2 OF 5

It is stipulated that the Court may enter the foregoing decision.

In settling this case with the Internal Revenue Service (hereinafter, "IRS"), the taxpayers, Dominick LaRosa, Joseph LaRosa, and The LaRosa's International Fuel Co., Inc. (hereinafter, collectively, "the LaRosas"), reaffirm and reiterate that their federal income tax returns for the taxable years 1979 through 1983, the years covered by the Settlement Agreement, were filed correctly and properly under federal and state tax law.

The LaRosas are settling this case for the reasons stated in this settlement memorandum and specifically reserve all rights open to them to appeal or to otherwise contest their tax liability with the State of Maryland (hereinafter, "Maryland"), including their right to apply for a pardon from Maryland.

In settling this case with the IRS, the LaRosas state that they have committed no wrong in filing their federal and state income tax returns for the years covered by the Settlement Agreement, 1979 through 1983. The LaRosas deny committing any act or omitting any income that would cause any addition to tax under the Internal Revenue Code (hereinafter, the "Code"). The LaRosas enter into this Settlement Agreement for the sole and only purpose of finally disposing of theses United States Tax Court cases with the IRS.

The LaRosas maintain that their company intended to file and did file its 1979 and subsequent year federal and state corporate income tax returns and reported the income from the contracts involved in these cases on the completed contract method of accounting (hereinafter, "CCMA"). The LaRosas maintain that in 1979 when they obtained their first contracts that they kept their books on the CCMA. The LaRosas maintain that all the contracts involved in these cases consist of long-term contracts. The LaRosas maintain their company filed an election on its 1979 federal income tax return electing and advising the IRS that it was electing CCMA. The company's originally filed 1979 federal income tax return has been lost by the IRS. The LaRosas maintain their company was entitled to use the CCMA from 1979 through 1985 in reporting the income from the contracts involved in this case. The LaRosas and their company maintain they properly and timely filed, timely reported, and timely paid tax upon all the income from the contracts.

The LaRosas have agreed to settle for the following reasons;

3

3 OF 5

**First,** to try and possibly appeal this case would be a lengthy and costly process. This case probably would not be decided by the Tax Court for at least twelve (12) months or longer. The LaRosas also recognize the substantial possibility that the IRS would appeal any verdict unfavorable to the IRS, an appeal process which would probably consume more than a year. Thus, even when the LaRosas secure the favorable verdict, which they fully expect, the trial and appeal is expected to continue for more than two (2) years from the trial date.

**Second,** settlement will release all the money to them which the IRS has held under jeopardy assessments for over four (4) years. While the LaRosas maintained upon assessment, and continue to maintain, that the jeopardy assessments were improper, the reality is that access to and use of their money effectively has been restricted and extremely costly to the LaRosas for over four (4) years.

With the release of all of their funds, the LaRosas will restart their previously successful coal business in West Virginia, thereby employing several hundred currently unemployed workers and producing substantial revenues for the federal and state governments. Moreover, a prompt release of the money currently levied against by the IRS is essential to securing several lucrative coal supply contracts which must be bid on within the next several months. Prominent individuals concerned with the West Virginia's and Maryland's economies have implored the LaRosas to settle with the IRS so that they could restart their coal business and bring an immediate economic benefit to the various governments.

**Third,** the LaRosas recognize the inherent litigation risk in proceeding with a trial, even though they and their legal counsel believe their case is totally meritorious and that they would win.

**Fourth,** the LaRosa's tax advisors have advised them that settlement would enhance their tax planning capability for the taxable year 1990.

**Fifth,** the emotional toll on the LaRosas and their families has been devastating, and they want to end this nightmare of almost five years duration. For example, the LaRosas' parents are elderly and are experiencing health problems which normally affect their age group. The LaRosas recognize their parents' anguish over this case and believe that settlement is necessary to remove this parental concern and potential health detriment. Additionally, the strain on the wives of Dominick and Joseph LaRosa is acute, and Dominick LaRosa recognizes that his children have been and will continue to be adversely affected by protracted litigation.

4

4 OF 5

Finally, the LaRosas believe that this settlement establishes the principle and demonstrates what they have always advanced with the state and the IRS — that as taxpayers they were always, and are willing to pay their proper and fair share of taxes to the federal and state government.

That the petitioners waive all litigation costs incurred in this proceeding pursuant to the provisions of I.R.C. §7430.

It is stipulated that the petitioners have reserved the right to pursue an action in the appropriate federal court with respect to the interest claimed to be due by the I.R.S. on the respective deficiencies.

Abraham N. M. Shashy, Jr.
Chief Counsel
Internal Revenue Service

_George J. Rabil_ 6/11/90

GEORGE J. RABIL            DATED
Counsel for Petitioners
RG0208
905 16th St., N.W.
Suite 304
Washington, D.C. 20006
(202) 347-1843

By: _Lewis R. Caruzzo_     6/11/90

LEWIS R. CARUZZO   DATED
Special Trial Attorney
CL0034
Office of Special Litigation
Internal Revenue Service
514 Reporters Building
300 7th St., S.W.
Washington, D.C. 20024
(202) 252-8888

5

5 AF 5



**Received**
01/04/21 06:37 pm

**Filed**
01/04/21

Catherine L. LaRosa,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 10164-20

Objection to MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp.

Certificate of Service

**SERVED 01/04/21**

JA45


Catherine L. LaRosa,

      Petitioner

     v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 10164-20

# Opposition to MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp.

Certificate of Service

**SERVED 01/04/21**

| | |
|---|---|
| CATHERINE L. LaROSA, | |
| Petitioner, | |
| | Docket No.: 10164-20 |
| vs. | |
| COMMISSSIONER OF INTERNAL REVENUE, | Filed Electronically |
| Respondent | |

## PETITIONER'S OBJECTION TO RESPONDENT'S MOTION TO DISMISS

Pursuant to this Court's Order issued on November 13, 2020, Petitioner Catherine L. LaRosa (hereinafter "Petitioner," "Mrs. LaRosa," or "Loretta") hereby objects to Respondent's Motion to Dismiss her Petition for Determination of Relief from Joint and Several Liability and, in support thereof, states as follows.

### INTRODUCTION

The present action was commenced with the timely filing of a Petition for Determination of Relief from Joint and Several Liability on July 10, 2020. Petitioner filed her Request for Innocent Spouse Relief (IRS Form 8857) on January 10, 2020 ("Request for Relief") seeking equitable relief under 26 U.S.C. ("IRC") § 6015(f) from tax liabilities ensconced in a judgment entered against Petitioner and her husband, Dominick LaRosa ("Mr. LaRosa"), on November 5, 1997 by the U.S. District Court for the District of Maryland ("the Judgment"). *United States v. LaRosa,* Docket No. 8:96-cv-980. By letter dated January 24, 2020, and at the request of the Tax Division, U.S. Department of Justice, Respondent refused to process, and therefore denied, Petitioner's Request for Relief.

The tax liabilities reflected in the judgment, from which Petitioner seeks relief, came into existence prior to July 22, 1998 and remain unpaid. Petitioner did not materially participate in any proceedings prior to entry of the Judgment and had no prior opportunity to request relief from joint and several liability under IRC § 6015, which was enacted after the Judgment was entered.

## FACTS

Loretta is 75 years old, and resides in Rockville, Maryland with her husband, the non-petitioning spouse, Mr. LaRosa.[1] Petitioner is a 1964 graduate of Whitewood High School in Whitewood, Virginia, located in the rural southwestern portion of the state. After high school, Loretta found work in the secretarial pool at the National Rifle Association ("NRA") in the Washington, DC area. In 1965, at the age of 19, she met her future husband, Mr. LaRosa, who also worked for the NRA. Mr. LaRosa was born in a small rural town in Southern Italy and immigrated to the United States in 1960.

In 1968, Loretta and Mr. LaRosa married, and the following year Loretta gave birth to their first child and began a career as a stay-at-home mom. In 1971, Loretta gave birth to their second daughter. For a brief period of time in 1975, Loretta worked as a part-time secretary, but within a year her first son was born and she returned home full time. Her fourth and final child was born in 1978. In 2001, Loretta obtained a part-time sales position with Lord & Taylor, a department store, her first sustained employment outside of the home since starting a family in 1969.

---

[1] ███████ The facts set forth herein are derived from Loretta's recollection, discussions with witnesses, documents found in the LaRosa home, and publicly available documents, and were incorporated into Loretta's sworn statement in support of her Request for Relief.

LaRosa v. Commissioner
Docket No. 10164-20

From the time she married Mr. LaRosa in 1968 until she started working part-time in 2001, Loretta did not have any separate bank accounts nor did she have any separate source of income with the exception of the brief, part-time secretarial work mentioned above. Loretta did not handle any financial matters, and Mr. LaRosa never discussed family finances. Mr. LaRosa worked at the Pentagon through the mid-1970s and provided Loretta with $100 each week to buy groceries and other necessities for the entire family. From 1969 to 1983, the family lived in the Hillcrest Heights section of Prince George's County, Maryland, five minutes from Mr. LaRosa's parents.

In the mid-1970s, Mr. LaRosa left his government employment and formed LaRosa International Fuel Company, Inc. ("the Company"), which he ran with his brother, Joseph LaRosa. Joseph LaRosa served as the Company's bookkeeper and accountant. Mr. LaRosa never discussed the Company's operations or financial affairs with Loretta. On occasion, and at the direction and pursuant to the specific instructions of Mr. LaRosa, Loretta performed discrete administrative tasks, such as filing documents, picking up the mail from Mr. LaRosa's post office box, typing correspondence, and typing business checks to pay business expenses. In 1983, the family moved from Hillcrest Heights to the house in Rockville, in which Petitioner continues to reside.

Until the early 2000s, Joseph LaRosa prepared the Company's income tax returns as well as joint personal income tax returns for Mr. LaRosa and Loretta. Loretta was never included in discussions regarding the tax returns and was not given the opportunity to review any tax returns. In fact, after a minor argument with Loretta in 1968, Joseph LaRosa refused to speak with her or even acknowledge her presence. If Loretta answered the phone when Joseph LaRosa called for Mr. LaRosa, Joseph LaRosa would simply hang up. When Joseph LaRosa and Mr. LaRosa

spoke to each other, they did so in Italian, a language that Loretta does not speak or understand. If Loretta overheard an argument between Mr. LaRosa and his brother, and asked Mr. LaRosa about it, Mr. LaRosa would tell her to mind her own business. Based on the foregoing, Loretta simply had no way of learning anything about Mr. LaRosa's business affairs, the state of the family finances, or any tax information and had no reason or opportunity to challenge any information placed on the returns.

Beginning in the early 1980s, Mr. LaRosa provided Loretta with a small stipend each month to pay family household expenses. He would then force Loretta to gather the bills, including utility, phone, medical, school, credit card, etc., and grill her about every expense and charge. That interrogation would be followed by accusations of spending too much and exceeding the limited funds he allocated to her each month. Mr. LaRosa constantly badgered Loretta to spend less the next month.

████████████████████████████████████████████

████████████████████████████████ Loretta's responsibilities were reduced to what Mr. LaRosa considered "women's work" including all cleaning, laundry, cooking and taking care of the children. ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



When Loretta started working part-time at Lord & Taylor in 2001, she opened her first bank account since 1968. She used this account to deposit her meager wages. In 2010, Loretta secretly used these funds to purchase homeowner's insurance, something Mr. LaRosa refused to do despite her fears of fire or other damage to the home.



In the summer of 1984, more than a year before the jeopardy assessments, agents from the State of Maryland executed a search warrant and seized all of Mr. LaRosa's business records. When Loretta asked what was going on, Mr. LaRosa told her, "don't worry about it, I will take care of it" and "they are just out to get me because I am an immigrant." At the time, Loretta was spending all of her time caring for their children, who ranged in age from 7 to 16, and had no

access to or ability to gain additional information regarding the situation.  The State of Maryland ultimately charged and, on December 2, 1985, convicted Mr. LaRosa, Joseph LaRosa, and the Company of conspiracy to violate Maryland income tax laws and filing fraudulent state income tax returns for the years 1981, 1982, and 1983.  Loretta was only vaguely aware of the nature of the charges, never discussed the substance of the case with Mr. LaRosa or anyone else, and did not attend the trial.  Dominick ultimately served more than 8 months in prison, from August 1987 through April 1988.[2]

As Respondent points out, the genesis of the current dispute occurred on December 3, 1985, the day after the Maryland convictions, when Respondent made jeopardy assessments against Mr. LaRosa and Loretta for the tax years 1979 through 1983, levied their bank accounts, and seized the family's vehicles.  Loretta had to borrow her father-in-law's vehicle just to get her children to school and other activities.

The jeopardy assessments and seizures were the start of incredibly complicated and tortured litigation involving Mr. LaRosa (and Loretta, in name only), Joseph LaRosa, and the Company.  Multiple complaints and petitions were filed in the U.S. Tax Court, the U.S. Court of Federal Claims, the U.S. District Court for the District of Maryland, the U.S. Court of Appeals for the Fourth Circuit, and the U.S. Supreme Court.  This litigation has continued for more than 33 years.

In January 1986, one month after the jeopardy seizures, Respondent agreed to place the levy proceeds into an escrow account pending resolution of U.S. Tax Court proceedings (Docket No. 6171-86).  Loretta was only aware of the existence of the escrow agreement because, in

---

[2]  On December 24, 1992, Dominick was pardoned by Maryland Governor William Donald Schaeffer.

order to pay monthly living expenses, she had to request funds from Mr. LaRosa, who in turn had to request release of escrowed funds from his attorney, George Rabil, who in turn requested permission to access the escrowed funds from Respondent. On November 7, 1990, a stipulated decision was entered in the U.S. Tax Court proceedings.[3]

Notwithstanding the stipulated Decision, the escrow agreement remained in place. In March 1991, a Closing Agreement (Form 906) was executed to resolve the tax years 1984 and 1985, and the liabilities were paid in full. In May 1991, the escrow agreement was terminated, and the remaining balance in escrow was paid to Mr. LaRosa.

Throughout the protracted legal proceedings, Loretta was a named party and ostensibly represented by the same attorneys who represented her husband, but she never met or spoke to any attorneys about any of the cases. No one explained to her the proceedings, the issues involved, or her rights with respect to the tax years at issue. Loretta never appeared inside any courtroom. She was never interviewed or deposed and had very little understanding of the proceedings. In fact, one need go no further than the language of this Decision to confirm that Loretta was a party to the litigation in name only and did not materially participate in the proceedings:

> In settling this case with the Internal Revenue Service (hereinafter, "IRS"), the taxpayers, *Dominick LaRosa, Joseph LaRosa, and The LaRosa's International Fuel Co., Inc.* (hereafter, collectively, "the LaRosas"), reaffirm and reiterate that their federal income tax returns for the taxable years 1979 through 1983, the years covered by the Settlement Agreement, were filed correctly and properly under federal and state tax law.
>
> * * *
>
> Fifth, the emotional toll on the LaRosas and their families has been devastating, and they want to end this nightmare of almost five years duration. For example,

---

[3] *See* Decision, Exhibit C to Respondent's Memorandum in Support of the Motion to Dismiss.

the LaRosas' parents are elderly and are experiencing health problems which normally affect their age group. The LaRosas recognize their parents' anguish over this case and believe that the settlement is necessary to remove this parental concern and potential health detriment. Additionally, *the strain on the wives* of Dominick and Joseph LaRosa is acute, and Dominick LaRosa recognizes that his children have been and will continue to be adversely affected by protracted litigation.[4]

If Loretta asked her husband about any of the pending court proceedings, Mr. LaRosa became irritated and angry, often engaging in verbal or physical abuse. He refused to answer questions and insisted that he was taking care of everything, had done nothing wrong, and was being targeted due to his success as an immigrant in the coal business. Mr. LaRosa consistently and constantly portrayed himself as a victim of the government, claiming that he was battling to correct the injustice inflicted upon him and his family.

Each year, when it came time to prepare the tax returns, Mr. LaRosa directed Loretta to gather records for medical expenses, charitable contributions, property taxes, and health insurance. He would then meet with his brother Joseph LaRosa, who prepared the personal and business tax returns. Since 1969, with the possible exception of the years she worked for Lord & Taylor, Loretta was not even required to file tax returns. Nonetheless, joint income tax returns were prepared, and Mr. LaRosa told Loretta where to sign. She was not given the opportunity to review the returns. Even if she was able to review, Loretta would have no basis upon which to question the information reported and, in light of the abuse, would not have done so.

Years after Mr. LaRosa was convicted and decided to stop using his brother to prepare his personal returns, he hired a return preparer with no input from or consultation with Loretta and followed the same process as he had with his brother. The new return preparer also never

---

[4] *Id.* (emphasis added).

LaRosa v. Commissioner
Docket No. 10164-20

spoke with Loretta about the tax returns, never explained the entries, and never advised that she had no filing requirement and could choose not to sign the joint returns. Again, because Mr. LaRosa did not share business or personal financial information with Loretta, she simply had no basis upon which to determine or question the accuracy of the returns, and she certainly had no intent to file false returns.

Since January 1986, when the IRS levied financial accounts following the jeopardy assessments, Mr. LaRosa has battled with the government over the underlying assessments, the application of funds seized, the computation of interest due and owing, and the amount of interest to be refunded. Mr. LaRosa and his brother, Joseph, pursued these claims by and through various attorneys, none of whom ever discussed the existence or nature of the claims or issues involved with Loretta. Her role was limited to signing documents that Mr. LaRosa directed her to sign, including – she now knows - the refund claim Mr. LaRosa filed in April of 1993 that led to Respondent issuing refunds in April of 1994.

During the lengthy litigation battles, Mr. LaRosa sought assistance from elected officials, including Maryland Congresswoman Constance Morella. By letter dated March 24, 1994, Respondent replied to a request from Congresswoman Morella for information regarding Mr. LaRosa's claims. The IRS apologized "that **Mr. LaRosa's** dealings with the IRS have been less than satisfactory" and asked that the Congresswoman "extend our apology to **Mr. LaRosa**."[5] The IRS further advised that "**Mr. LaRosa** will receive refund checks for 1981 and 1982 in a few weeks if there are no other outstanding balances due." *Id.* (emphasis added). On April 11, 1994, the IRS issued two refund checks. Mr. LaRosa bragged to Loretta that he got refunds from the

---

[5] *See* Exhibit A**,** Letter from Congresswoman Constance Morella to Dominick LaRosa dated March 28, 1994 (emphasis added).

IRS, but he did not show her the checks or tell her the amounts of the refunds.  According to Mr. LaRosa, the refunds were spent on professional fees associated with the litigation and other expenses.[6]

On March 29, 1996, the Department of Justice filed suit in the U.S. District Court for the District of Maryland to recover the refunds issued on April 11, 1994 under IRC § 7405(b), seeking "to recover erroneous *tax refunds* issued to defendants Dominick and Catherine LaRosa."[7]  Upon learning of the suit, and without telling Loretta, Mr. LaRosa instructed her not to open the door of their home to anyone for a period of approximately three weeks.  Shortly thereafter, Loretta was served with the complaint.  When she asked Mr. LaRosa to explain, he refused, telling her that he would take care of it.  Mr. LaRosa's attorney, Robert Nath, filed an answer and counterclaim.  He also served as counsel in an appeal to the Fourth Circuit and separate but related cases in the Court of Federal Claims.  Loretta met Mr. Nath once, when he came to the house to drop off papers for Mr. LaRosa.  She never had any substantive conversations with Mr. Nath, was never interviewed, and played no role in any of the litigation.

The government's motion for summary judgment in the suit to recover the erroneous refunds included a 12-page declaration by IRS employee George Pelikan, which explained the complex computations that lead to the issuance of the refunds in April of 1994.[8]  The court granted the government's motion and entered judgment on November 7, 1997, more than eight months prior to the enactment of IRC § 6015.  Loretta first learned of the judgment twenty years later, when the United States moved to renew the judgment on August 4, 2017.  The court

---

[6] *See* Exhibit B**,** Letter from Alfred Rontondaro to IRS Commissioner Rossotti dated April 24, 2000**.**
[7] *See* Exhibit C, Complaint to Recover Erroneous Tax Refunds (emphasis added).
[8] *See* Exhibit D, Declaration of George Pelikan dated March 6, 1997.

LaRosa v. Commissioner
Docket No. 10164-20

granted the motion on October 5, 2017, extending the judgment lien for an additional 20 years. More recently, the Department of Justice filed a complaint on October 31, 2019 seeking to foreclose the judgment lien obtained on November 7, 1997 and sell Petitioner's home, which she continues to share with Mr. LaRosa ███████████████████████████████ ███ .

## ANALYSIS

*Historic Development of "Innocent Spouse" Provisions*

Prior to 1971, a spouse could only challenge joint and several liability by establishing that he or she did not file a joint return. This understandably led to harsh results and in response, Congress enacted the original "innocent spouse" provision at IRC § 6013(e)(1) (Pub. L. No. 91-679, §1, 84 Stat. 2063) which provided:

Under regulations prescribed by the Secretary or his delegate, if −

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,
(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and
(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax ... for such taxable year to the extent that such liability is attributable to such omission from gross income.

IRC § 6013(e)(1) was a substantive provision for relief from liability that could be raised in response to proposed adjustments. *Kirtley v. Bickestaff,* 488 F.2d 768, 770 (10th Cir. 1973) ("Nothing in § 6013(e) or its legislative history indicates any intent by Congress to create a new exception to § 7421 [the tax anti-injunction act] or a new procedure for litigating tax questions ...

LaRosa v. Commissioner
Docket No. 10164-20

The subject section provides only for a new substantive tax relief element"). The IRC § 6013(e) defense could be raised by a taxpayer who paid an assessed deficiency in full and brought a refund suit in a district court or the Court of Federal Claims. *Yuen v. United States,* 825 F .2d 244 (9th Cir. 1987); *Busse v. United States,* 542 F.2d 421, 425-427 (7th Cir. 1976); *Sanders v. United States,* 509 F.2d 162 (5th Cir. 1975); *Dakil v. United States,* 496 F.2d 431 (10th Cir. 1974).

In seeking relief, taxpayers were also permitted to assert IRC §6013(e)(1) in response to suits filed in the district courts by the United States to reduce tax assessments to judgment under IRC § 7402. *United States v. Grable,* 946 F.2d 896 (table), 1991 U.S. App. LEXIS 24484 (unpublished opinion) (6th Cir. 1991); *United States v. Diehl,* 460 F. Supp. 1282 (S.D. Tex. 1976), *aff'd per curiam,* 586 F.2d 1080 (table), 1978 U.S. App. LEXIS 6785 (unpublished opinion) (5th Cir. 1978). In addition, taxpayers could raise this defense in response to a suit to foreclose on tax liens under IRC § 7403. *United States v. Shanbaum,* 10 F.3d 305 (5th Cir. 1994); *United States v. Hoffmann,* 1993 U.S. Dist. LEXIS 15872 (D. Utah 1993). Finally, former IRC § 6013(e)(1) relief could be raised in bankruptcy proceedings. *In re Hopkins,* 146 F.3d 729 (9th Cir. 1998); *In re Lilly,* 76 F.3d 568 (4th Cir. 1996). There is no evidence that Congress, in updating and expanding innocent spouse avenues and procedures for relief over the years, intended to curtail any of these judicial avenues for relief.

*Current Innocent Spouse Provisions*

On July 22, 1998, Congress repealed IRC § 6013(e)(1) and enacted IRC § 6015 as part of the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, § 3201(a), 112 Stat. 734. The new relief provision was given retroactive effect with respect to any liability remaining unpaid as of July 22, 1998. RRA 1998 § 3201(g)(1), 112 Stat. 740. "It is clear that Congress intended section 6015 to be applied broadly and expansively to provide relief for joint

and several tax liabilities remaining unpaid as of the effective date of section 6015." *Hopkins v.*

*Commissioner,* 120 T.C. 451, 459 (2003).

After 27 years, Congress had determined the former IRC § 6013(e)(l) to be inadequate,

imposing substantive conditions for granting relief that were too narrow and procedural avenues

to obtaining relief that were too limited.  In describing the legislative fix, the House Ways and

Means Committee explained:

> The Committee is concerned that the innocent spouse provisions of present law
> are inadequate. . . . The bill generally makes innocent spouse status easier to
> obtain. The bill eliminates all of the understatement thresholds and requires only
> that the understatement of tax be attributable to an erroneous (and not just a
> grossly erroneous) item of the other spouse .... The bill specifically provides that
> the Tax Court has jurisdiction to review ***any*** denial (or failure to rule) by the
> Secretary regarding an application for innocent spouse relief. The Tax Court may
> order refunds as appropriate where it determines the spouse qualifies for relief . .
> . .

H. Rep. 105-364 (Part 1), at 61 (emphasis added).

Under IRC § 6015, a taxpayer can seek relief under subsection (b), which requires an

understatement of tax attributable to erroneous items on the joint return, subsection (c), available

to taxpayers no longer married, legally separated, or not living together, or subsection (f), which

provides:

> (1) taking into account all the facts and circumstances, it is inequitable to hold the
> individual liable for any unpaid tax or any deficiency (or any portion of either);
> and
> (2) relief is not available to such individual under subsection (b) or (c), the
> Secretary may relieve such individual of such liability.

IRC § 6015(e) provides procedural rules for, among other things, stand-alone innocent

spouse cases in which the requesting spouse seeks affirmative relief, rather than asserting IRC §

6015 as a defense in a deficiency proceeding pursuant to IRC § 6213(a). *Wilson v.*

*Commissioner,* 705 F.3d 980, 994 (9th Cir. 2013); *Davidson v. Commissioner,* 144 T.C. 273, 276

(2015); *see also Cheshire v. Commissioner,* 282 F.3d 326 (5th Cir. 2002); *Porter v. Commissioner,* 130 T.C. 115, 124 (2008) ("[I]n a deficiency case we hold a trial de novo relating to a taxpayer's affirmative defense that he or she is entitled to innocent spouse relief under section 6015(f).").

In enacting IRC § 6015, Congress also specifically addressed the effect of a final decision in a prior court proceeding; i.e., the effect of the doctrine of *res judicata* on the availability of relief. IRC § 6015(g)(2) provides:

> In the case of any election under subsection (b) or (c), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding. The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

On July 18, 2002, the Secretary published regulations that are applicable to all elections or requests for relief filed on or after such date which provide "[a] requesting spouse has not meaningfully participated in a prior proceeding if, due to the effective date of section 6015, relief under section 6015 was not available in that proceeding." Treas. Reg. § 1.6015–1(e). The legislative history clearly indicates that a spouse may elect relief under IRC § 6015 without regard to whether he or she was denied relief under former IRC § 6013(e). See H. Conf. Rept. 105–599, *supra* at 251, 1998–3 C.B. at 10051998–3 C.B. at 1005. Moreover, an individual who seeks relief from joint liability may, "in addition to any other remedy provided by law," petition the Tax Court to determine the appropriate relief available. IRC § 6015(e)(1)(A).

*Petitioner's Request for Relief*

Mrs. LaRosa seeks relief from joint and several liability for the erroneous refund of statutory interest.[9]  Respondent contends that the liability does not represent "any unpaid tax or any deficiency (or any portion of either)" as contemplated by IRC § 6015(f).  Petitioner disagrees.

*The Erroneous Refund Suit is an Action for Recovery of a Tax*

It is undisputed that the erroneous refund in this case consists of statutory interest.  IRC § 6601(e)(1) provides that, "[a]ny reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax."  The regulations further provide:

> Any interest prescribed by section 6601 shall be assessed and collected in the same manner as tax and shall be paid upon notice and demand by the district director or the director of the regional service center. Any reference in the Code (except in subchapter B, chapter 63, relating to deficiency procedures) to any tax imposed by the Code shall be deemed also to refer to the interest imposed by section 6601 on such tax.

26 C.F.R. § 301.6601-1(f).  "The [Internal Revenue] Code's design for such [deficiency] interest is to assimilate it to the tax itself…  For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax." *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1382 (Ct. Cl. 1972); *see also, Fisher v. United States*, 80 F.3d 1576, 1580 (Fed. Cir. 1996) ("The Internal Revenue Code treats interest on a tax liability as an

---

[9] Petitioner has located only one opinion issued by the Tax Court in which a request for innocent spouse relief was raised with respect to an erroneous refund.  The Court there considered the request and rejected it because the petitioner had not alleged sufficient facts to be entitled to relief.  *Hollis v. Comm'r*, T.C. Summ. 2004-30 (Mar. 15, 2004).  No cases have been identified in which the Court made a determination that it did not have jurisdiction to consider relief under IRC § 6015 for erroneous refunds.

integral part of the liability itself."); *Gannet v. United States*, 877 F.2d 965, 967 (Fed. Cir. 1989) ("Section 6601(e)(1) ... treats accrued interest as part of the unpaid tax....").

IRC § 7401 empowers the Secretary of the Treasury and his delegates to authorize an action for the collection or recovery of taxes, fines, penalties or forfeiture. Pursuant to this authority, the IRS Office of Chief Counsel referred its claim against Mr. and Mrs. LaRosa to the U.S. Department of Justice, Tax Division, and, on March 29, 1996, the United States filed suit to recover the erroneous refund under IRC § 7405(b), which provides that, "[a]ny portion of a ***tax imposed by this title*** which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States." (emphasis supplied). In granting the government's motion for summary judgment, the district court summarized the case a one "to recover refunds of interest on ***tax underpayments*** which it claims the IRS erroneously issued to defendants Dominick LaRosa and Catherine LaRosa for the years 1981 and 1982." *United States v. LaRosa*, 993 F. Supp. 907, 908–09 (D. Md. 1997) (emphasis added).

The authority granted in IRC § 7401 for suits to collect or recover tax includes underpayment interest. Similarly, the reference in IRC § 7405 authorizing suit to recover any erroneously refunded "tax imposed by this title" includes underpayment interest. Finally, the reference in IRC § 6015(f) to "unpaid tax" from which the Court can grant equitable relief must also include liability for underpayment interest.

This Court wrestled with the definition of underlying tax liability when considering its jurisdiction in Collection Due Process proceedings. In *Katz v. Commissioner,* a case involving non-deficiency jurisdiction over collection matters under IRC §§ 6320 and 6330, this Court held

that the term "underlying tax liability" in IRC § 6330(d)(1)[10], "include[s] any amounts owed by a taxpayer pursuant to the tax laws. In this case, the underlying tax liability includes the tax deficiency, additions to tax, and statutory interest." 115 T.C. 329, 338-339 (2000).

Having invoked the District Court's jurisdiction to collect a refund of "tax" and having obtained a judgment on November 7, 1997 pursuant to such invocation, the government cannot reasonably take the position, more than twenty-three years later, that the same unpaid judgment is a claim for something other than tax. In exercising the wide latitude and equitable discretion intended by Congress when enacting the innocent spouse provisions, the Court should adopt a similar definition of the term "unpaid tax (or any portion of)" contained in IRC § 6015.

### The Erroneous Refund was a Rebate Refund

Assuming, *arguendo*, Respondent is correct that once a tax liability is paid, the liability is extinguished and the original assessment is not revived by the issuance of an erroneous refund,[11] the analysis does not end there. If that were the end of the story, Respondent would not be seeking to foreclose on and sell Loretta's home. Respondent argues that Petitioner is responsible for the liability for which the judgment was obtained in 1997 and renewed in 2017, and so we look to the nature of that underlying liability.

---

[10] IRC § 6330(d)(1), which limited this Court's jurisdiction to review determinations in collection due process matters to cases over which the Court had jurisdiction over underlying tax liabilities, was repealed in 2006 by P.L. 109-280, § 855(a), when the Court was given exclusive jurisdiction over collection due process determinations.

[11] Respondent cites *Bilzerian v. United States*, 86 F.3d 1067, 1069 (11th Cir. 1996), but the Sixth and Ninth Circuits disagree. *See Greer v. Commissioner*, 557 F.3d 688 (6th Cir. 2009) ("Erroneous rebate refunds revive tax liability because they are tax amounts; the refund returns (part of) the taxpayer's payment, thus negating the payment and reviving the liability."); *Brookhurst, Inc. v. United States*, 931 F.2d 554, 557-558 (9th Cir. 1991) (an erroneous rebate refund makes a previously paid tax liability "unpaid"); *Beer v. Commissioner*, 733 F.2d 435 (6th Cir. 1984), (erroneous refund created by IRS mistake of law created a deficiency in tax).

LaRosa v. Commissioner
Docket No. 10164-20

Erroneous refunds represent money paid by the IRS to which the recipient is not entitled, and generally fall in one of two categories: rebate and non-rebate. "A rebate refund occurs when the IRS determines that the taxpayer's liability as recorded on IRS records is reduced or eliminated. The determination of a reduced liability results in an abatement of the original assessment. A non-rebate refund is any other amount returned to the taxpayer (that is, one not based on a determination that the tax is not owing, but because of other mistakes: for example, a computer error or an incorrect credit to a taxpayer's account)." *Bilzerian v. United States*, 86 F.3d at 1069; *see also Acme Steel Co. v. Commissioner,* T.C. Memo 2003-118 ("Rebate refunds are issued on the basis of a substantive recalculation of a taxpayer's tax liability, e.g., the amount of tax due is less than the tax shown on the return. Sec. 6211(b)(2)."); *Thomas v. Commissioner,* T.C. Memo. 2014-118, n. 4 (gathering cases involving non-rebate refunds).

To recover rebate refunds, Respondent may authorize the Department of Justice to file suit to recover the refund under IRC § 7405. *See Acme Steel Co., supra.* Respondent also may make a supplemental assessment under IRC § 6204, including issuing a notice of deficiency to the extent required, if the statute of limitations on assessment under IRC § 6501 remains open. *See Brookhurst, Inc. v. United States,* 931 F.2d 554, 556-557 (9th Cir. 1991). IRC § 6204 authorizes the IRS to, "within the period prescribed for assessment, make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect." As IRC § 6204 lies outside of subchapter B of Chapter 63, this authority is not limited to tax and also allows supplemental assessments of underpayment interest under IRC § 6601(e)(1) within the time set forth under IRC § 6601(g), which provides that such interest "may be assessed and collected at any time during the period within which the tax to which such interest relates may be collected."

If the erroneous refund is a non-rebate refund, as Respondent suggests, the supplemental assessment procedures do not apply, and this Court would not have jurisdiction over an IRS action to recover a non-rebate refund. *See Singleton v. United States,* 128 F.3d 833, 839 (4th Cir. 1997). Respondent must file suit against the taxpayer pursuant to IRC § 7405. *O'Bryant v. United States,* 49 F.3d 340 (1995). Of course, the instant proceeding is for relief from joint and several liability under IRC § 6015, not for recovery of an erroneous refund.

In *Singleton*, the Fourth Circuit considered the distinction between a rebate and a non-rebate refund where the IRS erroneously recomputed and increased a general business credit carryforward claimed on the taxpayers' return. The IRS later adjusted the return by reversing the recomputation, adding statutory interest, and making a supplemental assessment under IRC § 6204 for the amount of the erroneous refund plus the accrued interest. *Id.* at 834. The Court held that the IRS' issuance of the refund was based upon substantive recalculations of taxpayers' liability and, as such, was a rebate refund included within the statutory definition of a deficiency. *Id.* at 838.

The erroneous refund in the instant case was not the result of a clerical, accounting, or computer error that bears no relation to the LaRosas' tax liability. Mr. LaRosa filed a claim for refund of the statutory interest assessed and collected with respect to tax years 1981 and 1982 in April 1993. After a year of careful consideration and complex calculations, as set forth in the twelve-page declaration submitted by the government in the district court proceedings, as well as contacts by Mr. LaRosa and individuals on his behalf, Respondent finally issued the refunds in April 1994. The refunds issued to the LaRosas were the product of IRS error in computing the liability for statutory interest, which, under IRS § 6601, is to be treated the same as the tax upon

which it accrues. Thus, the erroneous refund is a rebate refund within the meaning of IRC § 6211.

Accordingly, Respondent could have made a supplemental assessment to recover the erroneous refund pursuant to IRC § 6204 in lieu of filing suit pursuant to IRC § 7405 in the U.S. district court in 1996. Respondent's choice to file suit does not prevent this Court from finding that the erroneous refund of statutory interest falls within the scope of IRC § 6015, thereby authorizing Petitioner to seek relief from the joint and several liability.

Instructive on this point is Judge Posner's decision in *United States v. Frontone,* 383 F.3d 656 (7th Cir. 2004), where the IRS issued a rebate refund to the taxpayer after recomputing the tax shown on his return. *Id.* at 657. After discovering the adjustments were made in error, the IRS made a supplemental assessment under IRC § 6204 to recover the rebate refund issued. *Id.* Taxpayer subsequently filed bankruptcy and sought a determination of discharge from the supplemental assessment. *Id.* On appeal, the Seventh Circuit addressed the following question: "whether a claim for taxes based on an erroneous refund is—a claim for taxes." *Id.* at 658. The Court held:

> the ultimate source of the IRS's claim is a tax owed—the refund or credit having resulted in the taxpayer's underpaying his taxes—the IRS can proceed either by the assessment route, as it did here, which would enable it if it wanted to utilize the summary procedures for tax collection authorized by 26 U.S.C. §§ 6320, 6330, or by a suit under 26 U.S.C. § 7405, which, in the subsection that would be applicable to such a case, authorizes the government to sue to recover "any portion of a tax imposed by this title which has been erroneously refunded." § 7405(b). **Either way, the government would be prosecuting a tax claim.** Only if the refund went to someone who owed no tax would the government be able to proceed only by suing for restitution, because in that case the refund would not have resulted in the recipient's paying less than his full taxes.
>
> To vary the case slightly, suppose the taxpayer requests a refund on the basis of a deduction and the IRS sends him the requested refund but later discovers that the taxpayer isn't entitled to it. The mistaken refund would still be a rebate because it

would have been "made on the ground that the tax imposed by [the Tax Code] was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made," § 6211(b)(2), after the error was noticed.

*Id*. at 661 (emphasis added).

In *Brookhurst*, *supra*, the IRS issued taxpayer a refund of employment taxes paid because of an IRS error in transcribing the tax shown on the return. After discovering its error, the IRS made a timely, supplemental assessment under IRC § 6204 to recover the refund amount plus interest and levied upon the taxpayer's property to collect. The taxpayer file suit for refund of the amounts levied, arguing that the IRS had to utilize IRC § 7405 to collect the erroneous refund. *Brookhurst*, 931 F.2d at 555. The court held that IRC § 6204(a) clearly permits the government to reassess an earlier imperfect or incomplete assessment that results in an erroneous refund if the statutory period for assessment is still open,. The court further held that the assessment of the taxpayer's employment tax was imperfect, and that the assessment of interest on the refunded amount was proper. *Id.* at 558.

Based on the foregoing, it is clear that the erroneous refund issued to the LaRosas in 1994 was a rebate refund. It is also clear that Respondent could have made a supplemental assessment at the time of discovery, and that the choice to file suit pursuant to IRC § 7405 does not convert the underlying liability into anything other than a tax claim.

**CONCLUSION**

The liability at issue is rooted in an erroneous refund of tax underpayment interest, the return of which was sought pursuant to the IRC § 7405. The judgment was entered in 1997. Loretta did not materially participate in the prior proceedings and was not aware of the judgment entered. Respondent took no action to collect until it moved to renew the judgment twenty years later. During that period, Congress enacted IRC § 6015(f), which affords Loretta substantive

equitable rights to seek relief from joint and several liability. Pursuant to the larger framework of IRC § 6015, those rights are retroactive and are available with respect to amounts due and owing as of June 22, 1998, including the liability for the erroneous refund. Denial of Loretta's rights without any administrative or judicial review is in direct contravention of the equitable intent of RRA 1998 and IRC § 6015. For these reasons and those set forth herein, Respondent's Motion to Dismiss for Lack of Jurisdiction should be denied.

Respectfully submitted,

January 4, 2021

/s/ Paul T. Butler
Paul T. Butler
US Tax Court Bar No. BP0403
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Suite 260
Washington, DC 20001
PH: (202) 790-6998
FX: (212) 808-8108
pbutler@kflaw.com

January 4, 2021

/s/ Caroline D. Ciraolo
Caroline D. Ciraolo
US Tax Court Bar No.: KC0286
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Suite 260
Washington, DC 20001
PH: (443) 845-4898
FX: (212) 808-8108
cciraolo@kflaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2021, I electronically filed the foregoing Objection to Respondent's Motion to Dismiss via the Court's electronic filing system, which will send notification of such filing to all counsel of record.


_/s/ Paul T. Butler_____ .
PAUL T. BUTLER
Counsel for Petitioner, Catherine LaRosa

# EXHIBIT A

**CONSTANCE A. MORELLA**
8TH DISTRICT, MARYLAND

COMMITTEE
POST OFFICE AND CIVIL SERVICE

SCIENCE, SPACE, AND TECHNOLOGY



WASHINGTON OFFICE
223 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-2008
(202) 225-5341

DISTRICT OFFICE
51 MONROE STREET
SUITE 507
ROCKVILLE, MD 20850
(301) 424-3501

# Congress of the United States
## House of Representatives
March 28, 1994

Mr. Dominick LaRosa
10 Tobin Ct
Potomac, MD 20854-4545

Dear Mr. LaRosa:

The enclosed letter from the Internal Revenue Service is a response to my inquiry on your behalf. I hope the information is helpful.

Thank you for providing me with this opportunity to be of assistance. If I can be of assistance on the Federal level in the future, please contact my district office again.

Sincerely,

Connie Morella
Constance A. Morella
Member of Congress

CAM:kat
Enclosure

269

Internal Revenue Service

Department of the Treasury

MAR 2 0 199

Director
Internal Revenue
Service Center

Mid-Atlantic Region
Philadelphia, PA

P.O. Box 69, Bensalem, PA 19020

▷ The Honorable Constance A. Morella
Representative in Congress
51 Monroe Street, Suite 507
Rockville, MD 20850

MAR 24 1994

Dear Representative Morella:

Thank you for your correspondence dated December 17, 1993, written on behalf of Mr. Dominick LaRosa, concerning interest charged for the years 1981, 1982 and 1983 on his individual and business accounts.

This is to confirm the telephone conversation between Ms. Janet Giuliani of your office and Ms. Elizabeth Lee, a member of my staff.

Our records show the additional tax and interest charged December 3, 1985 on the Form 1120, U. S. Corporation Income Tax Return, accounts for the years 1981, 1982 and 1983 have been eliminated.

Based on the information submitted, we have eliminated the interest charged on your constituent's individual accounts in the amount of $271,800.46 for the tax year 1981 and $827,658.25 for the year 1982. Mr. LaRosa will receive refund checks for 1981 and 1982 in a few weeks if there are no other outstanding balances due.

Further review of the 1983 individual account shows that the additional tax of $955,321.00 was partially decreased in the amount of $487,240.00. When we recomputed the interest, it was determined that the interest originally charged on the additional tax was not correct. Therefore, the correct interest amount of $573,224.00 will remain.

We are sorry that Mr. LaRosa's dealing with the Internal Revenue Service have been less than satisfactory. Please be assured that we share your concern that all taxpayers receive efficient and courteous treatment in their dealings with the Internal Revenue Service and that quality service is our ultimate goal. Please extend our apology to Mr. LaRosa for any inconvenience this may have caused. We appreciate your interest in this matter. If there are any further questions, you may contact Ms. Elizabeth Lee at (215) 969-2164 (not toll free) Monday through Friday between the hours of 7:00 a.m. and 3:00 p.m.

Sincerely,

Joseph H. Cloonan
Director

Attachments

271

# EXHIBIT B

April 24, 2000

The Honorable Charles Rossotti
Commissioner
Internal Revenue Service
1111 Constitution Ave., N.W.
Washington, DC 20024

Dear Mr. Rossotti:

I am writing on behalf of Mr. Dominick LaRosa of Potomac, Maryland who for the past 15 years has been at the center of an unbelievable administrative and judicial battle with the IRS. With your help, we are hoping to find relief for this unjust situation.

In an effort to clarify this simple but complex case, I will review the main facts.

* In 1985, without any notice or audit request, and with no valid facts, the state of Maryland charged Mr. LaRosa and his brother Joseph with tax offense for the years 1981-1983. They were unjustly convicted.

* Thereafter, the state conviction was fully pardoned by former Governor Schaffer. Dominick LaRosa and Joseph LaRosa's record has been cleared and expunged through formal expungement proceedings.

* Still, the damage was done. After the state conviction without any notice or audit request, the IRS seized $12 million in liquid assets plus all their property assets including automobiles, home and all their business assets, etc. The total value was well in excess of what the IRS claim was owed.

* The IRS requested that the assets be put in a escrow account, over which the LaRosas had no control. The LaRosas requested changes to be made in the escrow account without avail. Reluctantly, under duress and with unfair conditions in that document, the LaRosas were left with no other choice but to "agree".

* In 1986 the LaRosas filed suit in the Tax Court, and by 1987, a settlement of the resulting Tax Court case was reached with the IRS for less than half of the original amount assessed, and at that time the LaRosas believed that was the end of the ordeal.

* However, due to the delays created by they IRS agent the ordeal continued until May 1991. The proper paper work was not completed until the District Director of the Baltimore office intervened.

* Based on the Tax Court settlement, the total taxes and penalty for the years in Question was about $4.7 million. On top of that, about $5 million interest was Charged, despite the fact that the IRS had seized and held the taxpayers' assets.

* Prior to the IRS involvement the LaRosas had already paid $6.1 million in taxes for the years in question and up to 1985, and as noted above, the IRS also charged the LaRosa's interest from 1985 to 1991, which they paid.

*1*

* Under normal circumstance if the $6.1 million had been allocated properly, there should have been an overpayment for the years in question.

* Since 1985, (through 1991), the IRS had control of the escrow account. Because there was an escrow with cash held by the IRS since 1985, no interest should have been charged.

* In 1991, after 6 years, the LaRosas were exhausted and anxious to regain control of their lives, their assets and their business. Despite the settlement and despite holding the escrow money for 6 years, the IRS agent insisted on charging interest from 1985 –1991.

* The Assistant Director of the Baltimore office informally acknowledged the excessive interest charged, but at the time the only thing he could do to expedite the process and release all the assets was to have the LaRosas pay the improper interest and file IRS form 843 for refund, which the LaRosas did.

* After much lobbying and eventual congressional intervention, in 1994 the IRS refunded about $1.5 million to Dominick LaRosa with an official letter of apology signed by the District Director of Philadelphia, PA, regarding the delay of the refund.

* The official letter from the District Director understandably led Mr. LaRosa to believe the money was finally and irrevocably his even though the amount was less than the amount to which he believe he was entitled. Mr. LaRosa acted accordingly and used it for professional fees and other expenses.

* Then, out of the blue, two years later (March 1996), despite the District Director's letter of apology, the Department of Justice sued Mr. and Mrs. LaRosa for the same $1.5 million plus interest (now over $2 million) contending the refund was "erroneous".

* The LaRosas countersued. Their main contentions were (1) they were entitled to a refund because the IRS should have stopped interest when it seized the LaRosas' money; (2) the LaRosas relied to their detriment on the IRS' assurance that the $1.5 million was theirs to keep, and therefore, the IRS should be "estopped" from reclaiming the money now. Unfortunately, the LaRosas live in the wrong place, Maryland. This state is part of the Fourth Circuit, which does not recognize the Doctrine of "estoppel" when applied against the Government. At least four other Circuits do, and while no case arguing estoppel is easy to win, at least it would have been open to the LaRosas to try their case in those circuits. (In the Fourth circuit they were denied that trial opportunity.) They were prepared to show how the representations of the highest IRS official in their IRS district (accompanying the $1.5 million refund), clearly within his authority, led them to believe the refund was theirs and to act accordingly. Instead, a trial was never granted for the LaRosas to present the facts of the case. The U. S. District Court sided

1

with the IRS in 1997, the 4th U.S. Circuit Court of Appeals upheld the District Court's decision in 1998 on summary judgment; and in 1999, the U. S. Supreme Court refused to hear the case, despite a clear conflict in the Circuits. Had LaRosa lived in any of four other Circuits besides the Fourth, he would have been granted a trial.

* Again, after all these years, Mr. LaRosa and his family find themselves in another unbelievable predicament on the verge of losing everything, including their home, because of the $2 million judgment against them, obtained by the Department of Justice. They are preparing an offer in compromise based on doubt as to collectability, but offers are difficult to obtain even in this age of the "new IRS" and more so in a complex case such as this one. We hope you can intervene and bring this injustice to an end.

NIAF and the American public have been impressed with your commitment to reform the IRS and the willingness to work with the taxpayers to find a reasonable and fair taxation not punishment to destroy people. This is especially evident in matters where taxpayers may have been unfairly treated by the IRS. On the presumption that this is one such case, which occurred long before your tenure, we fervently hope you would initiate a new review of this case.

NIAF, Mr. LaRosa and his attorney are available to meet with you at any time to discuss this case.

Sincerely,


Alfred Rotondaro, Ph.D.
Executive Director

3

# EXHIBIT C

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

DOMINICK LAROSA
10 Tobin Court
Potomac, MD 20854

and

CATHERINE LAROSA
10 Tobin Court
Potomac, MD 20854

        Defendants.

Civil Action No. DKC-96-980

MAR 28 1996

## COMPLAINT TO RECOVER ERRONEOUS TAX REFUNDS

The United States of America, by and through its undersigned counsel, hereby complains of defendants Dominick and Catherine LaRosa as follows:

1.    This is a civil action in which the United States of America seeks to recover erroneous tax refunds issued to defendants Dominick and Catherine LaRosa.

## JURISDICTION & VENUE

2.    The filing of this action has been authorized by the Chief Counsel for the Internal Revenue Service, a delegate of the Secretary of the Treasury, and directed by the Attorney General of the United States under 26 U.S.C. § 7401.

3.    Jurisdiction over this action is conferred upon the Court by 28 U.S.C. §§ 1331, 1340, and 1345, and by 26 U.S.C. §§ 7402(a) and 7405(b).

4.  Venue is properly laid in this Court pursuant to
28 U.S.C. § 1396.

PARTIES

5.  Plaintiff United States of America is a sovereign body
politic.

6.  Defendants Dominick and Catherine LaRosa (the LaRosas)
are residents of the state of Maryland.

COUNT I

7.  On or about December 3, 1985, the Commissioner of the
Internal Revenue Service, a delegate of the Secretary of the
Treasury (the Service), made an income tax assessment against the
LaRosas relating to the 1981 tax year in the amount of
$1,124,924, an assessment for interest in the amount of $710,208,
and an assessment for penalties in the amount of $85,322.

8.  On or about December 17, 1985, a payment of $721 was
made against the income tax assessment identified in the
preceding paragraph.

9.  On or about June 9, 1986, the Service assessed the
LaRosas fees and collection costs relating to the 1981 tax year
in the amount of $191.

10.  On or about June 11, 1990, the LaRosas entered into a
stipulated Decision in the United States Tax Court (the Tax Court
Case) whereby the 1981 income tax assessment was reduced from
$1,124,924 to $284,407.

2

11. Based on the income tax assessment agreed to in the Tax Court Case, the 1981 interest assessment was reduced from $710,208 to $528,085.

12. On or about May 1, 1991, credits of $897,284 were applied against the 1981 income tax assessment of $284,407, the interest assessment of $528,085, the penalty assessment of $85,322, and the fees and collection costs assessment of $191. The credits resulted in full payment of the unpaid balance of the assessments.

13. On or about April 11, 1994, the Service erroneously abated $271,800 of the 1981 interest assessment of $528,085. In addition, the Service credited interest of $239,651 on the amount abated. The erroneous abatement and the credit for interest resulted in an overpayment relating to the 1981 tax year in the amount of $511,451.

14. On or about April 11, 1994, the Service erroneously issued a refund to the LaRosas in the amount of $457,890.30, and transferred an overpayment in the amount of $53,561.28 to the LaRosas' 1986 tax year.

15. The erroneous refund and transferred overpayment may be recovered by the United States under 26 U.S.C. § 7405.

16. The LaRosas are liable to the United States for interest on the erroneous refund and overpayment under 26 U.S.C. § 6602.

3

<u>COUNT II</u>

17. On or about December 3, 1985, the Service made an income tax assessment against the LaRosas relating to the 1982 tax year in the amount of $1,992,247, an assessment for interest in the amount of $724,562, and an assessment for penalties in the amount of $412,369.

18. On or about June 11, 1990, the LaRosas entered into a stipulated Decision in the United States Tax Court (the Tax Court Case) whereby the 1982 income tax assessment was reduced from $1,992,247 to $820,787.

19. Based on the income tax assessment agreed to in the Tax Court Case, the 1982 interest assessment was increased from $724,562 to $1,228,057.

20. On or about May 1, 1991, payments and credits totaling $2,461,213 were applied against the 1982 income tax assessment of $820,787, the interest assessment of $1,228,057, and the penalty assessment of $412,369. The payments and credits resulted in full payment of the unpaid balance of the assessments.

21. On or about April 11, 1994, the Service erroneously abated $827,658 of the 1982 interest assessment of $1,228,057. In addition, the Service credited interest of $191,776 on the amount abated. The erroneous abatement and the credit for interest resulted in an overpayment relating to the 1982 tax year in the amount of $1,019,434.

22. On or about April 11, 1994, the Internal Revenue Service erroneously issued a $1,019,433.92 refund to the LaRosas.

4

23.   The erroneous refund may be recovered by the United States under 26 U.S.C. § 7405.

24.   The LaRosas are liable to the United States for interest on the erroneous refund under 26 U.S.C. § 6602.

WHEREFORE the United States of America respectfully requests:

(a)   That this Court determine that the United States erroneously issued a refund to Dominick and Catherine LaRosa of $457,890.30 relating to the 1981 tax year.

(b)   That this Court determine that the United States erroneously issued a refund to Dominick and Catherine LaRosa by transferring a 1981 overpayment of $53,561.28 to the 1986 tax year.

(c)   That this Court determine that the United States erroneously issued a refund to Dominick and Catherine LaRosa of $1,019,433.92 relating to the 1982 tax year.

(d)   That judgment be entered on behalf of the United States and against Dominick and Catherine LaRosa in the amount of $1,530.885.58, plus interest from April 11, 1994 as provided for under 26 U.S.C. § 6602.

5

(d)   That the United States be awarded its costs in this action and any other relief that this Court deems proper.

DATE: March 29th, 1996.

Respectfully submitted

MICHAEL J. KEARNS
JAMES J. WILKINSON
Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, D.C. 20044
Telephone:   (202) 307-6430
             (202) 307-6056

Of Counsel:
LYNNE A. BATTAGLIA
United States Attorney
   for the District of Maryland

6

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

DOMINICK & CATHERINE LAROSA

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Montgomery__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
MICHAEL J. KEARNS
JAMES J. WILKINSON
U.S. DEPT. OF JUSTICE
P.O. BOX 227, BEN FRANKLIN STATION
WASHINGTON, D.C. 20011

ATTORNEYS (IF KNOWN)

MAR 29 1996

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government
  Plaintiff

☐ 2 U.S. Government
  Defendant

☐ 3 Federal Question
  (U.S. Government Not a Party)

☐ 4 Diversity
  (Indicate Citizenship of
  Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) 26 U.S.C. § 7405 - Recovery Of Erroneous Tax Refund.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE /PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury— Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original
  Proceeding

☐ 2 Removed from
  State Court

☐ 3 Remanded from
  Appellate Court

☐ 4 Reinstated or
  Reopened

Transferred from
☐ 5 another district
  (specify)

☐ 6 Multidistrict
  Litigation

Appeal to District
☐ 7 Judge from
  Magistrate
  Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $
$1,530,886

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 3/28/96

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

FPI-LEX 3/91

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. DKC 96-980
)
DOMINICK LAROSA )
and )
CATHERINE LAROSA, )
)
Defendants. )

## DECLARATION OF GEORGE PELIKAN

I, GEORGE PELIKAN, pursuant to 28 U.S.C., Section 1746, do hereby declare as follows:

1. I am an employee of the Internal Revenue Service, with a post of duty in Baltimore, Maryland. I have been an employee since November of 1981.

2. In or around May of 1991, I was assigned to work on a matter involving Dominick and Catherine LaRosa, Joseph LaRosa, Pietro LaRosa, and LaRosa's International Fuel Company. The matter involved a tax controversy relating to the years 1979 through 1985.

3. The tax controversy began in December of 1985, when the Internal Revenue Service made income tax and penalty assessments against Dominick and Catherine LaRosa, Joseph LaRosa, and LaRosa's International Fuel Company (the LaRosas). The assessments related to the years 1979 through 1983. The amount of the assessments, exclusive of interest, was more than $10,000,000.

4.  In response to the assessments, the LaRosas filed Petitions with the United States Tax Court, wherein they disputed the amount of the assessments.

5.  On or about May 1, 1991, the Tax Court Cases were settled (the "Settlement").  Under the terms of the Settlement, the LaRosas agreed to pay income tax and penalties of $4,972,507 for the years 1979 through 1983.  A detailed break-down of the income tax and penalties agreed to under the Settlement is as follows:

Income Tax Deficiencies

|          | 1979      | 1981     | 1982     | 1983     | Total      |
|----------|-----------|----------|----------|----------|------------|
| Corp.    | $ 210,550 | $    -   | $    -   | $    -   | $  210,550 |
| Dominick | -         | 284,407  | 820,787  | 468,081  | 1,573,275  |
| Joseph   | -         | 346,450  | 839,817  | 482,968  | 1,669,235  |
|          |           |          |          |          | ---------  |
|          |           |          |          |          | 3,453,060  |

Penalties - Fraud - § 6653(b)(1) & (2)

|          | 1979      | 1981     | 1982     | 1983     |           |
|----------|-----------|----------|----------|----------|-----------|
| Corp.    | $ 105,774 | $    -   | $    -   | $    -   | 105,774   |
| Dominick | -         | 85,322   | 330,290  | 206,843  | 622,455   |
| Joseph   | -         | 103,935  | 265,634  | 160,483  | 530,052   |
|          |           |          |          |          | --------  |
|          |           |          |          |          | 1,258,281 |

Penalties - Substantial Understatement of Tax - § 6661

|          | 1979    | 1981   | 1982    | 1983    |             |
|----------|---------|--------|---------|---------|-------------|
| Corp.    | $    -  | $   -  | $    -  | $    -  | -           |
| Dominick | -       | -      | 82,079  | 46,808  | 128,887     |
| Joseph   | -       | -      | 83,982  | 48,297  | 132,279     |
|          |         |        |         |         | ---------   |
|          |         |        |         |         | 261,166     |
|          |         |        |         |         | ---------   |
|          |         |        |         |         | $4,972,507  |
|          |         |        |         |         | =========   |

2

6.    In addition to owing income tax and penalties, the Settlement provided that the LaRosas were to receive credit for payments of $282,669, which resulted in a net amount due of $4,689,838 ($4,972,507 less $282,669).  Copies of the stipulated Decisions on which the amounts noted in this paragraph and in paragraph 5 are based are attached as Government Exhibit A.

7.    In connection with the Settlement, the Internal Revenue Service determined that the LaRosas were liable for interest on the income tax and penalties noted above from the date each liability was required to be paid, to April 30, 1991.  The amount of the interest was $5,054,749.  As a result, the Internal Revenue Service determined that as of May 1, 1991, the LaRosas owed a total of $9,744,587, computed as follows:

```
Underpaid Income Tax and Penalties (1979 - 1983)    $ 4,972,507
Less:  Payments                                     <   282,669>
                                                    ---------
                                                      4,689,838
Plus:  Interest - to 4/30/91                          5,054,749
                                                    ---------
Total Amount Due - 5/01/91                          $ 9,744,587
                                                    =========
```

A detailed break-down of the $9,744,587 owed to the Internal Revenue Service by the LaRosas as of May 1, 1991, was as follows:

|              |        | Income Tax/ Penalties | Payments | Tax Liability | Interest to 4/30/91 | Balance Due 5/1/91 |
|--------------|--------|-----------------------|----------|---------------|---------------------|--------------------|
| Dominick     | - 1981 | 369,729               | <    721> | 369,008       | 528,276             | 897,284            |
|              | - 1982 | 1,233,156             | <    -> | 1,233,156     | 1,228,058           | 2,461,214          |
|              | - 1983 | 721,732               | <    -> | 721,732       | 573,225             | 1,294,957          |
| Joseph       | - 1981 | 450,385               | < 93,371> | 357,014       | 574,035             | 931,049            |
|              | - 1982 | 1,189,433             | < 30,743> | 1,158,690     | 1,233,615           | 2,392,305          |
|              | - 1983 | 691,748               | < 43,737> | 648,011       | 558,901             | 1,206,912          |
| Corp.        | - 1979 | 316,324               | <114,098> | 202,226       | 358,835             | 561,061            |
|              |        | ---------             | -------  | ---------     | ---------           | ---------          |
|              |        | 4,972,507             | <282,669> | 4,689,837     | 5,054,749           | 9,744,587          |
|              |        | =========             | =======  | =========     | =========           | =========          |

3

8. The Settlement was based on an understanding between the parties that the LaRosas had underreported their income tax liabilities in the years 1979 through 1983, but had overreported their income tax liabilities in the years 1984 and 1985. As a consequence, although the Tax Court Settlement created a tax liability of $4,689,838 for the years 1979 through 1983, it also created a tax overpayment for the years 1984 and 1985. The amount of the tax overpayment was $3,557,566. As part of the Settlement, the Internal Revenue Service determined that the LaRosas were entitled to interest on the tax overpayments from the date of each overpayment, to April 30, 1991. The amount of the interest was $2,578,813. As a result, the Internal Revenue Service determined that as of May 1, 1991, they owed the LaRosas a total of $6,120,204, computed as follows:

```
Overpaid Income Tax (1984 and 1985)      $ 3,557,566
Less:  Refunds                           <    16,175>
                                         ---------
                                           3,541,391
Plus:  Interest - to 4/30/91               2,578,813
                                         ---------
Total Amount Due - 5/01/91               $ 6,120,204
                                         =========
```

A detailed breakdown of the $6,120,204 owed to the LaRosas by the Internal Revenue Service as of May 1, 1991, was as follows:

| | Income Tax Overpayment | Refunded | Total Overpayment | Interest to 4/30/91 | Balance Due 5/1/91 |
|---|---|---|---|---|---|
| Dominick - 1985 | 929,107 | < > | 929,107 | 573,477 | 1,502,584 |
| Corp. - 1984 | 1,820,082 | < 16,175> | 1,803,907 | 1,506,379 | 3,310,286 |
| Pietro - 1985 | 36,085 | < > | 36,085 | 22,272 | 58,358 |
| Joseph - 1985 | 772,292 | < > | 772,292 | 476,685 | 1,248,977 |
| | --------- | ------- | --------- | --------- | --------- |
| | 3,557,566 | < 16,175> | 3,541,391 | 2,578,813 | 6,120,205 |
| | ========= | ======= | ========= | ========= | ========= |

4

9.   On or about May 1, 1991, a meeting was held between the Internal Revenue Service and the LaRosas regarding the method of payment of the $9,744,587.  At the meeting, the parties agreed that the $9,744,587 would be paid in the following manner:

   a)   The Internal Revenue Service would transfer the $6,120,206 they owed to the LaRosas as partial payment of the $9,744,587.

   b)   The LaRosas would write a check for the remaining amount owed, which was $3,624,583 ($9,744,587 less $6,120,206).

10.   At the conclusion of the meeting, the LaRosas wrote a check to the Internal Revenue Service for $3,624,583, and the Internal Revenue Service executed the transfer of the $6,120,206. As a result of these procedures, on or about May 1, 1991, the $9,744,587 liability was paid in full.  A summary of the transfer of the $6,120,206 and the payment of the $3,624,583 check, as applied to the $9,744,587 liability, is as follows:

|  |  | Credit Balances ("Overpayments" of income tax and "Interest") | | | | | |
|  |  | Dominick LaRosa 1985 1,502,584 | Corp. 1984 3,310,286 | Pietro LaRosa 1985 58,358 | Joseph LaRosa 1985 1,248,977 | Check Payment 3,624,583 | Total Payment 9,744,788 - 5/1/91 |
| | Total Liability (Tax, Penalty and Interest) | | | | | | |
| Dominick - 1981 | 897,284 | < 897,284> | - | - | - | - | - |
|  1982 | 2,461,214 | < 605,300> | <1,309,399> | <29,179> | - | < 517,335> | - |
|  1983 | 1,294,957 | - | - | - | - | <1,294,957> | - |
| Joseph  - 1981 | 931,049 | - | - | - | < 931,049> | - | - |
|  1982 | 2,392,305 | - | <1,439,820> | <29,178> | < 317,927> | < 605,379> | - |
|  1983 | 1,206,912 | - | - | - | - | <1,206,912> | - |
| Corp.   - 1979 | 561,061 | - | < 561,061> | - | - | - | - |
|  | --------- | -------- | --------- | ------ | -------- | --------- | -------- |
| 5/1/91 - | 9,744,782 | - | - | - | - | - | - |
|  | ========= | ======== | ========= | ====== | ======== | ========= | ========= |

5

A copy of the $3,624,583 check is attached as Government Exhibit B.

11.   In April of 1994, or approximately 3 years <u>after</u> payment of the $9,744,587, the Internal Revenue Service "recalculated" the amount of the interest that had been charged on Dominick and Catherine LaRosa's 1981, 1982, and 1983 tax liabilities.  The amount of interest was recalculated because the LaRosas filed a "Claim for Refund" relating to those years.  A copy of the "Claim for Refund" is attached as Exhibit B.

12.   When the interest was "recalculated" in April of 1994, the Internal Revenue Service used a "new method" relating to the transfer of the $6,120,206 of the "Credit Balances", which was different than the "original method" used in May of 1991.

13.   Under the "original method", the Internal Revenue Service treated the $6,120,206 of Credit Balances as a payment against the $9,744,587 Tax Court Liability effective on May 1, 1991.

14.   Under the "new method", the Internal Revenue Service treated a portion of the $6,120,206 as having been paid against the $9,744,782 Tax Court Liability <u>prior</u> to May 1, 1991.  In general, the Credit Balances were treated as paid against the tax liabilities in 1985 and 1986, which were the dates the tax overpayments arose.

6

15.  Because a portion of the Credit Balances were treated as paid against the Tax Court Liability prior to May 1, 1991, the amount of interest calculated under the "new method" was less than the amount of interest calculated under the "original method".  Specifically, the amount of interest calculated under the "new method" was approximately $1,100,000 less than the amount calculated under the "original method".  This amount, plus approximately $400,000 of interest, was then refunded to Dominick and Catherine LaRosa on or about April 11, 1994.

16.  A comparison of the amount of interest owed on Dominick and Catherine LaRosa's 1981, 1982, and 1983 tax liabilities under the "original method", and the amount of interest owed under the "new method", is contained in the following paragraphs.

17.  Under the "original method", the Internal Revenue Service calculated interest on the 1981 liability from April 15, 1982 (the date the liability was required to be paid) to April 30, 1991 (the day before the Settlement).  The amount of the interest was $528,276.  The resulting amount owed, which was $897,284, was paid by transferring a $897,284 Credit Balance from Dominick and Catherine LaRosa's 1985 account. The Credit Balance was treated as transferred on May 1, 1991.  A numerical summary of the "original method" is as follows:

7

<u>The 1981 Account - "Original Method"</u>

```
$ 369,729  Income tax and penalties
<    721>  Payments
  -------
  369,008
  528,276  Interest ("original method")
  -------
  897,284  Total Tax, Penalty, and Interest
<897,284>  Transfer of credit balance - Effective 5/1/91
  -------
$       -  Full Payment Status - 5/1/91
  =======
```

18.    Under the "new method", the $897,284 credit balance from 1985 was treated as having been transferred on April 15, 1986, which was approximately 5 years <u>prior</u> to May 1, 1991. Because the effective date of the transfer of the Credit Balance under the "new method" was earlier than the effective date of the transfer under the "original method" (4/15/86 versus 5/1/91), the amount of interest owed under the "new method" was less than the amount owed under the "original method". Specifically, the amount of interest owed under the "new method" was only $256,285 (versus $528,276 under the "original method"). As a result, the Internal Revenue Service determined that the amount of interest charged on Dominick and Catherine LaRosa's 1981 income tax liability in May of 1991 was overstated by $271,800 ($528,276 less $256,285). Therefore, the Internal Revenue Service abated $271,800 of interest. A numerical summary of the "new method" is as follows:

8

The 1981 Account - "New Method"

```
$  369,729   Income tax and penalties
<     721>   Payments
   -------
   369,008
   256,285   Interest ("new method")
   -------
   625,293   Total Tax, Penalty, and Interest
 <897,284>   Transfer of credit balance - Effective 4/15/86
   -------
$ <271,800>  Abatement - Overstatement of Interest
  =======
```

19.    A similar procedure occurred with respect to Dominick and Catherine LaRosa's 1982 liability. However, the Credit Balances used to pay the 1982 liability were transferred not only from Dominick and Catherine LaRosa's 1985 tax year, but also from the Corporation's 1984 tax year, and Pietro LaRosa's 1985 tax year. In addition, a portion of the $3,624,583 check was applied as payment toward the 1982 liability.

Under the "original method", the Internal Revenue Service calculated interest on the 1982 liability from April 15, 1983 (the date the liability was required to be paid) to April 30, 1991 (the day before the Settlement). The amount of the interest was $1,228,058. The resulting amount owed, which was $2,461,214, was paid by transferring Credit Balances of $1,943,879 ($605,300 + $1,309,399 + $29,179), and allocating $517,335 from the $3,624,583 payment. A numerical summary of the "original method" is as follows:

9

The 1982 Account - "Original Method"

```
$ 1,233,156    Income tax and penalties
  <      ->    Payments
  ---------
  1,233,156
  1,288,058    Interest ("original method")
  ---------
  2,461,214    Total Tax, Penalty, and Interest
<1,943,879>    Transfers of credit balances - Effective 5/1/91
<  517,335>    Payment by Check - Effective 5/1/91
  ---------
$        -     Full Payment Status - 5/1/91
  =========
```

20. Under the "new method", the Internal Revenue Service treated $1,433,317 of the $1,943,879 of Credit Balances as having been transferred prior to May 1, 1991. The remaining Credit Balances, which totaled $510,562 ($1,943,879 less $1,433,317), continued to be treated as transferred on May 1, 1991. Because most of the Credit Balances were treated as transferred prior to May 1, 1991, the amount of interest owed under the "new method" was only $400,399 (versus $1,228,058 under the "original method"). As a result, the Internal Revenue Service determined that the amount of interest charged on Dominick and Catherine LaRosa's 1982 income tax liability was overstated by $827,658 ($1,288,058 less $400,399). Therefore, the Internal Revenue Service abated $827,658 of interest. A numerical summary of the "new method" is as follows:

10

<u>The 1982 Account - "New Method"</u>

```
$ 1,233,156  Income tax and penalties
   <        -> Payments
   ---------
   1,233,156
     400,399  Interest ("new method")
   ---------
   1,633,555  Total Tax, Penalty, and Interest
<1,433,317>  Transfer credit balance - Effective prior to 5/1/91
<  510,562>  Transfer credit balances - Effective on 5/1/91
<  517,335>  Payment by Check - Effective on 5/1/91
   ---------
$ < 827,658> Abatement - Overstatement of interest
   =========
```

21. For the 1983 tax year, the amount of interest owed under the "original method" and the "new method" was the same. The amount of the interest was the same because the 1983 liability, which was in the amount of $1,294,957, was paid entirely by allocating a portion of the $3,624,583 check. The 1983 liability was <u>not</u> paid by transferring "credit balances". Therefore, the Internal Revenue Service did not make an interest abatement, nor issue a refund for this year.

22. As of result of the interest abatements of $271,800 and $827,658 for the years 1981 and 1982 respectively, the Internal Revenue Service issued refunds to Dominick and Catherine LaRosa of approximately $1,500,000 (the refunds included approximately $400,000 of interest).

11

23. The "original method" used in May of 1991 to calculate interest on Dominick and Catherine LaRosa's 1981 and 1982 tax liabilities was correct, and the "new method" used in April of 1994 was <u>not</u> correct. The "new method" was not correct because it erroneously resulted in the suspension of interest charged on Dominick and Catherine LaRosa's 1981 and 1982 tax liabilities prior to May 1, 1991. Hence, the interest abatements should not have been made, and therefore the refunds were erroneous. In the alternative, if the suspension of interest charged on Dominick and Catherine LaRosa's 1981 and 1982 tax liabilities prior to May 1, 1991 was correct, and therefore interest abatements should have been made, then the Internal Revenue Service should have made a corresponding adjustment relating to the fact that interest was allowed on the tax overpayments through April 30, 1991. If the corresponding adjustment had been made, the refunds would not have been issued. Hence, under either scenario, the refunds were erroneous.

I declare this 6th day of March, 1997, under penalty of perjury that the forgoing is true and correct.

*George Pelikan*

GEORGE PELIKAN

# United States Tax Court

163 T.C. No. 2

CATHERINE L. LAROSA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 10164-20.                    Filed July 17, 2024.

_____

R made an erroneous refund of interest to P–W and H. After prevailing in an erroneous refund suit, R attempted to collect the liability. P–W requested innocent spouse relief under I.R.C. § 6015(f), i.e., equitable relief. R denied relief, arguing that a liability arising from an erroneous refund of interest is not eligible for relief under I.R.C. § 6015(f). P–W filed a Petition challenging R's denial of relief. R moved to dismiss for lack of jurisdiction, arguing that an erroneous refund of interest is not eligible for innocent spouse relief. P–W objects.

*Held*: In the case of an individual who requests equitable relief under I.R.C. § 6015(f), the filing of a timely petition confers jurisdiction on the Court regardless of the merits of the underlying claim for relief.

*Held, further*, innocent spouse relief under I.R.C. § 6015(f) is available only for unpaid taxes or deficiencies.

*Held, further*, an erroneous refund consisting only of interest does not give rise to an unpaid tax or a deficiency.

*Held, further*, P–W is not eligible for relief under I.R.C. § 6015(f).

_____

**Served 07/17/24**

*Caroline D. Ciraolo*, for petitioner.

*Jeffrey E. Gold* and *Deborah Aloof*, for respondent.


OPINION

BUCH, *Judge*: The Commissioner issued Catherine and Dominick LaRosa an erroneous refund consisting of only statutory interest for 1981 and 1982 (years in issue). Following protracted litigation, the Commissioner sought to collect that erroneous refund from the LaRosas. Mrs. LaRosa submitted a request for innocent spouse relief under section 6015(f).[1] The Commissioner did not process her request because he determined that there was no unpaid tax or deficiency from which to grant relief. Mrs. LaRosa filed a Petition seeking review of the Commissioner's determination.

Pending before the Court is the Commissioner's Motion to Dismiss for Lack of Jurisdiction in which he asserts that Mrs. LaRosa is not eligible for relief under section 6015(f) because there is no unpaid tax or deficiency for the years in issue. Section 6015(f) authorizes the Commissioner to provide equitable relief to a requesting spouse for any unpaid tax or deficiency. Generally, once a tax liability is paid in full it is extinguished, although a tax liability can be revived by an erroneous rebate refund. An erroneous refund is a rebate if it is related to a recalculation of a tax liability.

Mrs. LaRosa does not have an unpaid tax or deficiency that is eligible for relief under section 6015(f). The LaRosas satisfied their tax liabilities for the years in issue, and the erroneous refund paid to them consisted solely of interest. Because the erroneous refund issued to the LaRosas did not involve a recalculation of their tax liabilities, the refund was not a rebate and did not give rise to or otherwise revive a tax liability. As a result, Mrs. LaRosa is not eligible for relief under section 6015(f) because there is no unpaid tax or deficiency for the years in issue.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are shown in U.S. dollars and rounded to the nearest dollar.

*Background*

The LaRosas have a long history of interactions with the Commissioner, and this proceeding appears to be the latest. On December 2, 1985, Mr. LaRosa, his brother Joseph LaRosa, and their company International Fuel Co., Inc., were found guilty of tax fraud by the State of Maryland for tax years 1981, 1982, and 1983.[2] The day after the verdict in the State of Maryland case, the Commissioner made a jeopardy assessment of federal tax against the LaRosas for 1981, 1982, and 1983. The Commissioner also levied on their assets. Those assets were subsequently placed in escrow pending the determination of the LaRosas' federal tax liabilities.

On November 7, 1990, the Tax Court entered a stipulated decision giving effect to a settlement reached between the Commissioner and the LaRosas. The agreement stated that the LaRosas underpaid their tax for 1981, 1982, and 1983. The total underpayment, including interest and penalties, was $9,744,587. The parties also agreed that the LaRosas overpaid their tax for 1984 and 1985, though this was not stated in the settlement agreement. The total overpayment, including interest, was $6,120,204. The LaRosas paid the difference between the overpayment and underpayment to the Commissioner. Although the LaRosas agreed to pay the net amount that had been due, they reserved the right to further appeal or contest the liability.

After paying the liability, the LaRosas filed a refund claim with the Commissioner, asserting that they were owed a refund of interest they had overpaid.[3] The Commissioner initially denied the claim. But after hearing from the LaRosas' congressional representative, the Commissioner issued a refund. The refund consisted of section 6601 interest (interest on underpayments) and section 6611 interest (interest on overpayments) for the years in issue, after taking into account the timing of the various underpayments and overpayments, the jeopardy assessment, and the escrow. *See* I.R.C. §§ 6601(a), 6611(a).

---

[2] The conviction was later pardoned by William Schaefer, the governor of Maryland from 1987 to 1995.

[3] The LaRosas argued that they were due a refund for overpaid interest, because the interest should not have accrued on the unpaid tax liability after the date of the jeopardy assessment.

In 1996 the Department of Justice (DOJ), on behalf of the Commissioner,[4] brought suit pursuant to section 7405 in federal district court to recover the refund issued to the LaRosas, arguing that the refund was erroneous. *See United States v. LaRosa*, 993 F. Supp. 907 (D. Md. 1997), *aff'd per curiam*, 155 F.3d 562 (4th Cir. 1998) (unpublished table decision). The district court agreed, holding that the LaRosas were not entitled to the refund they had received and ordering them to repay it. *LaRosa*, 993 F. Supp. at 918. The LaRosas appealed, and the Court of Appeals for the Fourth Circuit affirmed. *LaRosa*, 155 F.3d 562.

Following the district court's decision, an abstract of judgment was filed in Montgomery County, creating a lien on all of the LaRosas' real property. In 2017, the DOJ moved to reopen the case and renew the judgment lien on the LaRosas' real property. *See United States v. LaRosa*, 120 A.F.T.R.2d (RIA) 2017-6078, at 2017-6078 (D. Md. 2017). The district court granted the motion and renewed the judgment lien. *Id.* at 2017-6079. On October 31, 2019, the DOJ filed an action to foreclose on the judgment lien. Mrs. LaRosa moved to stay that proceeding until her claim for innocent spouse relief was resolved. *See United States v. LaRosa*, 125 A.F.T.R.2d (RIA) 2020-1800, at 2020-1800 (D. Md. 2020). The district court granted her motion. *Id.* at 2020-1800, 2020-1802.

On January 10, 2020, Mrs. LaRosa submitted to the Commissioner Form 8857, Request for Innocent Spouse Relief, seeking relief pursuant to section 6015(f) for, among other things, the liabilities for the years in issue.[5] The Commissioner responded to the request on January 24, 2020, stating that he could not process her Form 8857 "because [his] records show no amount is currently owed and no additional assessments for tax years 1981, 1982, and 1986." The letter further stated that "innocent spouse doesn't consider relief for erroneous refunds."

On July 10, 2020, Mrs. LaRosa filed a Petition with the Tax Court seeking a determination of relief from joint and several liability. At the

---

[4] Section 7401 empowers the Secretary of the Treasury and her delegates to authorize "the collection or recovery of taxes, or of any fine, penalty, or forfeiture." On the basis of this authority, the Commissioner referred the recovery action against the LaRosas to the DOJ so that it could bring suit in federal court.

[5] Mrs. LaRosa's request for innocent spouse relief also included 1986, but her Petition seeks relief only with respect to the years in issue.

time the Petition was filed, Mrs. LaRosa lived in Maryland. In response, the Commissioner filed a Motion to Dismiss for Lack of Jurisdiction, arguing that we lack jurisdiction under section 6015(e) to consider Mrs. LaRosa's request for innocent spouse relief relating to an erroneous refund of interest. Mrs. LaRosa objects.

*Discussion*

I.    *Jurisdiction*

Like other federal courts, the Tax Court is a court of limited jurisdiction and can exercise its jurisdiction only to the extent provided by Congress. I.R.C. § 7442; *Judge v. Commissioner*, 88 T.C. 1175, 1180–81 (1987). And of course the Tax Court has jurisdiction to determine whether it has jurisdiction. *Bongam v. Commissioner*, 146 T.C. 52, 54 (2016); *Kluger v. Commissioner*, 83 T.C. 309, 314 (1984). Section 6015(e)(1)(A) confers jurisdiction on this Court to review a petition for innocent spouse relief. It provides:

> (1) In general.—In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)—
>
>> (A) In general.—In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed—
>>
>>> (i) at any time after the earlier of—
>>>
>>>> (I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or
>>>>
>>>> (II) the date which is 6 months after the date such election is filed or request is made with the Secretary, and
>>>
>>> (ii) not later than the close of the 90th day after the date described in clause (i)(I).

I.R.C. § 6015(e)(1)(A). Paragraph (1) provides two different predicates for our jurisdiction, depending on the kind of relief the taxpayer is seeking. If either predicate is satisfied, we have jurisdiction over an innocent spouse relief claim if the taxpayer files a timely petition. I.R.C. § 6015(e)(1)(A); *Frutiger v. Commissioner*, No. 31153-21, 162 T.C. (Mar. 11, 2024); *Sutherland v. Commissioner*, 155 T.C. 95, 99 (2020). To determine whether we have jurisdiction in this case, we must determine whether either predicate is satisfied and whether the Petition was timely.

The plain text of section 6015(e)(1) specifies two alternative predicates. Under the first of those alternatives, the Court may have jurisdiction over a case involving "an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply." As is plain from the facts above, and as discussed more fully below, a deficiency has not been asserted against Mrs. LaRosa. We do not have jurisdiction over such a case. But the second predicate for jurisdiction does not require a deficiency. It gives us jurisdiction over a case involving "an individual who requests equitable relief under subsection (f)," i.e., equitable relief. Our jurisdiction in a case involving equitable relief does not require a deficiency to have been asserted against the taxpayer.

The Commissioner is mistaken when he argues that we lack jurisdiction over Mrs. LaRosa's request for innocent spouse relief. Mrs. LaRosa satisfied both requirements for our jurisdiction: She submitted to the Commissioner a request for equitable relief pursuant to section 6015(f), and she timely filed a Petition with the Tax Court. For this purpose, we consider the Commissioner's letter dated January 24, 2020, to be "the Secretary's final determination of relief available to the individual" because it explicitly set forth the Commissioner's final determination that "[i]nnocent spouse doesn't consider relief for erroneous refunds." Ninety days from the date of the Commissioner's determination was April 23, 2020. Although the Petition was not filed until July 10, 2020, the 90-day period within which to file that petition was tolled by I.R.S. Notice 2020-23, 2020-18 I.R.B. 742, which extended the deadline to file the Petition until July 15, 2020.[6] Because Mrs.

---

[6] We need not address whether the Petition was timely under section 6015(e)(1)(A)(i)(II), which authorizes a petition to be filed any time *after* six months *after* the date an innocent spouse relief request is made. The Petition in this case was hand delivered to the Court on July 10, 2020, exactly six months after the request was made on January 10, 2020.

LaRosa submitted a request for equitable relief and filed a timely Petition from the Commissioner's determination with respect to that request, we have jurisdiction over this case.

Our conclusion on the jurisdictional issue resolves the issue presented in the title of the Commissioner's Motion, but it does not resolve the substance of that Motion. The substance of the Commissioner's Motion and Mrs. LaRosa's objection is not whether we have jurisdiction, but whether we should find as a matter of law that Mrs. LaRosa is not eligible for equitable relief under section 6015(f). Thus, we will recharacterize the Commissioner's Motion to Dismiss for Lack of Jurisdiction as a Motion for Summary Judgment, and we now turn to that recharacterized Motion.

II.    *Summary Judgment Standard*

We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, <u>98 T.C. 518, 520</u> (1992), *aff'd*, <u>17 F.3d 965</u> (7th Cir. 1994). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, <u>98 T.C. at 520</u>. When a motion for summary judgment is properly made and supported, an opposing party may not rest on mere allegations or denials. Rule 121(d). Rather, the party's response, by affidavits or declarations, or as otherwise provided in Rule 121, must set forth specific facts showing there is a genuine factual dispute for trial. Rule 121(d). In deciding whether to grant summary judgment, we view the facts and make inferences in the light most favorable to the nonmoving party. *Sundstrand Corp.*, <u>98 T.C. at 520</u>.

III.    *Section 6015 Innocent Spouse Relief*

As a general rule, married taxpayers filing joint federal income tax returns are jointly and severally liable for all tax due in connection with those returns. I.R.C. § 6013(d)(3). However, section 6015 provides an exception to this rule. Under section 6015, a spouse may be granted relief from joint and several liability if certain conditions are met.

Section 6015 was enacted on July 22, 1998, as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. No. 105-206, § 3201, <u>112 Stat. 685</u>, <u>734–40</u>. It applies to "any liability for tax arising after the date of the enactment of this Act and any liability for tax arising on or before such date but remaining unpaid as

of such date." RRA § 3201(g), 112 <u>Stat. at 740</u>. Under section 6015, a spouse has three avenues to obtain relief from joint and several liability. Those avenues are: "(1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), or (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f)." *Kraszewska v. Commissioner*, T.C. Memo. 2024-26, at *6; *see* <u>I.R.C. § 6015(b)</u>, <u>(c)</u>, <u>(f)</u>. This case focuses on equitable relief under subsection (f).

Mrs. LaRosa requested innocent spouse relief under section 6015(f) for liabilities from the years at issue. Section 6015(f) provides:

> (1) In general.—Under procedures prescribed by the Secretary, if—
>> (A) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for *any unpaid tax or any deficiency (or any portion of either)*, and
>> (B) relief is not available to such individual under subsection (b) or (c),
> the Secretary may relieve such individual of such liability.
> (2) Limitation.—A request for equitable relief under this subsection may be made with respect to any portion of any liability that—
>> (A) has not been paid, provided that such request is made before the expiration of the applicable period of limitation under section 6502, or
>> (B) has been paid, provided that such request is made during the period in which the individual could submit a timely claim for refund or credit of such payment.

(Emphasis added.) A taxpayer is entitled to equitable relief under section 6015(f) if, considering all of the facts and circumstances, it would be inequitable to hold the requesting spouse liable for any unpaid tax or deficiency that was unpaid as of July 22, 1998, or that arose after July 22, 1998. *See* <u>Treas. Reg.</u> § 1.6015-4(a). If there is neither an unpaid tax nor an unpaid deficiency, relief is unavailable under section 6015(f). Thus, for Mrs. LaRosa to qualify for innocent spouse relief under section 6015(f), we must first find that there is an unpaid tax or deficiency and then find it inequitable to hold her liable for that unpaid tax or deficiency.

IV.    *The Parties' Arguments*

The parties disagree as to whether Mrs. LaRosa is eligible for innocent spouse relief under section 6015(f). The core of the dispute is whether the liability at issue, an erroneous refund of interest, constitutes an unpaid tax or deficiency as required by section 6015(f). The Commissioner argues that Mrs. LaRosa does not qualify for innocent spouse relief under section 6015(f) because an erroneous refund of interest is not an unpaid tax or deficiency. Thus, there is no *unpaid tax* or deficiency for the years in issue. Mrs. LaRosa disagrees, arguing that the erroneous refund should be considered an unpaid tax. Specifically, she argues that the erroneous refund constitutes an unpaid tax because the refund suit filed pursuant to section 7405 was an action for the recovery of a tax. Additionally, Mrs. LaRosa argues that the erroneous refund constitutes an unpaid tax or deficiency because it was a rebate refund that could have been recovered through deficiency procedures.

V.    *Whether the Erroneous Refund Is an Unpaid Tax or Deficiency*

To determine whether the erroneous refund constitutes an unpaid tax or deficiency, we must address two separate arguments put forth by the parties. We must decide whether the erroneous refund suit filed pursuant to section 7405 gave rise to an unpaid tax for the years in issue. And relatedly, we must decide whether the erroneous refund was a rebate refund that revived a tax liability for the years in issue.

A.    *Whether the Erroneous Refund Created a Tax Liability*

Section 7405(b) provides that "[a]ny portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States." An erroneous refund suit was brought against the LaRosas under section 7405(b). The erroneous refund consisted of interest miscalculated under sections 6601 and 6611. Before the refund suit was brought, the LaRosas had fully paid their tax liabilities for the years in issue. Mrs. LaRosa argues that because section 7405 authorizes a suit to recover tax and the erroneous refund is made up of statutory interest that is to be treated in the same manner as tax, the erroneous refund resulted in an unpaid tax liability. Specifically, she contends that "[h]aving invoked the District Court's jurisdiction to collect a refund of 'tax' and having obtained a judgment on November 7, 1997 pursuant to such invocation, the

government cannot reasonably take the position . . . that the same unpaid judgment is a claim for something other than tax."

Mrs. LaRosa's reliance on the section 7405(b) suit is misplaced. Section 7405(b) provides an avenue to recover an erroneously refunded tax. But the mere fact that the Commissioner prevails in an erroneous refund suit does not give rise to an unpaid tax. Courts have held that once a tax liability is paid in full, that tax liability is extinguished unless it is revived by an erroneous *rebate* refund. *See Greer v. Commissioner*, 557 F.3d 688, 691 (6th Cir. 2009), *aff'g* T.C. Memo. 2007-119. *But see Bilzerian v. United States*, 86 F.3d 1067, 1069 (11th Cir. 1996) (per curiam). And while the government can recover an erroneous rebate refund by filing suit under section 7405(b), it can also recover through an erroneous refund suit erroneous nonrebate refunds, which are not considered tax. *Acme Steel Co. v. Commissioner*, T.C. Memo. 2003-118, 85 T.C.M. (CCH) 1208, 1216. Thus, determining whether an erroneous refund gives rise to an unpaid tax turns on whether the erroneous refund is a rebate or nonrebate refund.

### B. *Whether the Erroneous Refund Was a Rebate Refund*

#### 1. *Rebate vs. Nonrebate Refunds*

The Internal Revenue Code recognizes two types of refunds: rebate and nonrebate. *YRC Reg'l Transp., Inc. & Subs. v. Commissioner*, T.C. Memo. 2014-112, at *5; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216. "Rebate refunds are issued on the basis of a substantive recalculation of a taxpayer's tax liability, e.g., the amount of tax due is less than the tax shown on the return. If the recalculation of tax liability is correct, the taxpayer may, of course, retain the refund." *Acme Steel Co*, 85 T.C.M. (CCH) at 1216 (citations omitted). However if it is incorrect, then the Commissioner may recover the erroneous rebate refund. *Id.* In contrast to a substantive recalculation of tax, nonrebate refunds "are issued to taxpayers because of clerical or computer errors, and they bear no relation to a recalculation of tax liability. . . . Examples of nonrebate refunds are refunds issued because the Commissioner credited a taxpayer's payment twice or the Commissioner applied a payment to the wrong tax year." *Id.* (citations omitted).

There are two ways the Commissioner may recover an erroneous refund: by filing an erroneous refund suit under section 7405 or by pursuing a supplemental assessment through deficiency procedures. *See generally O'Bryant v. United States*, 49 F.3d 340, 342–43 (7th Cir. 1995).

Erroneous rebate refunds may be recovered by either action. *YRC Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at *6; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216. But erroneous nonrebate refunds can be recovered only by filing suit under section 7405. *YRC Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at *7; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216.

Nonrebate refunds cannot be recovered through the deficiency procedures because they do not meet the definition of deficiency. *YRC Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at *7; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216. Section 6211(a) defines "deficiency" as

> the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of—
> > (1) the sum of
> > > (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
> > > (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
> > (2) the amount of *rebates*, as defined in subsection (b)(2), made.

(Emphasis added.) Under this definition, rebate refunds give rise to a deficiency, while nonrebate refunds do not. I.R.C. § 6211(a), (b)(2). Thus, it follows that rebate refunds are recoverable by deficiency procedures and nonrebate refunds are not. *Id.* In effect, rebate refunds revive a tax liability. *See Greer v. Commissioner*, 557 F.3d at 691; *United States v. Frontone*, 383 F.3d 656, 658–59 (7th Cir. 2004). *But see Bilzerian*, 86 F.3d at 1069. Nonrebate refunds do not.

The Commissioner argues that the erroneous refund made to the LaRosas was a nonrebate refund, and therefore it did not revive the tax liabilities for the years in issue. Specifically, he argues that the refund was not a rebate because "it was issued due to an error in determining the date on which interest accruals ceased on the deficiencies, not on a redetermination of petitioner and Mr. LaRosa's tax liabilities for those years." Mrs. LaRosa argues that the refund was a rebate refund because it was "the product of IRS error in computing the liability for statutory

interest, which . . . is to be treated the same as the tax upon which it accrues." We agree with the Commissioner.

## 2. *Analysis*

Several cases have drawn the distinction between rebate and nonrebate refunds. A refund is a rebate when it relates to the recalculation of a tax liability. *Singleton v. United States*, 128 F.3d 833 (4th Cir. 1997). In *Singleton*, 128 F.3d at 834, the Commissioner issued the taxpayers a refund based on an error in calculating the amount of general business credit carryforward. Years later, the Commissioner recalculated the liability because of changes in tax laws, assessed the amount, and demanded immediate payment. *Id.* The Commissioner did not issue a notice of deficiency to the taxpayers. *Id.* The Fourth Circuit determined that the refund was a rebate because it was the result of a substantive recalculation of the tax liability and not the result of computer or computational errors. *Id.* at 839. Thus, the Commissioner was required to issue the taxpayers a notice of deficiency before making a supplementary assessment and collecting tax. *Id.* at 838–39. Likewise, in *Thomas v. Commissioner*, T.C. Memo. 2014-118, at *3–4, the Commissioner issued a refund after determining that the taxpayers had overreported the taxable portion of their Social Security benefits. The Commissioner later concluded that the taxpayers had correctly reported their benefits and sought to recover the refund through deficiency procedures. *Id.* at *4–5. We concluded that the refund was a rebate and could be recovered through deficiency procedures, because the refund involved a recalculation of a taxpayer's tax liability. *Id.* at *8.

On the other hand, a refund is not a rebate when it is not related to the recalculation of a tax liability. *O'Bryant*, 49 F.3d 340. In *O'Bryant*, 49 F.3d at 341, the Commissioner issued the taxpayers an unsolicited refund and sought to recover it. The Court of Appeals for the Seventh Circuit determined the refund was not a rebate because the money the taxpayers had as a result of the refund was not the money the "IRS' original assessment contemplated, since that amount was already paid. Rather it [was] a payment the IRS accidentally sent them. They owe[d] it to the government because they [had] been unjustly enriched by it, not because they [had] not paid their taxes." *Id.* at 346.[7] Further, in *YRC*

---

[7] Mrs. LaRosa argues that her case is distinguishable from *O'Bryant* and cases like *O'Bryant* that involve an unsolicited refund. But whether the taxpayer requested the refund is immaterial; the issue is the nature of the refund, i.e., whether it is a refund of tax.

*Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at *3, the Commissioner issued two refunds to the taxpayer. The Commissioner sought to recover the second refund through deficiency procedures. *Id.* at *4, *12. While the parties agreed that the first refund was a rebate, they disputed the character of the second refund. *Id.* at *8–9. We found the second refund was not a rebate, and thus not recoverable through deficiency procedures, because the refund was issued because of a clerical error and not a substantive calculation of tax. *Id.* at *10–12. Lastly, in *Lesinski v. Commissioner*, T.C. Memo. 1997-234, <u>73 T.C.M. (CCH)</u> 2819, the Commissioner issued a notice of deficiency for 1991 after preparing a substitute for return for the taxpayer. The taxpayer later filed a joint return for 1991 that reflected an overpayment. The taxpayer also filed a petition with this Court challenging the determinations in the notice of deficiency. While the case was pending, the Commissioner accepted the taxpayer's joint return for 1991 and issued a refund even though the period of limitations to recover the refund had expired. The Commissioner sought to recapture the erroneous refund by amending his answer. We determined that the Commissioner could not use the deficiency procedures to recover the refund because it was not a rebate because "[t]he refund was not made on the ground that the tax imposed was less than the amount of tax shown." *Id.*, <u>73 T.C.M. (CCH)</u> at 2820.

Here, the erroneous refund was not a rebate because it did not involve any portion of the LaRosas' underlying tax liabilities for the years in issue. The LaRosas paid their tax liabilities and interest in full for the years in issue. The Commissioner issued a refund consisting solely of section 6601 and section 6611 interest having (erroneously) concluded that the LaRosas had overpaid interest on the underlying tax. The refund did not involve a recalculation of the LaRosas' tax liabilities for the years in issue, but merely corrected a perceived clerical error in computing interest. The LaRosas' underlying tax liabilities were not adjusted, and no portion of their underlying liabilities was refunded. Therefore, the erroneous refund was not a rebate.

Mrs. LaRosa's reliance on the notion that interest is treated in the same manner as tax is misplaced. She asserts that the refund here is

> not the result of a clerical, accounting, or computer error that bears no relation to the LaRosas' tax liability. . . . The refunds issued to the LaRosas were the product of IRS error in computing the liability for statutory interest,

which under IRS § 6601, is to be treated the same as the tax upon which it accrues. Thus the erroneous refund is rebate within the meaning of <u>IRC § 6211</u>.

But how the Internal Revenue Code treats interest depends on the type of interest and the purpose for which we are considering the question. As a starting point, the statement in section 6601 that interest is treated as tax is limited by its own terms to "[i]nterest prescribed under *this section*" and "interest imposed by *this section*." "This section" refers to section 6601, i.e., interest on underpayments. Overpayment interest under section 6611 is not treated as tax, and an excess refund of overpayment interest cannot be recovered using deficiency procedures. *See Pac. Gas & Elec. Co. v. United States*, <u>417 F.3d 1375, 1381</u> (Fed. Cir. 2005).

But even interest on underpayments is not treated as tax for all purposes. Section 6601(e)(1) provides in part, "[a]ny reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." In Mrs. LaRosa's case, that parenthetical reference to deficiency procedures is particularly notable. The definition of a rebate is found in section 6211(b)(2), which is found in subchapter B of chapter 63. Thus, the statement in section 6601(e)(1) that interest is treated as tax, by its very own terms, does not apply when defining what is or is not a rebate under section 6211.

Neither underpayment interest under section 6601 nor overpayment interest under section 6611 is considered a tax for purposes of determining a rebate. As a result, an erroneous refund consisting solely of interest is not a rebate and does not give rise to an unpaid tax or deficiency.

VI.    *Conclusion*

The erroneous refund paid to the LaRosas was not a rebate and did not give rise to an unpaid tax or a deficiency. Because the erroneous refund does not constitute an unpaid tax or deficiency, Mrs. LaRosa is ineligible for innocent spouse relief under section 6015(f).

To reflect the foregoing,

*An appropriate order and decision will be entered*.



# United States Tax Court

Washington, DC 20217

CATHERINE L. LAROSA,

     Petitioner

     v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent

Docket No. 10164-20

## ORDER AND DECISION

Pending before the Court is the Commissioner's Motion to Dismiss for Lack of Jurisdiction filed November 10, 2020. Pursuant to the determination of the Court as set forth in its Opinion (163 T.C. No. 2) filed July 17, 2024, it is

ORDERED that the Clerk shall recharacterize the Commissioner's Motion to Dismiss for Lack of Jurisdiction filed November 10, 2020, as the Commissioner's Motion for Summary Judgment. It is further

ORDERED that the Commissioner's Motion for Summary Judgment filed November 10, 2020, is granted. It is further

ORDERED and DECIDED that petitioner is not entitled to innocent spouse relief under I.R.C. § 6015(f) for 1981 and 1982.

**(Signed) Ronald L. Buch**
**Judge**

**Entered and Served 07/18/24**



# United States Tax Court

Washington, DC 20217

CATHERINE L. LAROSA,

        Petitioner

        v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent

Docket No.  10164-20.

## ORDER

Pending before the Court is Mrs. LaRosa's Motion for Reconsideration, filed pursuant to Rule 161, Tax Court Rules of Practice & Procedure, on August 16, 2024. "Reconsideration under Rule 161 serves the limited purpose of correcting substantial errors of fact or law and allows the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding." *Estate of Quick v. Commissioner*, 110 T.C. 440, 441 (1998). Because Mrs. LaRosa's motion does not identify a substantial error of fact or law or any newly discovered evidence, we will deny her motion.

In *LaRosa v. Commissioner*, 163 T.C. No. 2 (July 17, 2024), the Court granted summary judgment in favor of the Commissioner on the question of whether Mrs. LaRosa was entitled to innocent spouse relief under section 6015(f). Specifically, the Court held, "innocent spouse relief under I.R.C. § 6015(f) is available only for unpaid taxes or deficiencies." The Court further held, "an erroneous refund consisting only of interest does not give rise to an unpaid tax or a deficiency." The natural result of these two holdings is that Mrs. LaRosa is not eligible for relief under section 6015(f).

The Commissioner's Motion for Summary Judgment,[1] filed November 10, 2020, argued, "Because the erroneous refund is not a tax liability, the Court does not have jurisdiction under section 6015(e) to hear petitioner's section 6015(f) request for relief." Motion, p.2. Although couched in terms of jurisdiction, the Commissioner's argument was that an erroneous refund does not give rise to an unpaid tax or deficiency. In his Memorandum of Law in Support of his Motion, the Commissioner

---

[1] The Commissioner titled his Motion as a Motion to Dismiss for Lack of Jurisdiction, but the substance of his Motion was whether an erroneous refund of interest is eligible for relief from joint and several liability. Because that issue is a question of law directed at the substance of the case, and not one of jurisdiction, the Court recharacterized the Motion as a Motion for Summary Judgment. *LaRosa*, slip op. at 7.

argued, "Once an assessed tax liability is paid (i.e., satisfied), the tax liability and the assessment are extinguished." Memorandum of Law, p.10. The Commissioner further argued that his "issuance of an erroneous refund to petitioner did not create a new tax liability or assessment, as it was a non-rebate refund not subject to the deficiency procedures set forth in section 6212." Memorandum of Law, p.11. And lastly, the Commissioner argued, "There is no tax deficiency resulting from the Erroneous Refund Suit, the liabilities and assessments in connection with the 1980s TC case were not revived by the Erroneous Refund Suit." Memorandum of Law, p.14. In sum, the Commissioner argued that there was no unpaid tax or deficiency that could be the subject of a claim for innocent spouse relief.

Mrs. LaRosa confronted these issues in her Objection to the Commissioner's Motion. She acknowledged the issue in dispute, writing: "Respondent contends that the liability does not represent 'any unpaid tax or any deficiency (or any portion of either)' as contemplated by IRC § 6015(f). Petitioner disagrees." Objection, p.15. Regarding the Commissioner's characterization of the refund at issue as a non-rebate refund, Mrs. LaRosa thoroughly presented her position, dedicating a section of her Objection to the issue of whether "The Erroneous Refund was a Rebate Refund." Objection, pp.17-21; *see also* Sur-Reply to Reply to Objection, pp. 5-8.[2]

In her Memorandum in Support of Motion for Reconsideration, Mrs. LaRosa suggests that the Court made a substantial error of law for two reasons. She argues first that the Court contradicted the plain language of section 6015(f), and second that the Court undercut Congress's intent. Memorandum in Support, pp.1-2. In support of her first argument, Mrs. LaRosa states,

> The dispositive question in this case, as the Court recognized, is whether the erroneous refunds of interest for 1981 and 1982 paid to the LaRosas gave rise to unpaid taxes or deficiencies. Slip op. at 8. The Court, however, proceeded to answer a different question; namely, whether the erroneous refunds were rebate or nonrebate refunds, which dictates how the Government must go about recovering an erroneous refund.

Memorandum in Support, p.5. But the question of whether the erroneous refund of interest gave rise to an unpaid tax or deficiency turns on the nature of that refund. As the Court wrote, "Courts have held that once a tax liability is paid in full, that tax liability is extinguished unless it is revived by an erroneous rebate refund. … And while the government can recover an erroneous rebate refund by filing suit under section 7405(b), it can also recover through an erroneous refund suit erroneous nonrebate refunds, *which are not considered tax*." *LaRosa*, slip op. at 10 (emphasis added, internal citations omitted). Thus, Mrs. LaRosa errs when she suggests "the

---

[2] Mrs. LaRosa argues that the Court's holding "that Mrs. LaRosa's liability – the erroneous refunds at issue – is not eligible for innocent spouse relief under I.R.C. § 6015(f) as a matter of law" was "not squarely addressed by the parties." Memorandum in Support of Motion for Reconsideration, p.4. In substance, the Commissioner's Motion, Mrs. LaRosa's Objection, the Commissioner's Reply to Objection, and Mrs. LaRosa's Sur-Reply to reply to Objection confronted these issues directly.

Court does not address whether the erroneous refunds of interest to the LaRosas gave rise to unpaid taxes." Memorandum in Support, p.9. The Court held that the erroneous refund was a non-rebate refund that does not give rise to an unpaid tax.

And the Court likewise addressed her argument, re-raised in her Memorandum in Support at pages 9-10, that erroneously refunded *interest* might give rise to an unpaid tax. The Court observed that "how the Internal Revenue Code treats interest depends on the type of interest and the purpose for which we are considering the question." *LaRosa*, slip op. at 14. The Court concluded, "Neither underpayment interest under section 6601 nor overpayment interest under section 6611 is considered a tax for purposes of determining a rebate. As a result, an erroneous refund consisting solely of interest is not a rebate and does not give rise to an unpaid tax or deficiency." *Id*.

In her Memorandum in Support, Mrs. LaRosa directs us to section 6015(f)(2) in an effort to expand the relief that Congress authorized. But section 6015(f)(2) is not the provision that authorizes relief; it limits the relief that may be provided. The relief provision at issue is found in section 6015(f)(1), which, when "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency," authorizes the Secretary to "relieve such individual of such liability." As used in the latter phrase, "such liability," refers back to "any unpaid tax or any deficiency." "Such" refers to something "having just been mentioned." *Black's Law Dictionary* (9th ed. 2009); *see also*, Bryan A. Garner, *Garner's Modern English Usage* 1052 (5th ed. 2022) ("Such is properly used as an adjective when reference has previously been made to a category of people or things" and "such is a pointing word that must refer to a clear antecedent"). The limitation found later in section 6015(f)(2) cannot expand on the scope of relief authorized by section 6015(f)(1).

Mrs. LaRosa also directs us to section 6015(b) to argue for expanding the scope of section 6015(f). Memorandum in Support, p.11. She rightly observes that section 6015(b) authorizes relief "of liability for tax (including interest, penalties, and other amounts)." In making that observation, however, she omits the further limitation (contained in the same sentence) that relief is only available "to the extent such liability is attributable to such understatement." I.R.C. § 6015(b)(1)(E). An understatement refers the difference between the tax reported and the tax required to be shown on a return. I.R.C. § 6662(d)(2)(A). The erroneous refund at issue, however, is not attributable to an understatement.

Mrs. LaRosa concludes her Memorandum in Support with a policy argument as to why relief under section 6015(f) should be broader than the Court's application of the text of the statute. She argues, "the Court's application of I.R.C. § 6015 flies in the face of Congress's intent." Memorandum in Support, p.16. But the starting point in discerning congressional intent is the statutory text. *See United Therapeutics Corp. v. Commissioner*, 160 T.C. 491, 507 (2023). Policy considerations cannot override the text of the statute. *Id*., 160 T.C. at 522-23.

Because Mrs. LaRosa's motion does not identify a substantial error of fact or law or any newly discovered evidence, it is

ORDERED that Petitioner's Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161 is denied.

**(Signed) Ronald L. Buch**
**Judge**



Catherine L. LaRosa,

       Petitioner

    v.

Commissioner of Internal Revenue

       Respondent

Electronically Filed
Docket No. 10164-20
Document No. 42

# Notice of Appeal for the 4th Circuit


Catherine L. LaRosa,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 10164-20
Document No. 42

# Notice of Appeal

# UNITED STATES TAX COURT

CATHERINE L. LAROSA,

        Petitioner,

vs.

COMMISSSIONER OF INTERNAL
REVENUE,

        Respondent

Docket No. 10164-20

**Filed Electronically**

## <u>NOTICE OF APPEAL</u>

Pursuant to Tax Court Rule 190 and <u>Federal Rule of Appellate Procedure 13</u>,

Petitioner Catherine L. LaRosa appeals to the United States Court of Appeals for

the Fourth Circuit from the decision entered July 18, 2024.

Respectfully submitted,

October 14, 2024

*/s/ Caroline D. Ciraolo*_____
Caroline D. Ciraolo
U.S. Tax Court Bar No. KC0286
Kostelanetz LLP
601 New Jersey Ave, NW, Suite 260
Washington, DC 20001
Ph: (443) 845-4898
cciraolo@kostelanetz.com



# United States Tax Court
Washington, DC 20217

Catherine L. LaRosa, Petitioner v. Commissioner of
Internal Revenue, Respondent

Docket No. 10164-20

## Printable Docket Record

| Name | Contact | Counsel |
|---|---|---|
| Catherine L. LaRosa | 10 Tobin Court<br>Rockville, MD 20854<br>No Phone | Andrew M. Weiner (WA21389)<br>aweiner@kostelanetz.com<br>215-790-6999<br><br>Caroline D. Ciraolo (KC0286)<br>cciraolo@kostelanetz.com<br>443-845-4898<br><br>Usman Mohammad (MU0005)<br>umohammad@kostelanetz.com<br>212-808-8100<br><br>Michael S. Waalkes (WM23527)<br>mwaalkes@kostelanetz.com<br>(202) 790-6998 |

| Respondent Counsel | Respondent Counsel Contact |
|---|---|
| Robert J. Branman | robert.j.branman@usdoj.gov<br>202-307-6538 |
| Jeffrey E. Gold | jeffrey.e.gold@irscounsel.treas.gov<br>202-803-9200 |
| Deborah Aloof | deborah.aloof@irscounsel.treas.gov<br>(412) 404-9292 |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|---|---|---|---|---|---|---|---|
| 1 | 07/10/20 | P | **PETITION FILED by Petr. Catherine L. LaRosa: FEE PAID** | See Filings and Proceedings | | 09/16/20 | R |



| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 2 | 07/10/20 | RQT | **REQUEST FOR PLACE OF TRIAL AT WASHINGTON, DC by Petr. Catherine L. LaRosa** | See Filings and Proceedings | | 09/16/20 | R |
| 3 | 11/10/20 | MEMO | **MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp. (EXHIBITS)** | See Filings and Proceedings | | 11/10/20 | P |
| 4 | 11/10/20 | M034 | **Motion for Summary Judgment** | Resp. | ORD 7/18/24 | 11/10/20 | P |
| 5 | 11/10/20 | NIS | **NOTICE OF FILING OF PETITION AND RIGHT TO INTERVENE ON DOMINICK LAROSA 11/10/2020 by Resp. (C/S 11/10/20)** | See Filings and Proceedings | | 11/10/20 | P |
| 6 | 11/13/20 | O | **ORDER THAT PETR. BY 1/4/21, SHALL FILE AN OBJECTION, IF ANY, TO RESP. MOTION TO DISMISS FOR LACK OF JURISDICTION.** | | | 11/16/20 | B |
| 7 | 12/31/20 | NCA | **Notice of Change of Address for Paul T. Butler** | | | 12/31/20 | B |
| 8 | 01/04/21 | OBJE | **Objection to MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp. (C/S 01/04/21) (Attachment(s)) (C/S** | Petr. Catherine L. LaRosa | | 01/04/21 | B |

| No. | Date | Event | | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|---|--------------------------|----------|--------|--------|---------|
| | | | | 01/04/21) (Attachment(s)) | | | | |
| 33 | 01/11/21 | OBJE | 🔒 | **Objection to MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp. (Attachment(s))** (Attachment(s)) | Petr. Catherine L. LaRosa | UNREDACTED SEALED ORD 4/12/24 | 04/12/24 | B |
| 9 | 01/14/21 | M115 | | **Motion for Leave to File Reply to Opposition to MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp. (No Objection)** (No Objection) | Resp. | ORD 2/11/21 | 01/14/21 | B |
| 10 | 02/03/21 | NODC | | **Notice of Docket Change for Docket Entry No. 8** | | | 02/03/21 | B |
| 11 | 02/11/21 | O | | **Order that resp. motion for leave is granted, in that on or before 2/16/21, resp. shall file a reply to petrs. opposition to motion to dismiss for lack of jurisdiction. Petr. by 3/18/21, may file a sur-reply in response to resp. reply.** | | | 02/11/21 | B |
| 12 | 02/16/21 | REPL | | **Reply to Objection to MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp.** | Resp. | | 02/16/21 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 13 | 03/04/21 | M011 | **Motion for Extension of Time (C/S 03/04/21) (No Objection)** (C/S 03/04/21) (No Objection) | Petr. Catherine L. LaRosa | ORD 3/16/21 | 03/04/21 | B |
| 14 | 03/16/21 | O | **Order that resp. reply to the Court's order served 2/11/21, is recharacterized as a reply to petrs. objection to motion to dismiss for lack of jurisdiction. Petrs. motion for extension of time is granted, in that the time is extended to 4/8/21, within which petr. shall file a sur-reply to resp. reply to petrs. objection to motion to dismiss for lack of jurisdiction.** | | | 03/16/21 | B |
| 15 | 03/26/21 | NCAP | **Notice of Change of Address and Telephone Number for Deborah Aloof** | | | 03/26/21 | B |
| 16 | 03/29/21 | NCA | **Notice of Change of Address for Jeffrey E. Gold** | | | 03/29/21 | B |
| 17 | 04/07/21 | SURP | **Sur-Reply to Reply to Objection to MOTION TO DISMISS FOR LACK OF JURISDICTION by Resp. (C/S 04/07/21)** (C/S 04/07/21) | Petr. Catherine L. LaRosa | | 04/07/21 | B |
| 18 | 06/21/21 | M000 | **Motion For Leave to File As Amicus Curiae (Objection)** (Objection) | T. Keith Fogg | Order 3/26/24 | 06/24/21 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 19 | 06/21/21 | MISCL | **Amicus Brief of the Center for Taxpayer Rights and the Federal Tax Clinic at the Legal Services Center of Harvard Law School in Support of the Petitioner (C/S 06/15/21) (Lodged)** (C/S 06/15/21) (Lodged) | T. Keith Fogg & Matthew T. James | | 06/24/21 | B |
| 20 | 06/29/21 | O | **Order that resp. by 7/29/21, shall file an objection, if any, to petrs. motion for leave to file as Amicus Curiae.** | | | 06/29/21 | B |
| 21 | 06/29/21 | OAJ | **Order that case is assigned to Judge Colvin Solely for the purpose of disposing of resp. motion to dismiss for lack of jurisdiction and petrs. motion for leave to file as Amicus Curiae.** | | | 06/29/21 | B |
| 22 | 07/23/21 | OBJE | **Objection to Motion For Leave to File As Amicus Curiae (C/S 07/23/21)** (C/S 07/23/21) | Resp. | | 07/23/21 | B |
| 23 | 08/03/21 | O | **Order that petr. and the amicus by 10/1/21, shall respond to resp. 7/23/21 objection. That the Clerk of the Court shall include additional service of this order on the Counsel of Amicus Keith Fogg at the address stated herein.** | | | 08/03/21 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 24 | 10/08/21 | RSP | **Response to Objection to Motion For Leave to File As Amicus Curiae** | T. Keith Fogg | | 10/14/21 | B |
| 25 | 10/29/21 | NOTW | **Notice of Withdrawal as Counsel** | Paul T. Butler | | 10/29/21 | B |
| 26 | 11/01/21 | NODC | **Notice of Docket Change for Docket Entry No. 25** | | | 11/01/21 | B |
| 27 | 03/09/23 | O | **Order that, on or before April 10, 2023, each party may file a memorandum indicating their position on the effect, if any, of section 6015(e)(7) and (f)(2) on this case.** | | | 03/09/23 | B |
| 28 | 04/10/23 | MEMO | **Memorandum** | Petr. Catherine L. LaRosa | | 04/10/23 | B |
| 29 | 04/10/23 | MEMO | **Memorandum** | Resp. | | 04/10/23 | B |
| 30 | 03/12/24 | OAJ | **Order that case is assigned to Judge Buch - This case is no longer assigned to Judge Colvin.** | | | 03/12/24 | B |
| 31 | 03/26/24 | O | **Order that the Motion for Leave to File as Amicus Curiae filed June 21, 2021, is denied. Additional service of this order shall be served on counsel for the Amicus.** | | | 03/26/24 | B |
| 32 | 04/12/24 | O | **Order that the Clerk shall file petitioner's unredacted Objection** | | | 04/12/24 | B |



| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | to Respondent's Motion to Dismiss for Lack of Jurisdiction as of January 11, 2021. The Clerk shall seal from public viewing petitioner's unredacted Objection to Respondent's Motion to Dismiss for Lack of Jurisdiction as of January 11, 2021. | | | | |
| 34 | 07/17/24 | TCOP | T.C. Opinion Judge Buch 163 T.C. No. 2. (An appropriate order and decision will be entered). | | | 07/17/24 | B |
| 35 | 07/18/24 | OAD | Order and Decision Entered, Judge Buch that the Clerk shall recharacterize the Commissioner's Motion to Dismiss for Lack of Jurisdiction filed November 10, 2020, as the Commissioner's Motion for Summary Judgment. The Commissioner's Motion for Summary Judgment filed November 10, 2020, is granted. | | | 07/18/24 | B |
| 36 | 08/12/24 | EA | Entry of Appearance for Petr. Catherine L. LaRosa | Andrew M. Weiner | | 08/12/24 | B |
| 37 | 08/16/24 | EA | Entry of Appearance for Petr. Catherine L. LaRosa | Michael S. Waalkes | | 08/16/24 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 38 | 08/16/24 | EA | **Entry of Appearance for Petr. Catherine L. LaRosa** | Usman Mohammad | | 08/16/24 | B |
| 39 | 08/16/24 | M028 | **Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161** | Petr. Catherine L. LaRosa | ORD 8/22/24 | 08/16/24 | B |
| 40 | 08/16/24 | MISP | **Memorandum in Support of Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161** | Petr. Catherine L. LaRosa | | 08/16/24 | B |
| 41 | 08/22/24 | O | **Order that Petitioner's Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161 is denied.** | | | 08/22/24 | B |
| 42 | 10/14/24 | NOA | **Notice of Appeal for the 4th Circuit (COA # 24-2034)** (COA # 24-2034) | Petr. Catherine L. LaRosa | | 10/14/24 | B |
| 43 | 10/14/24 | AFP | **Appellate Filing Fee Received** | Petr. Catherine L. LaRosa | | 10/15/24 | B |
| 44 | 10/15/24 | NOT | **Notice of Filing of Notice of Appeal to Court of Appeals** | | | 10/15/24 | B |
| 45 | 10/23/24 | ROA | **Record on Appeal e-filed for the 4th Circuit** | | | | |
| 46 | 05/12/25 | EA | **Entry of Appearance for Respondent** | Resp. | | 05/12/25 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 47 | 05/19/25 | NCAP | **Notice of Change of Address and Telephone Number for Deborah Aloof** | | | 05/19/25 | B |